UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, *et al.*, | ) | CIVIL ACTION NO. 4:20-CV-325 |
| Plaintiffs | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| WARDEN BRIAN CLARK, *et al.*, | ) | |
| Defendants | ) | |

<u>MEMORANDUM OPINION</u>
*Plaintiffs' Motion to File Second Amended Complaint (Doc. 59)*

I.     INTRODUCTION

On August 20, 2019, Carmen Riley (as administrator of the estate and as Ty'rique's parent) and Thomas Matthews (as Ty'rique's parent) (collectively "Plaintiffs") initiated this civil action in the Dauphin County Court of Common Pleas alleging claims related to the death of their son, Ty'rique Riley ("Tyrique").[1] That case was removed to federal court, and the original complaint was amended.

Several Defendants moved to dismiss claims alleged in the Amended Complaint. (Docs. 28, 45). Based on those Motions, all claims against six of the 34 Defendants named in the Amended Complaint were dismissed. (Docs. 51, 52, 54).

Currently pending before the Court is Plaintiffs' Motion requesting leave to file a Second Amended Complaint. (Doc. 59). In their Second Amended Complaint, Plaintiffs seek to add different and more detailed claims against the six

---

[1] In some portions of the Amended Complaint Defendant Thomas Matthews is referred to as Defendant Thomas Matthews-Kemrer.

Defendants who were dismissed, and bring claims against two new Defendants. Defendant Haines opposes Plaintiffs' Motion to Amend on behalf of the proposed Defendants Michael Darcy, Demetrius Glenn, Aaron Osman, Richard Adams, Richard Wilson, and an unidentified Susquehanna Township 911 Operator. (Doc. 60).

## II.     BACKGROUND & PROCEDURAL HISTORY

According to the First Amended Complaint, on June 18, 2019, Plaintiffs' son Ty'rique Riley was exhibiting dangerous behavior due to a mental health problem. Plaintiff Riley called the Susquehanna Police Department for help. Several officers were dispatched to Plaintiffs' residence. When the police arrived, Ty'rique was distant and uncommunicative, and did not struggle or resist when he was arrested and placed in a police vehicle.

Ty'rique was transported to Dauphin County Prison, where he remained from June 18, 2019 through June 26, 2019. During the days spent in prison, Ty'rique sustained physical injuries that eventually resulted in his death. Plaintiffs allege that those injuries were inflicted by corrections officers. On the morning of June 26, 2019, Ty'rique was transferred to a hospital. Ty'rique died six days later.

On August 20, 2019, Ty'rique's parents—Plaintiffs Carmen Riley and Thomas Matthews—initiated a civil action in the Dauphin County Court of Common Pleas on behalf of Ty'rique by filing a writ of summons. (Doc. 1-1). On

February 11, 2020, Plaintiffs filed their Complaint. (Doc. 1-21). On February 25, 2020, a group of Defendants removed this action to federal court. (Doc. 1).

On March 6, 2020, a telephone conference was held to discuss the issue of jurisdiction because no federal claims were alleged in Plaintiffs' original complaint. During that conference the parties agreed that Plaintiffs would either file a motion to remand or an amended complaint by March 27, 2020. (Doc. 13). On April 17, 2020, after being granted an extension of time, Plaintiffs filed a Motion to Amend. (Doc. 14). On May 6, 2020, Plaintiffs' Motion to Amend was deemed unopposed and the Amended Complaint was deemed filed. (Doc. 15). A summons was issued as to newly added Defendants. (Doc. 17).

In the First Amended Complaint, Plaintiff named the following thirty-four Defendants:

(1)   Brian Clark, Warden of Dauphin County Prison;
(2)   Dauphin County, Pennsylvania;
(3)   Susquehanna Township Police Department;
(4)   Michael Darcy, Susquehanna Township Police Officer;
(5)   Demetrius Glenn, Susquehanna Township Police Officer;
(6)   Aaron Osman, Susquehanna Township Police Officer;
(7)   Richard Adams, Susquehanna Township Police Officer;
(8)   Richard Wilson, Susquehanna Township Police Officer;
(9)   Chris Haines, Susquehanna Township Police Officer;

(10)   PrimeCare Medical, Inc.;

(11)   Captain Andrew Klahr, Dauphin County Prison Corrections Officer;

(12)   Captain Steve Smith, Dauphin County Prison Corrections Officer;

(13)   Captain Mark Neidigh, Dauphin County Prison Corrections Officer;

(14)   Lieutenant Richard Armermann, Dauphin County Prison Corrections Officer;

(15)   Lieutenant Greg Mendenhall, Dauphin County Prison Corrections Officer;

(16)   Sergeant Scott Rowe, Dauphin County Prison Corrections Officer;

(17)   Sergeant Scott Grieb, Dauphin County Prison Corrections Officer;

(18)   Sergeant Jason Adams, Dauphin County Prison Corrections Officer;

(19)   Sergeant Michael Blouch, Dauphin County Prison Corrections Officer;

(20)   Sergeant Scott Lewis, Dauphin County Prison Corrections Officer;

(21)   Sergeant Keith Biter, Dauphin County Prison Corrections Officer;

(22)   Officer Robert Ingersoll, Dauphin County Prison Corrections Officer;

(23)   Officer Cameron Weaver, Dauphin County Prison Corrections Officer;

(24)   Officer Taylor Glenn, Dauphin County Prison Corrections Officer;

(25)   Officer Martin Myers, Dauphin County Prison Corrections Officer;

(26)   Officer Delta Bauer, Dauphin County Prison Corrections Officer;

(27)   Officer Matthew Danner, Dauphin County Prison Corrections Officer;

(28)   Officer Steve Singleton, Dauphin County Prison Corrections Officer;

(29)   Officer Derek Umberger, Dauphin County Prison Corrections Officer;

(30)   Officer Joseph Doyle, Dauphin County Prison Corrections Officer;

(31) Officer Richard Otten, Dauphin County Prison Corrections Officer;

(32) Officer Keith Hoffman, Dauphin County Prison Corrections Officer;

(33) Officer Angela Swanson, Dauphin County Prison Corrections Officer; and,

(34) Officer Michael Shaeffer, Dauphin County Prison Corrections Officer.

(Doc. 16).[2]

On May 21, 2020, the six Susquehanna Defendants (Adams, Darcy, Glenn, Haines, Osman, Wilson, and the Susquehanna Police Department) filed a Motion to Dismiss. (Doc. 28). On July 13, 2020, one corrections officer, Defendant Angela Swanson, filed a Motion to Dismiss. (Doc. 45). The resolution of those Motions resulted in all claims against Defendants Susquehanna Police Department, Adams, Darcy, Glenn, Osman, Wilson, and Swanson being dismissed. (Docs. 51, 52, 54).[3] Defendant Haines remained as a party to this action.

On January 29, 2021, Plaintiffs filed a Motion requesting leave to file a Second Amended Complaint. (Doc. 59). Along with their Motion, Plaintiffs filed a

---

[2] Plaintiffs also name 5 John Doe Susquehanna Township Police Officers, 5 John Doe Medical Employees from PrimeCare, and 10 John Doe Corrections Officers from Dauphin County Prison.

[3] Plaintiffs' negligence claim (and wrongful death and survival act claims) against Defendants Adams, Darcy, Glenn, Osman, Wilson were dismissed because they are immune from liability as to the negligence claim under the Pennsylvania Political Subdivision Tort Claims Act (the wrongful death and survival act claims were dismissed because they could not proceed absent the negligence claim). Plaintiffs' claims against Defendant Swanson were dismissed, in large part, because the Amended Complaint did not include enough factual allegations to support the claims.

Brief in Support (Doc. 60), Proposed Second Amended Complaint (Doc. 60-1), and red lined version of that Proposed Second Amended Complaint (Doc. 60-2).

In the Proposed Second Amended Complaint, Plaintiffs seek to: (1) add a new claims under § 1983 against Defendants Adams, Darcy, Glenn, Osman, Wilson (and re-assert the Wrongful Death and Survival Act claims against these Defendants); (2) add additional factual allegations to support claims against Defendant Swanson; and (3) add two new Defendants (Tami Donovan and Susquehanna Township John Doe 911 Operator).

On February 16, 2021, Defendant Haines filed a Brief in Opposition to Plaintiffs' Motion to Amend. (Doc. 61). In that Brief, Defendant Haines argues that "Plaintiffs' efforts to re-add previously dismissed Officer Michael Darcy, Officer Demetrius Glenn, Officer Aaron Osman, Sergeant Richard Adams, Corporal Richard Wilson, and newly added Susquehanna Township 911 Operator ("Proposed Defendants"), are simply baseless because these officers were not deliberately indifferent to a serious medical need of Plaintiffs' decedent, Ty'rique Riley." (Doc. 61, p. 1).[4] Defendant Haines also argues that allowing amendment that includes this § 1983 claim against him would also be futile because he was not deliberately indifferent. *Id.* at 2.

---

[4] All citations to documents filed in CM/ECF correspond to the page numbers assigned by the CM/ECF system that appear in the document header.

III.      **LEGAL STANDARD**

Rule 15 of the Federal Rules of Civil Procedure governs motions to amend a complaint.[5] This rule provides for three ways by which a Plaintiff may amend his complaint: (1) as a matter of course; (2) with the opposing party's written consent; and (3) by leave of court. Fed. R. Civ. P. 15. Here, Plaintiffs seek to amend their complaint by leave of court pursuant to Fed. R. Civ. P. 15(a)(2). This provision also provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Even under this liberal standard, however, a motion for leave to amend may be denied when it is justified. "Permissible justifications [for denying a request for leave to amend] include: (1) undue delay; (2) bad faith of dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995). "The Third Circuit has interpreted these factors to emphasize that prejudice to the non-moving party is the touchstone for the denial of a request for leave to amend." *Tarkett Inc. v. Congoleum Corp.*, 144 F.R.D. 289, 290 (E.D. Pa. 1992)(citing *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)).

---

[5] "Among the District Courts within the Third Circuit, a motion to amend is generally treated as a nondispositive matter, subject to decision by the magistrate judge." *Aguiar v. Recktenwald*, No. 3:13-CV-2616, 2014 WL 6062967 at *3 n. 2 (M.D. Pa. Nov. 12, 2014).

In this case, Defendant Haines argues that amendment should be denied due to futility. In assessing futility, district courts generally apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." *In re NAHC, Inc. Sec. Litig,*, 306 F.3d 1314, 1332 (3d Cir. 2002). Thus, for the purposes of this case "futility" means that the complaint as amended would fail to state a claim upon which relief could be granted.

IV.  ANALYSIS

Defendant Haines opposes the addition of one claim—Count VIII of the Proposed Second Amended Complaint—on behalf of himself and proposed new/previously dismissed defendants Darcy, Glenn, Osman, Adams, Wilson, and Susquehanna Township John Doe 911 Operator.[6]

In Count VIII of the Proposed Second Amended Complaint, Plaintiffs allege:

---

[6] Proposed new/previously dismissed defendants Darcy, Glenn, Osman, Adams, Wilson, and Susquehanna Township John Doe 911 Operator are named in counts VIII (due process/failure to provide medical care upon arrest), XIII (state law wrongful death), and XIV (state law survivor act) of the Proposed Second Amended Complaint.

Defendant Haines is named in Counts III (excessive force), IV (failure to intervene), VIII (due process/failure to provide medical care upon arrest), XI (state law assault), XII (state law battery), XIII (state law wrongful death), and XIV (state law survivor act) of the Proposed Second Amended Complaint.

Defendant Haines' opposition to amendment concerns only Count VIII of the Proposed Second Amended Complaint.

**Count VIII: Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -v- Defendants Susquehanna Police Officers, Susquehanna John Doe 911 Operator and Susquehanna John Does**

**(Deprivation of Rights Guaranteed Under the 14th Amendment to the U.S. Constitution, addressable via 42 U.S.C. § 1983; Failure to Provide Medical Care)**

. . . .

192. At all times relevant hereto, pursuant to the 14th Amendment to the United States Constitution, decedent Riley had the right to be free from punishment while in custody of the Susquehanna Police.

193. Decedent Riley had the right to appropriate medical and mental health care to address his serious mental health crisis.

194. Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines (collectively "Susquehanna Police Officers"), Susquehanna John Doe 911 Operator ("John Doe 911 Operator") and Susquehanna Township John Doe Police Officers 1-5 (collectively "Susquehanna John Does"), individually and/or jointly, were compelled by the 14th Amendment to provide medical and mental health care to decedent Riley to address his serious mental health crisis.

195. Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman Demetrius Glenn, Patrolman Michael Darcy, and PEC Chris Haines, John Doe 911 Operator and Susquehanna John Does had actual knowledge of decedent Riley's serious mental health crisis through repeated reports from Plaintiff Carmen Riley that decedent Riley had "snapped" and through said Defendants' own visual and/or audible observations of decedent Riley.

196. Despite this knowledge, Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman

> Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines, John Doe 911 Operator and Susquehanna John Does showed deliberate indifference to decedent Riley's serious medical and mental health needs by taking him to a prison rather than a hospital mental health facility.
>
> 197. Said Defendants were aware that taking decedent Riley to a hospital or mental health facility would ensure that his serious mental health crisis would be addressed. By taking decedent Riley to a prison instead, said Defendants showed a conscious disregard of the serious risk to decedent Riley that was full of obduracy and wantonness that lead [sic] to serious punishment and harm being inflicted upon decedent Riley.
>
> 198. As a direct and proximate result of the actions of Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines, John Doe 911 Operator and Susquehanna John Does, decedent Ty'rique Riley suffered deprivations of his rights, physical injuries, pain and suffering, emotional distress, mental anguish, and eventually death on July 1, 2019 at the age of twenty one (21) years old.

(Doc. 60-1, ¶¶ 192-198).

In support of this claim, Plaintiffs allege the following facts in the Proposed Second Amended Complaint:

> 64. On or about the early hours of June 18, 2019, at approximately 4:00 AM, Plaintiff Carmen Riley was awakened to see her son standing over her and the decedent's father holding a sledgehammer and mumbling nonsensically about needing to protect his parents.
>
> 65. Shortly thereafter, decedent and his father struggled with the sledgehammer. Plaintiff Carmen Riley telephoned 911 to ask for an ambulance after Plaintiff Thomas Matthews-Kemrer collapsed on the floor. Plaintiff Riley told the 911 operator that Plaintiff Matthews-Kemrer has a heart condition.

66. Plaintiff Riley stayed on the phone with the 911 operator (Defendant John Doe 911 Operator) for more than 13 minutes. During that time, Defendant John Doe 911 Operator heard Plaintiff Riley plead with her son who was having a mental health crisis. Defendant John Doe 911 Operator heard Plaintiff Riley repeatedly respond to Decedent's nonsensical accusations by stating that there were "No decoys".

67. Decedent Riley could be heard in the background as Plaintiff Riley spoke to the Defendant John Doe 911. At one point during the call, Decedent's behavior and unintelligible ranting prompted Defendant John Doe 911 Operator to ask Plaintiff Riley if her son had any mental health conditions, to which Plaintiff Riley responded, "Yeah, he just snapped."

68. Defendant John Doe 911 Operator heard this response and asked Plaintiff Riley if Decedent had "snapped tonight," to which Plaintiff Riley responded that Decedent had snapped "in the last couple days."

69. In response to Plaintiff Riley's 911 telephone call, Defendant Susquehanna Police dispatched Patrolmen Demetrius Glenn, Michael Darcy and John Does(s), PFC Chris Haines, Corporal Wilson and Sgt. Richard Adams to the residence.

70. Defendant John Doe 911 Operator caused or should have caused information about Decedent's mental health condition to be relayed to the officers dispatched to the residence.

71. Upon reaching the residence, Defendants Glenn, Darcy, Haines, Wilson, Adams and Susquehanna John Does knew or should have known that Decedent was in the middle of a mental health crisis, and that he had "snapped."

72. Upon arriving at the residence at approximately 4:44 AM, Patrolmen Darcy, and Glenn, along with Corporal Wilson entered the rear of the premises to gain entrance.

73. The three police officers asked Plaintiff Carmen Riley to open the rear door, but decedent Ty'rique Riley eventually opened the door himself and allowed the officers entry.

74. At that time, the officers observed the decedent Riley appeared distant and uncommunicative, and he offered no struggle or fight.

75. At that time, and during an immediate cursory investigation, Defendants Glenn, Darcy, Haines, Wilson, Adams and Susquehanna John Does learned that the decedent Riley had been mumbling incoherently, acting erratic and very strange, and that "something was wrong" with him.

76. Despite learning this information and despite observing decedent Riley's flat, distant and uncommunicative manner, the officers decided to arrest Decedent and to that end, they placed him in the rear of a police vehicle.

77. At that time, Defendants Glenn, Darcy, Haines, Wilson, Adams, John Doe 911 Operator and Susquehanna John Does recognized or should have recognized that decedent Riley was in the midst of a mental health crisis and needed medical and mental health treatment.

(Doc. 60-1, ¶¶ 64-77).

Plaintiff's Fourteenth Amendment claim is brought under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To establish a claim under § 1983, Plaintiff must

establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

For the purposes of his opposition to Plaintiffs' Motion to Amend, Defendant Haines does not dispute that he and the proposed defendants are state actors. He does, however, dispute that Plaintiff has pleaded a plausible Fourteenth Amendment claim for denial of medical care upon arrest.

To state a claim for the denial of medical treatment under the Fourteenth Amendment, a plaintiff must allege "(1) a serious medical need; and (2) behavior on the part of the police officers that constitutes deliberate indifference to that need." *Stroud v. Boorstein*, No. 10-3355, 2014 WL 2115499 at *8 (E.D. Pa. May 20, 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) and *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)). Defendant Haines argues that Plaintiffs' Proposed Second Amended Complaint does not satisfy either of these elements.

    A.    DEFENDANT HAINES DOES NOT HAVE STANDING TO OPPOSE ON BEHALF OF THE PROPOSED DEFENDANTS

In his Brief in Opposition, Defendant Haines objects to adding new claims against several non-parties who were previously dismissed from this case (Darcy, Glenn, Osman, Adams, Wilson) and one new party (Susquehanna Township John

Doe 911 Operator) on the basis that adding a new claim against these "Proposed Defendants" would be "futile."

At this juncture, none of the "Proposed Defendants" are currently parties to this case. Although Defendant Haines is a party, "[t]here is no 'authority that would . . . authorize the present parties who are unaffected by the proposed amendment to assert claims of futility on behalf of the proposed new defendant[s]." *Chesler v. City of Jersey City*, No. 2:15-CV-1825, 2019 WL 6318301 (D.N.J. Nov. 26, 2019). The nonparty "Proposed Defendants" may challenge the sufficiency of the pleading by way of a dispositive motion once they have been named as parties to this lawsuit.

Although Defendant Haines appears to object to the addition of Count VIII of the Second Amended Complaint primarily as it pertains to the "Proposed Defendants," I will also address this issue as it pertains to Defendant Haines himself.

> B.  WHETHER PLAINTIFFS HAVE PLEADED ENOUGH FACTS TO SHOW THAT TY'RIQUE HAD A SERIOUS MEDICAL NEED WHEN HE WAS ARRESTED

To satisfy the first element for denial of medical treatment under the Fourteenth Amendment, a plaintiff must allege facts that support the existence of a serious medical need. The Third Circuit has defined a serious medical need as: "(1) 'one that has been diagnosed by a physician as requiring treatment'"; (2) 'one that is so obvious that a lay person would easily recognize the necessity for a doctor's

attention'; or (3) one for which the 'denial of treatment would result in the unnecessary and wanton infliction of pain' or 'a life-long handicap or permanent loss.'" *Stroud*, 2014 WL 2115499 at *8.

Defendant Haines asserts that adding Count VIII to the Second Amended Complaint would be futile because Plaintiffs have not pleaded that Ty'rique had a serious medical need when he was arrested. Specifically, Defendant Haines argues:

> Here, Plaintiff's fail to establish any of the three criteria to demonstrate a serious medical need. First, Plaintiffs fail to demonstrate that Ty'rique's condition when he encountered the Proposed Defendants was diagnosed by a physician. On the contrary, Ty'rique's "condition" had only started a few days prior. *See* ECF Doc. No. 59-3 at 68. Plaintiffs provide no additional facts demonstrating that Plaintiffs had taken Ty'rique to a physician and received a diagnosis for his condition or that Ty'rique had a mental health history that was diagnosed prior to June 18, 2019. Since Ty'rique's condition was of recent onset with no further facts provided, Ty'rique's condition was not diagnosed by a physician.
>
> Second, Ty'rique's condition was not so obvious to the Proposed Defendants that they would easily recognize he needed a doctor's attention. On June 18, 2019, when Ty'rique was taken into custody he had engaged in a struggle with Plaintiff Kemrer that involved a sledgehammer. *See* ECF Doc. No. 59-3 at 65. As a result, Plaintiff Kemrer required medical attention to the point where Plaintiff Carmen Riley called 911 for an ambulance for the victim—her husband and Co-Plaintiff, but <u>not for</u> the Proposed Defendants. *Id.* In addition to an ambulance responding to the scene that morning, the Proposed Defendants also responded. *Id.* at 69. Since the Proposed Defendants were not only responding to a report of a "struggle with a sledgehammer" but also to a 911 call for an ambulance, had Ty'rique's condition been so obvious to the Proposed Defendants, they could have easily utilized the medical personnel that were responding to the scene for Plaintiff Kemrer to attend to Ty'rique's needs. However, Ty'rique's condition was not obvious to the

> Proposed Defendants, and since Ty'rique had engaged in a struggle with Plaintiff Kemrer over a sledgehammer necessitating the need for an ambulance, Ty'rique was taken to Dauphin County Booking Center—which also has trained PrimeCare medical personnel available—to be arraigned.
>
> Third, although Ty'rique passed away on July 1, 2019, it was not from a denial of treatment by Proposed Defendants and Ty'rique occurred around 4:00 a.m. on June 18, 2019. *Id.* at 64 Once Ty'rique was taken into custody and transported to the Dauphin County Booking Center, the Proposed Defendants had no further contact with Ty'rique. *See id. passim*. It seems illogical that the alleged denial of medical care on June 18, 2019 can be attributable to Ty'rique's death 13 days later. Ty'rique was taken to the Booking Center because he was being criminally charged for the struggle he had with Plaintiff Kemrer involving a sledgehammer that necessitated the need for ambulance care. Furthermore, even though Ty'rique was taken to the Booking Center and not a hospital, the Booking Center has medical personnel on staff as is evidence by the naming of PrimeCare Medical, Inc and PrimeCare John Doe Medical Employees 1-5 in the Amended Complaint. The PrimeCare Defendants were more than capable to attend to Ty'rique's alleged medical needs. Therefore, the Proposed Defendants did not <u>deny</u> treatment.

(Doc. 61, pp. 9-11).

As an initial matter, I note that Defendant Haines argues that an ambulance was at the scene when Ty'rique was arrested. This fact was not pleaded in the Proposed Second Amended Complaint. Plaintiffs allege that "Plaintiff Carmen Riley telephoned 911 to ask for an ambulance after Plaintiff Thomas Matthews Kemrer collapsed on the floor." (Doc. 60-1, ¶ 65). Nothing in the Proposed Second Amended Complaint suggests that an ambulance was at the scene when Ty'rique was arrested. Given the absence of this fact from the Proposed Second Amended

Complaint, and applying the motion to dismiss standard to Defendant Haines' futility argument, I cannot rely on factual allegations made by Defendant Haines in his Brief in Opposition.

Whether respect to the issue at hand, whether, accepting as true all factual allegations in the Proposed Second Amended Complaint as well as all reasonable inferences that can be drawn therefrom, Plaintiffs have pleaded enough facts to state a plausible claim that Ty'rique had a serious medical need at the time he was arrested, I find that they have. Plaintiffs allege that, shortly before his arrest Ty'rique was engaged in nonsensical ranting that was overheard by the John Doe 911 Operator. (Doc. 60-1, ¶ 66). Plaintiffs allege that a description of Ty'rique's bizarre behavior and their belief that Ty'rique was in the midst of a mental health crisis was relayed to Defendant Haines by the John Doe 911 Operator. (Doc. 60-1, ¶ 70). Last, Plaintiffs allege that Ty'rique's mental health crisis would have been evident to Defendant Haines due to questions asked by the police at the scene and based on Ty'rique's behavior at the scene. (Doc. 60-1, ¶¶ 74-77). Based on these allegations, I find that Plaintiffs have adequately pleaded a claim that Ty'rique's mental health issues at the time of his arrest, and need for medical care, would have been easily recognize by a layperson.

C. WHETHER PLAINTIFFS HAVE PLEADED ENOUGH FACTS TO SHOW THAT DEFENDANT HAINES WAS DELIBERATELY INDIFFERENT

To satisfy the second element of a claim for denial of medical treatment under the Fourteenth Amendment at this stage of litigation, a plaintiff must allege enough facts to show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Stroud*, 2014 WL 2115499 at *8. The Supreme Court has explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As noted in *Stroud*,

> deliberate indifference is "more than an 'inadvertent failure to provide adequate medical care,' " *DeFranco v. Wolfe,* 387 F. App'x 147, 158 (3d Cir. 2010) (quoting *Estelle,* 429 U.S. at 105), and "more than mere negligence or medical malpractice without some more culpable state of mind," *id.* (quoting *Estelle,* 429 U.S. at 106). Rather, deliberate indifference "requires 'obduracy and wantonness,' " such as "conduct that includes recklessness or a conscious disregard of a serious risk." *Id.* (quoting *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999)).

2014 WL 2115499 at *8.

Defendant Haines argues:

> Here, as indicated above, the Proposed Defendants did not have knowledge of Ty'rique's alleged need for medical care. The Proposed Defendants are police officers and not medical personnel. The Proposed Defendants responded to Plaintiffs' residence for reports of a "struggle" with a sledgehammer between Plaintiff Kemrer and Ty'rique. As non-medical personnel, Ty'rique did not present the morning of June 18, 2019 to need medical care. Although Plaintiffs claim to have informed the Proposed Defendants that Ty'rique "snapped" there is no further articulation as to what this means and

> the facts of the proposed Second Amended Complaint indicate this condition presented over the course of a few days. *See* ECF Doc. No. 59-3 at 68. Therefore, the Proposed Defendants did not have knowledge of Ty'rique's alleged need for medical care.
>
> Furthermore, the Proposed Defendants did not intentionally refuse to provide medical treatment to Ty'rique nor did they delay necessary medical care for non-medical reasons. After the Proposed Defendants made contact with Ty'rique he was taken into custody without incident. *See id.* at 74 and 76. Ty'rique was then taken to the Dauphin County Booking Center to be processed. *Id.* at 79. Soon after arrival at the Dauphin County Booking Center on June 18, 2019, Ty'rique was seen *by medical personnel from PrimeCare. See id.* at 89 (emphasis added). Accordingly, the Proposed Defendants did not have knowledge of Ty'rique's need for medical care, and even if the Proposed Defendants did have knowledge, there was no intentional refusal or delay in providing care because Ty'rique—who had just engaged in a struggle with Plaintiff Kemrer over a sledgehammer Ty'rique was wielding—was taken to the Dauphin County Booking Center where <u>he was seen by medical personnel</u> from PrimeCare.

(Doc. 61, pp. 11-12).

In the Proposed Second Amended Complaint, Plaintiffs allege that Defendant Haines "aware that taking decedent Riley to a hospital or mental health facility would ensure that his serious mental health crisis would be addressed." (Doc. 60-1, ¶197). Plaintiffs also allege that, "[b]y taking decedent Riley to a prison instead, said Defendants showed a conscious disregard of the serious risk to decedent Riley that was full of obduracy and wantonness that lead [sic] to serious punishment and harm being inflicted upon decedent Riley." *Id.* Taking these allegations as true and drawing all reasonable inferences therefrom, Plaintiffs have pleaded enough facts at this stage to go forward.

Because Plaintiffs have pleaded enough facts to support both elements of Count VIII of the Proposed Second Amended Complaint under the motion to dismiss standard, allowing amendment is not futile.

V.      CONCLUSION

Accordingly, I find that:

(1)     Plaintiffs' Motion to Amend (Doc. 59) is GRANTED.

Plaintiffs are directed to docket their Proposed Second Amended Complaint attached to their Brief (Doc. 60-1) as a separate docket entry and should update the docket to include any parties that have been added to this case on or before **April 15, 2021**. Thereafter, the normal response deadlines appropriate for amended pleadings will apply.

(2)     Once the Second Amended Complaint has been docketed, the Clerk of Court is directed to issue summons as to any new Defendant, and any previously dismissed Defendant re-introduced to this case in the Second Amended Complaint.

(3)     An appropriate order will issue.


Date: April 8, 2021                              BY THE COURT

                                                 *s/William I. Arbuckle*
                                                 William I. Arbuckle
                                                 U.S. Magistrate Judge