## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

```
-----------------------------------------------------------------X
CARMEN RILEY, ADMINISTRATOR OF      :
THE ESTATE OF TY'RIQUE RILEY,       :
and                                 :
CARMEN RILEY AND THOMAS MATTHEWS :        Civil Action No. 4:20-CV-00325
- KEMRER, individually, as parents and :
natural guardians of decedent Ty'rique Riley :
and as his sole survivors,          :       JURY TRIAL DEMANDED
                                    :
                        Plaintiffs  :
                                    :
                                    :
            v.                      :
                                    :
BRIAN CLARK, WARDEN                 :
                                    :
DAUPHIN COUNTY, PA                  :
                                    :
OFFICER MICHAEL DARCY               :
OFFICER DEMETRIUS GLENN             :
OFFICER AARON OSMAN                 :
SERGEANT RICHARD ADAMS              :
CORPORAL RICHARD WILSON             :
OFFICER CHRISTOPHER HAINES          :
SUSQUEHANNA TOWNSHIP JOHN DOE       :
POLICE OFFICERS 1 – 5               :
SUSQUEHANNA TOWNSHIP JOHN DOE       :
911 OPERATOR                        :
                                    :
PRIMECARE MEDICAL, INC.             :
PRIMECARE JOHN DOE MEDICAL          :
EMPLOYEES 1 – 5                     :
                                    :
CAPTAIN ANDREW KLAHR                :
CAPTAIN STEVE SMITH                 :
CAPTAIN MARK NEIDIGH                :
LIEUTENANT RICHARD ARMERMANN        :
LIEUTENANT GREG MENDENHALL          :
SERGEANT SCOTT ROWE                 :
SERGEANT SCOTT GRIEB                :
```

1

**SERGEANT JASON ADAMS**               :
**SERGEANT MICHAEL BLOUCH**        :
**SERGEANT SCOTT LEWIS**             :
**SERGEANT KEITH BITER**               :
                             :
**OFFICER ROBERT INGERSOL**        :
**OFFICER CAMERON WEAVER**       :
**OFFICER TAYLOR GLENN**           :
**OFFICER MARTIN MYERS**           :
**OFFICER DELTA BAUER**             :
**OFFICER MATTHEW DANNER**        :
**OFFICER STEVE SINGLETON**        :
**OFFICER DEREK UMBERGER**       :
**OFFICER JOSEPH DOYLE**           :
**OFFICER RICHARD OTTEN**         :
**OFFICER KEITH HOFFMAN**        :
**OFFICER ANGELA SWANSON**       :
**OFFICER MICHAEL SHAEFFER**     :
**OFFICER TAMI DONOVAN**         :
                             :
     and                       :
                             :
**DAUPHIN COUNTY PRISON JOHN DOE** :
**CORRECTIONAL OFFICERS 1 - 10**,     :
                             :
              Defendants     :
-----------------------------------------------------------------X

## **SECOND AMENDED COMPLAINT**

### **JURISDICTION AND VENUE**

1.       This action is brought pursuant to 42 U. S. C. §1983, the Fourth and

Fourteenth Amendments to the United States Constitution, the Constitution of the

Commonwealth of Pennsylvania, and Pennsylvania Law.

2.       This Middle District of Pennsylvania Court has original jurisdiction over the

Plaintiffs' federal law claims pursuant to 28 U. S. C. §§1331 and 1343, in that the

claims raise questions of federal law, and jurisdiction over the pendent State Law

claims pursuant to 28 U. S. C. §1367(a) where the state claims are so related to

federal claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.        Venue is proper in this Middle District of Pennsylvania pursuant to 28 U. S. C. §1391(b)(1) where all the Defendants reside in the Commonwealth of Pennsylvania and 28 U. S. C. §1391(b)(2) where a substantial part of the events or omissions giving rise to the Plaintiffs' federal claims occurred within the geographical limits of this District.

4.        This action is also brought under the laws of The Commonwealth of Pennsylvania as Wrongful Death, Survival, Negligence and Medical Negligence actions pursuant to claims arising from Defendants' deliberate and malicious indifference and negligence in failing to train its various personnel in the recognition and treatment of medical and mental health issues in arrestees and inmates and further in depriving decedent Ty'rique Riley of his rights to both due process and equal protection constitutionally guaranteed him, all of which eventually led to his death at the young age of twenty one (21) years old.

**PARTIES**

5.        Plaintiff Carmen Riley, Administrator of the Estate of Ty'rique Riley, as Administrator of the said Estate of Ty'rique Riley, brings this action pursuant to 42 Pa. C. S. A. §8302 (Survival).

6.        Administrator Carmen Riley was appointed Administrator by the Dauphin County Register of Wills on the 22nd day of July, 2019, under Administrative File Number 2219-0658.

3

7.      Plaintiffs Carmen A. Riley and Thomas Matthews-Kemrer are the decedent's natural parents and only survivors, and they reside in Harrisburg, Pennsylvania.  Because the decedent was single and had neither spouse, children, nor any other survivors, the Plaintiffs bring this action on their own behalf as the only people entitled to recover as the decedent's survivors pursuant to 42 Pa.  C.  S.  A.  §8301 (Wrongful Death).

8.      Plaintiffs' Decedent is Ty'rique Riley, who died in Harrisburg, Pennsylvania on July 1, 2019 as the direct and proximate result of the Defendants' individual and joint actions and omissions, all of which occurred in the City of Harrisburg, Dauphin County, Pennsylvania.

9.      A Defendant is Brian Clark, Warden of the Dauphin County Prison having a principal place of business at 501 Mall Road, Harrisburg, PA 17111.  At all times relevant hereto, Defendant Clark was a policy making official for Dauphin County, PA and the ultimate authority in overseeing the training and supervision of the correctional officers, guards and staff who daily engaged in securing and controlling prison inmates, and who participated in and were the cause of decedent Ty'rique Riley's death.

10.      A Defendant is the Dauphin County, PA ("Dauphin County"), a county, political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 101 Market Street, Harrisburg, PA 17101.  At all times relevant hereto, Defendant Dauphin County was responsible for Dauphin County Prison. Defendant Dauphin County employed

4

and was responsible for training and supervising the corrections officers and guards who daily engaged in securing and controlling prison inmates, and who participated in and were the cause of decedent Ty'rique Riley's death.

11.     At all times relevant hereto, Defendants Brian Clark and Dauphin County maintained policies or customs that violated decedent Ty'rique Riley's Constitutional rights and/or were the moving forces behind the constitutional torts of their employees.

12.     A Defendant is Michael Darcy, a Police Officer with the Susquehanna Police, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Ty'rique Riley's death.

13.     A Defendant is Demetrius Glenn, a Police Officer with the Susquehanna Police, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Ty'rique Riley's death.

14.     A Defendant is Aaron Osman, a Police Officer with the Susquehanna Police, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Ty'rique Riley's death.

15.     A Defendant is Richard Adams, a supervisory Police Officer with the Susquehanna Police, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Ty'rique Riley's death

16.     A Defendant is Richard Wilson, a supervisory Police Officer with the Susquehanna Police, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Ty'rique Riley's death.

17.     A Defendant is Chris Haines, a supervisory Police Officer with the Susquehanna Police, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Police Officer participated in and was the cause of decedent Ty'rique Riley's death.

18.     One or more Defendants are Susquehanna Township John Doe Police Officers (Susquehanna John Doe) 1 - 5, having a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Susquehanna John Does participated in and were the cause of decedent Ty'rique Riley's death.

19.     A Defendant is Susquehanna Township John Doe 911 Operator (John Doe 911 Operator), having, upon information and belief, a main place of business at 1900 Linglestown Road, Harrisburg, PA, 17110.  At all times relevant hereto, said Susquehanna John Doe 911 Operator participated in and did cause the harm suffered by decedent Ty'rique Riley.

20.     The complained-of acts and failures to act by the Susquehanna Township Police supervisory and non-supervisory Defendants herein were objectively unreasonable, and were malicious and sadistic and intended to cause harm.

21.     A Defendant is PrimeCare Medical, Incorporated ("Defendant PrimeCare"), a corporation having a main place of business at 3490 Locust Lane

in Harrisburg, PA, 17109.  At all times relevant hereto, Defendant PrimeCare was a corporation that provided, under contract with the Dauphin County Prison, the medical personnel who oversaw the of inmates at the Dauphin County Prison and who trained and supervised the several medical personnel who participated in and were the cause of decedent Ty'rique Riley's death.

22.  At all times relevant hereto, Defendant PrimeCare had a duty to comply with generally accepted medical and mental health standards of care in their medical and mental health treatment of decedent Ty'rique Riley.

23.  Defendant PrimeCare, by and through its agents, workmen, doctors and nurses, violated their duty of care to decedent Ty'rique Riley.

24.  Defendant PrimeCare's violation of its duty of care was a direct and proximate cause and a substantial factor in bringing about the decedent's injuries and eventual death.

25.  One or more Defendants are PrimeCare John Doe Medical Employees ("PrimeCare John Doe") 1 – 5, having a place of business at 3490 Locust Lane in Harrisburg, PA, 17109.   At all times relevant hereto, said PrimeCare John Does participated in and were the cause of decedent Ty'rique Riley's death, and their complained-of acts were objectively unreasonable, malicious and intended to cause harm.

26.  A Defendant is Captain Andrew Klahr, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

7

27.     A Defendant is Captain Steve Smith, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

28.     A Defendant is Captain Mark Neidigh, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

29.     A Defendant is Lieutenant Richard Armermann, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

30.     A Defendant is Lieutenant Greg Mendenhall, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

31.     A Defendant is Sergeant Scott Rowe, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

32.     A Defendant is Sergeant Scott Grieb, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer

participated in and was the cause of decedent Ty'rique Riley's death

33.     A Defendant is Sergeant Jason Adams , a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

34.     A Defendant is Sergeant Michael Blouch, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

35.     A Defendant is Sergeant Scott Lewis, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

36.     A Defendant is Sergeant Keith Biter, a supervisory Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

37.     A Defendant is Officer Robert Ingersoll, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

38.     A Defendant is Officer Cameron Weaver, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA

17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

39.　　　A Defendant is Officer Taylor Glenn, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

40.　　　A Defendant is Officer Martin Myers, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

41.　　　A Defendant is Officer Delta Bauer, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

42.　　　A Defendant is Officer Matthew Danner, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

43.　　　A Defendant is Officer Steve Singleton, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

44.　　　A Defendant is Officer Derek Umberger, a Correctional Officer having a

place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111. At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

45.    A Defendant is Officer Joseph Doyle, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111. At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

46.    A Defendant is Officer Richard Otten, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111. At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

47.    A Defendant is Officer Keith Hoffman, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111. At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

48.    A Defendant is Officer Angela Swanson, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111. At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

49.    A Defendant is Officer Tami Donovan, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111. At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

11

50.     A Defendant is Officer Michael Shaeffer, a Correctional Officer having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, said Correctional Officer participated in and was the cause of decedent Ty'rique Riley's death.

51.     One or more Defendants are Dauphin County Prison John Doe Correctional Officers ("DCP John Doe") 1 - 10, having a place of business at the Dauphin County Prison, 501 Mall Road in Harrisburg, PA 17111.  At all times relevant hereto, DCP John Does participated in and was/were the cause of decedent Ty'rique Riley's death.

52.     The acts and failures to act by the Dauphin County Prison supervisory and non-supervisory Defendants herein were objectively unreasonable, and were malicious and sadistic and intended to cause harm.

53.     At all times relevant hereto, the within described corporate, departmental and individual Defendants were acting under color of law, and the individual Defendants were acting in the course and scope of their duties with their respective corporate or departmental employers, to wit, the Susquehanna Township Police Department, Dauphin County, and PrimeCare Medical, and in furtherance of those corporate or departmental employers' business objectives and purposes.

54.     At all times relevant hereto, the within described corporate and/or departmental employers, to wit, Dauphin County, and PrimeCare Medical, were liable for the acts and failures to act of the individual Defendants, both known and unknown to Plaintiffs, under theories of agency, master-servant, respondeat

12

superior and/or control or right of control.

55.     Plaintiffs bring this action in part under and by virtue of the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301, and the Survival Act, 42 Pa. C.S.A. §8302, to recover damages legally appropriate thereunder, including, but not limited to damages for all hospital, medical, funeral, burial and estate administration expenses incurred, loss of support and contribution which the family would have received from the decedent from the time of his death for the duration of his work life expectancy; compensated for the pecuniary value of the services, society and comfort he would have given to his parents had he lived; and compensated for the loss of the services the decedent would have contributed to his parents, and also for the net amount of money the decedent would have earned from the date of his death and would have earned between that date and the end of his life work expectancy; compensation for the mental and physical pain and suffering and inconvenience the decedent endured from the moment of his injury to the moment of his death.

56.     Plaintiffs' decedent did not bring an action during his lifetime for actual injuries or damages sought here.

57.     At all times relevant hereto, Defendants individually and jointly, and at each successive stage from his initial arrest to his incarceration at the Dauphin County Prison, were under a duty and obligation to recognize and identify that decedent Ty'rique Riley had serious mental health problems and to divert him from a prison environment to a hospital or mental health facility that he might receive treatment instead of punishment.

13

58.     At all times relevant hereto, Defendants individually and jointly breached

that duty by being deliberately indifferent to decedent Ty'rique Riley's known and

obvious serious mental health problems and failing to divert him from a prison

environment to a hospital or mental health facility at which he would have

received treatment instead of incarceration and punishment.

59.     As a direct and proximate result of that deliberate indifference, decedent

Ty'rique Riley was harmed and died on July 1, 2019 at the age of twenty-one

(21) years old.

60.     At all times relevant hereto, Defendants individually and jointly were under

a further duty and obligation to treat decedent Ty'rique Riley reasonably and

humanely and to refrain from subjecting him to unreasonable beatings and

excessive physical force in restraining him.

61.     At all times relevant hereto, however, Defendants breached that duty by

treating decedent Ty'rique Riley unreasonably and inhumanely and subjecting

him to unreasonable beatings and excessive physical force in restraining him as

described herein, and by further failing to properly document or record their

contact with decedent Ty'rique Riley.

62.     As a direct and proximate result of said unreasonable and inhumane

treatment and excessive physical force as described herein to which he was

subjected at the hands of the Defendants, individually and/or jointly, Ty'rique

Riley was harmed and died on July 1, 2019 at the age of twenty one (21) years

old.

63.     All Defendants, with the exception of Dauphin County, and PrimeCare

Medical, are being sued in their individual capacity.

## OPERATIVE FACTS

64.    On or about the early hours of June 18, 2019, at approximately 4:00 AM, Plaintiff Carmen Riley was awakened to see her son standing over her and the decedent's father holding a sledgehammer and mumbling nonsensically about needing to protect his parents.

65.    Shortly thereafter, decedent and his father struggled with the sledgehammer. Plaintiff Carmen Riley telephoned 911 to ask for an ambulance after Plaintiff Thomas Matthews-Kemrer collapsed on the floor.  Plaintiff Riley told the 911 operator that Plaintiff Matthews-Kemrer has a heart condition.

66.    Plaintiff Riley stayed on the phone with the 911 operator (Defendant John Doe 911 Operator) for more than 13 minutes.  During that time, Defendant John Doe 911 Operator heard Plaintiff Riley plead with her son who was having a mental health crisis.  Defendant John Doe 911 Operator heard Plaintiff Riley repeatedly respond to Decedent's nonsensical accusations by stating that there were "No decoys".

67.    Decedent Riley could be heard in the background as Plaintiff Riley spoke to the Defendant John Doe 911.  At one point during the call, Decedent's behavior and unintelligible ranting prompted Defendant John Doe 911 Operator to ask Plaintiff Riley if her son had any mental health conditions, to which Plaintiff Riley responded, "Yeah, he just snapped."

68.    Defendant John Doe 911 Operator heard this response and asked Plaintiff Riley if Decedent had "snapped tonight," to which Plaintiff Riley responded that

Decedent had snapped "in the last couple of days."

69.  In response to Plaintiff Riley's 911 telephone call, Defendant Susquehanna Police dispatched Patrolmen Demetrius Glenn, Michael Darcy and John Doe(s), PFC Chris Haines, Corporal Wilson and Sgt. Richard Adams to the residence.

70.  Defendant John Doe 911 Operator caused or should have caused information about Decedent's mental health condition to be relayed to the officers dispatched to the residence.

71.  Upon reaching the residence, Defendants Glenn, Darcy, Haines, Wilson, Adams and Susquehanna John Does knew or should have known that Decedent was in the middle of a mental health crisis, and that he had "snapped."

72.  Upon arriving at the residence at approximately 4:44 AM, Patrolmen Darcy, and Glenn, along with Corporal Wilson entered the rear of the premises to gain entrance.

73.  The three police officers asked Plaintiff Carmen Riley to open the rear door, but decedent Ty'rique Riley eventually opened the door himself and allowed the officers entry.

74.  At that time, the officers observed that decedent Riley appeared distant and uncommunicative, and he offered no struggle or fight.

75.  At that time, and during an immediate but cursory investigation, Defendants Glenn, Darcy, Haines, Wilson, Adams and Susquehanna John Does learned that decedent Riley had been mumbling incoherently, acting erratic and very strange, and that "something was wrong" with him.

76.  Despite learning this information and despite observing decedent Riley's

16

flat, distant and uncommunicative manner, the officers decided to arrest

Decedent and to that end, they placed him in the rear of a police vehicle.

77.      At that time, Defendants Glenn, Darcy, Haines, Wilson, Adams, John Doe

911 Operator and Susquehanna John Does recognized or should have

recognized that decedent Riley was in the midst of a mental health crisis and

needed medical and mental health treatment.

78.      Defendants Glenn, Darcy, Haines, Wilson, Adams, John Doe 911 Operator and

Susquehanna John Does should have ensured that decedent Riley was taken to

a hospital or other medical facility for observation and treatment but instead

decided to send him to Dauphin County Prison, thereby denying decedent Riley

much needed medical and mental health care and attention.

79.      Despite knowing of decedent Riley's mental health crisis and his need for

medical and mental health care and attention, Defendants Glenn, Darcy, Haines,

Wilson, Adams,  and Susquehanna John Does consciously or recklessly

disregarded the consequences of denying decedent Riley the needed medical

care and attention and instead decided to send him to Dauphin County Prison.

80.      At no point did Defendant Glenn, Darcy, Haines, Wilson, Adams, John Doe 911

Operator or Susquehanna John Does intervene to address decedent Riley's

mental health crisis by directing, transporting and/or ensuring that decedent Riley

be taken to a hospital or other medical facility for observation and treatment.

81.      Instead, Defendant Haines drove decedent Riley to the Dauphin County

Booking Center at Dauphin County Jail.

82.      During transport to the Dauphin County Jail, Defendant Haines observed

decedent's erratic behavior as he spoke in long, nonsensical sentences, prompting Defendant Haines to repeatedly inquire about his mental health.

83.         Defendants Glenn, Darcy, Haines, Wilson, Adams, John Doe 911 Operator and Susquehanna John Does had a duty to obtain mental health treatment for decedent Riley because decedent Riley's mental health crisis was reported to said Defendants by Plaintiff Carmen Riley and because said Defendants could hear and see decedent Riley's obvious mental state and mental distress. Indeed, decedent Riley's serious need for medical and mental health treatment was so obvious that a reasonably trained officer would recognize the necessity for medical and mental health attention.

84.     Unfortunately, Defendants Glenn, Darcy, Haines, Wilson, Adams, John Doe 911 Operator and Susquehanna John Does failed in their duties by being reckless and/or showing a conscious disregard of the serious risk of harm to decedent Riley. Defendants Glenn, Darcy, Haines, Wilson, Adams, John Doe 911 Operator and Susquehanna John Does showed deliberate indifference filled with obduracy and wantonness by ignoring decedent Riley's medical and mental health needs, thereby causing him great harm.

85.         Upon arriving at the Dauphin County Prison, Defendant Haines, along with several Correctional Officers, including Defendants Robert Ingersoll, Cameron Weaver, D. Bauer, Sergeant Scott Grieb and Lieutenant Greg Mendenhall, forced the decedent from the police car and into the Booking Center, and while doing so, they struck the decedent severely and unnecessarily about the head, shoulders and torso.

18

86.     Defendant Dauphin County Prison's Lieutenant Mendenhall sprayed the decedent with oleoresin capsicum (pepper spray) and wrestled him to the ground where the other Correctional Officers beat him further and placed hand and ankle cuffs on him before taking him to Cell 132.

87.     Decedent Riley experienced considerable physical pain and mental anguish at being beaten, pepper sprayed, and wrestled to the ground.

88.     Defendants Ingersoll, Weaver, Bauer, Grieb and Mendenhall then conspired and agreed to cover up their abuse of decedent Riley by submitting reports that supported each other's false account of the event and omitted details about the physical and mental abusive inflicted upon decedent Riley.

89.     At that time, Defendant PrimeCare John Does tended to decedent Riley's injuries, but provided superficial treatment and merely flushed his eyes following the pepper spray.

90.     At that time, however, Defendant PrimeCare John Does recognized or should have recognized that decedent Riley was in need of mental health treatment and had him taken from the prison to a medical or mental health treatment facility.

91.     Said PrimeCare John Does either disregarded or failed to recognize decedent Riley's need for mental health treatment because Defendant PrimeCare failed to train its personnel assigned to duties at the prison in how to recognize serious mental health problems in the prison inmates whom they were assigned to treat and provide medical and mental health care.

92.     Defendant PrimeCare was fully aware that persons confined in prison

often suffer from mental problems and illnesses, and that by failing to train its medical and mental health personnel in how to recognize and treat serious mental health problems in inmates, both inmates and/or prison personnel might be harmed.

93.　　　　In failing to train its medical and mental health personnel in how to recognize and treat serious mental health problems in inmates, Defendant PrimeCare exposed its deliberate indifference to the medical and mental health needs among the prisoners its staff might be called upon to treat, including decedent Ty'rique Riley.

94.　　　　Because Defendant PrimeCare's medical personnel either disregarded or failed to recognize decedent Riley's serious mental health difficulties and then to divert him to a medical or mental health treatment facility, he remained at the mercy of Defendant Dauphin County and its Correctional Officers and was subjected to more physical beatings and mistreatment.

95.　　　　Defendant Dauphin County's correctional officers either disregarded or failed to recognize decedent Riley's need for mental health treatment because Defendant Dauphin County Prison failed to train its correctional officers in how to recognize and address serious mental health problems in the prison inmates whom they were assigned to oversee.

96.　　　　Defendant Dauphin County was fully aware that persons confined in prison often suffered from mental health problems and illnesses, and that by failing to train its correctional officers in how to recognize and address and/or treat serious mental health problems in inmates, both inmates and/or prison

20

personnel might be harmed.

97.     In failing to train its correctional officers in how to recognize and address and/or treat serious mental health problems in inmates, Defendant Dauphin County exposed its deliberate indifference to the medical and mental health needs among the people its correctional officers might be required to guard and oversee.

98.     On or about June 18, 2019, several Defendant Correctional Officers, including Sergeants Jason Adams and Michael Blouch, and Officers Taylor Glenn and Martin Myers, further beat and struck decedent Riley into submission while placing him in a restraint belt.

99.     The actions of said several Defendant Correctional Officers, including Sergeants Jason Adams and Michael Blouch, and Officers Taylor Glenn, Martin Myers and John Doe(s), in so beating the decedent into submission were deliberate and malicious and were intended to cause both mental and physical pain.

100.     While placing decedent Riley in the restraint belt, the said Defendant Correctional Officers used unnecessary physical force to place him in the restraint belt and while placing him in the restrain belt, further injured him physically and mentally.

101.     Decedent Riley experienced considerable pain and anguish at being beaten into submission, and forced into the restraint belt.

102.     Defendants Adams, Blouch, Glenn and Myers then conspired and agreed to cover up their abuse of decedent Riley by submitting reports that supported each

other's false account of the event and omitted details about the physical and mental abusive inflicted upon decedent Riley.

103.      After decedent Riley was injured, Defendant PrimeCare John Does assessed decedent Riley for injuries and merely cleaned a small abrasion on his right wrist.

104.      Upon information and belief, some, but not all, of the incident involving the restraint belt was recorded on a Booking Center camera.

105.      Sometime thereafter, decedent Riley's mental health status was determined to have deteriorated to such a degree that he was regarded a suicide risk and placed in a suicide smock.

106.      Although recognizing that decedent Riley presented a suicide risk, Defendant Dauphin County's Correctional Officers and Defendant PrimeCare John Does should have taken steps to divert the decedent to a medical or mental health treatment facility, but failed to do so.

107.      Instead of taking such steps to divert the decedent to proper treatment facilities, said Correctional Officers and Defendant PrimeCare John Does merely kept him locked and shackled in a suicide watch cell.

108.      While housed in Defendant Dauphin County's prison in a suicide watch cell A1-5, a decision was finally made that decedent should be taken to the Harrisburg Hospital.

109.      At that time, decedent Riley complained of abdominal pain, but his complaints were ignored. Moreover, neither Defendant PrimeCare's staff nor Defendant Dauphin County's Correctional Officers showed any urgency to get

22

him to the hospital.

110. At or about 9:50 AM on June 26, 2019, Defendant Correctional Officers began changing decedent Riley from his suicide smock and into a prison uniform to take him to the hospital, but said Correctional Officers handled him with unnecessary roughness and he was again placed in handcuffs and leg irons.

111. At that time, several Corrections Officers, including Shift Commander Captain Andrew Klahr, Sergeants Scott Lewis and Keith Biter, and Officers Matthew Danner, Steve Singleton, Keith Hoffman and DCP John Does, beat and wrestled the decedent to the ground and again placed him in shackles.

112. Decedent Riley experienced considerable pain and anguish at again being beaten, wrestled to the ground and shackled.

113. Defendants Angela Swanson and Tami Donovan observed decedent Riley being beaten and failed to intervene to stop the abuse.

114. After again beating and wrestling decedent Riley into submission, Captain Andrew Klahr then ordered that decedent Riley be placed in a restraint chair until an ambulance could be summoned.

115. As Captain Klahr, Sergeants Scott Lewis and Keith Biter and Officers Matthew Danner, Steve Singleton, Keith Hoffman and DCP John Does were forcing the decedent into the restraint chair, decedent Riley stopped breathing.

116. Shortly thereafter, Defendant PrimeCare's staff arrived to find decedent Riley unresponsive, pulseless and apneic.

117. Defendant PrimeCare's staff performed chest compressions until personnel from a Life Team Ambulance crew arrived at approximately 10:10 AM

and took over resuscitation efforts.

118.     At approximately 10:49 AM, after trying to revive decedent Riley for over

half an hour, decedent Riley was transported from the Dauphin County prison to

the Harrisburg Hospital Emergency Room.

119.     Decedent Riley was admitted to the hospital upon a chief complaint of

cardiac arrest.

120.     A hospital Inpatient Encounter report dated June 26, 2019, indicated that

decedent Riley was intubated, had unequal pupil size and that his eyes did not

follow objects.

121.     The Inpatient Encounter report also documented that decedent Riley had

an abrasion over his left eyebrow; that his tongue was pink and lacerated; that

his cardiac telemetry showed premature ventricular contractions and that his

capillary refill was sluggish.

122.     The Inpatient Encounter report also reported that decedent Riley's urine

production was diminished and that the urine that was produced was red and

appeared sedimentary.

123.     Decedent Riley's urine was screened, and no drugs were detected in his

urine.

124.     Another Inpatient Encounter Report indicated that, when admitted,

decedent Riley had diffuse subcutaneous emphysema associated with a sternal

fracture, and widely distributed pneumomediastinum and pneumoperitoneum,

rare conditions caused by physical trauma.

125.     In an Inpatient Encounter Report dated June 27, 2019, it was disclosed

24

that decedent Riley was subjected to a bronchoscopy with alveolar lavage to address a preoperative diagnosis of pneumomediastinum and to rule out a tracheal injury.

126.    On July 1, 2019, decedent Riley died, and a Nursing Timeline suggested that his death resulted from external injuries that occurred in Defendant Dauphin County's prison.

127.    His final diagnosis included, *inter alia*, cardiac arrest due to an unspecified cause, cerebral edema, acute kidney failure, acute respiratory failure with hypoxia, anoxic brain damage, a traumatic pneumothorax encounter and an unspecified fracture of the sternum.

128.    Defendants Klahr, Danner, Singleton, Biter, Lewis, Hoffman, Donovan and Swanson conspired and agreed to cover up the abuse inflicted upon decedent Riley by submitting false reports about decedent Riley's beating on June 26, 2019.  Each report purposefully omitted details about the physical and mental abuse inflicted upon decedent Riley in order to cover up the wrongdoings of the Dauphin County Correctional Officers and to attempt to absolve said Defendants of any responsibility for the harm suffered by decedent Riley.

## **FEDERAL CLAIMS**

**COUNT I:   Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -**
**v- DCP Supervisory Officers, DCP Correctional Officers and DCP John Does**
**(Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S.**
**Constitution, addressable via 42 U. S. C. §1983; Conspiracy)**

129.    The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

130.      Defendants Captain Andrew Klahr, Captain Steve Smith, Captain Mark Neidigh, Lieutenant Richard Armermann, Lieutenant Greg Mendenhall, Sergeant Scott Rowe, Sergeant Scott Grieb, Sergeant Jason Adams, Sergeant Michael Blouch, Sergeant Scott Lewis, Sergeant Keith Biter (collectively "DCP Supervisory Officers"), Officer Robert Ingersoll, Officer Cameron Weaver, Officer Taylor Glenn, Officer Martin Myers, Officer Delta Bauer, Officer Matthew Danner, Officer Steve Singleton, Officer Derek Umberger, Officer Joseph Doyle, Officer Richard Otten, Officer Keith Hoffman, Officer Michael Shaeffer (collectively "DCP Correctional Officers"), Officer Angela Swanson, Officer Tami Donovan and Dauphin County Prison John Doe Correctional Officers 1 – 10 ("DCP John Does"), individually and/or jointly were, at all times relevant hereto, acting under color of law and were aware that decedent Riley had a serious medical/psychiatric need, specifically that decedent Riley had serious mental health needs.

131.      Despite knowing of the decedent's serious medical needs, DCP Supervisory Officers, DCP Correctional Officers and DCP John Does were each deliberately and maliciously indifferent to those mental and medical health needs of decedent Riley, and agreed and conspired among themselves to use and/or to cover up the use of unreasonable and excessive force in their efforts to restrain him, to deny him adequate care, and then to cover and conceal their efforts.

132.      In furtherance of their agreement and conspiracy, said DCP Supervisory Officers, DCP Correctional Officers and DCP John Does beat the decedent, and then failed to obtain for him adequate medical care, and, along with Defendants

Swanson and Donovan, further failed to adequately document the levels of force used against him.

133.     Defendants, in agreeing and conspiring to use excessive force against the decedent, despite knowing of his serious medical needs; beating the decedent on several occasions; denying him adequate medical care; and/or covering up the harm inflicted upon decedent by submitting false reports, were so outrageous and malicious and sadistic that it would utterly shock the conscience of a reasonable individual.

134.     As a direct and proximate result of said Defendants' individual and/or joint deliberate and malicious indifference to the serious medical and mental health needs of decedent Riley, and the conspiracy and agreement among them, decedent Riley was held in prison, instead of being sent to a mental hospital, denied proper care and was physically injured and eventually killed.

135.     Defendants' acts and failures to act, under color of law, violated decedent Riley's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States of America and the Commonwealth of Pennsylvania and are redressed here pursuant to 42 U. S. C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against DCP Supervisory Officers, DCP Correctional Officers, Defendant Swanson, Defendant Donovan and DCP John Does, individually and/or jointly, and requests all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

**COUNT II:   Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased
-v- DCP Supervisory Officers, DCP Correctional Officers, DCP John Does and
PrimeCare John Does**
**(Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S.
Constitution, addressable via 42 U. S. C. §1983; Conspiracy)**

136.       The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

137.       Defendants DCP Supervisory Officers as defined in Court I, DCP

Correctional Officers as defined in Court I, DCP John Does, and PrimeCare John

Doe Medical Employees 1-5 ("PrimeCare John Does), individually and/or jointly

were, at all times relevant hereto, acting under color of law and aware that the

decedent had a serious medical/psychiatric need, specifically that he had serious

mental health needs.

138.       Despite knowing of the decedent's serious medical needs, DCP

Supervisory Officers, DCP Correctional Officers, DCP John Does, and

PrimeCare John Does were each deliberately and maliciously indifferent to those

mental and medical health needs of decedent Riley, and agreed and conspired

among themselves to deny him adequate mental and physical health care, and to

thereafter, and then to cover and conceal the excessive force that had been used

against him and his need for mental health treatment.

139.       Defendants, in so agreeing and conspiring to deny decedent Riley

adequate mental and physical care, despite knowing of his serious medical

needs, and then further covering up their actions, were so outrageous, malicious

and sadistic that it would utterly shock the conscience of a reasonable individual.

140.       In furtherance of their agreement and conspiracy, said Defendants failed

to obtain adequate medical and mental health care for decedent Riley, and further failed to adequately document the levels of force used against him that would have exposed the decedent's need for medical and mental health care.

141.     As a direct and proximate result of said Defendants individual and/or joint deliberate and malicious indifference to the serious medical and mental health needs of decedent Riley, and the conspiracy and agreement among them, decedent Riley was kept in prison, instead of being sent to a mental hospital, and was physically injured and eventually killed.

142.     Defendants' acts and failures to act, under color of law, violated decedent Riley's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States of America and the Commonwealth of Pennsylvania and are redressed here pursuant to 42 U. S. C. §1983.

**WHEREFORE**, Plaintiff demands judgment in its favor and against DCP Supervisory Officers, DCP Correctional Officers, DCP John Does and PrimeCare John Does, individually and/or jointly, and requests all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

**COUNT III:   Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -v- Defendants Lieutenant Greg Mendenhall, Sergeant Scott Grieb, Officer Robert Ingersoll, Officer Cameron Weaver, Officer D. Bauer, DCP John Does, and Defendant Christopher Haines (Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S. Constitution, addressable via 42 U. S. C. §1983; Use of Excessive Force)**

143.     The Allegations contained in all preceding Paragraphs are here

29

incorporated and included by reference as if fully set forth here.

144.     As indicated herein, Defendant Christopher Haines drove decedent Riley to the Dauphin County Prison, instead of taking him to a hospital or mental health facility.

145.     Upon arriving at the prison, Defendants Haines, Lieutenant Greg Mendenhall, Sergeant Scott Grieb, Officer Robert Ingersoll, Officer Cameron Weaver, Officer D. Bauer, and DCP John Does, individually and/or jointly, after agreeing to do so as described herein, forcibly removed the decedent from Defendant Haines' police vehicle by brutally beating, striking and hitting the decedent.

146.     Defendants' actions exceeded the normal standards of decent conduct, and were willful, malicious, oppressive, outrageous, and unjustifiable.  Therefore, punitive damages are necessary and appropriate.

147.     As a direct and proximate result of Defendants' actions as more particularly described above, decedent Riley's rights protected under the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure and to be free from the use of excessive force were violated, and the decedent suffered injury as a result.

148.     Defendants subjected decedent Riley to these deprivations of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether decedent's rights would be violated by their actions.

149.     As a direct and proximate result of Defendants' conduct, decedent Riley

30

suffered deprivations of his rights, physical injuries, pain and suffering, emotional

distress, and mental anguish, all to decedent's great detriment and loss.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Lieutenant Greg Mendenhall, Sergeant Scott Grieb, Officer Robert Ingersoll, Officer

Cameron Weaver, Officer D. Bauer, DCP John Does and Christopher Haines,

individually and/or jointly, and requests all appropriate relief, including, but not limited to,

compensatory damages, court costs, punitive damages, attorneys fees and all other

relief as the Court deems appropriate.

**COUNT IV:   Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -v- Defendants Lieutenant Greg Mendenhall, Sergeant Scott Grieb, Officer Robert Ingersoll, Officer Cameron Weaver, Officer D. Bauer, DCP John Does, and Defendant PFC Christopher Haines.**
**(Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Intervene)**

150.        The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

151.        As indicated above, upon decedent Riley's arrival at the Dauphin County

Prison, Defendants Lieutenant Greg Mendenhall, Sergeant Scott Grieb, Officer

Robert Ingersoll, Officer Cameron Weaver, Officer D. Bauer, DCP John Does

and Christopher Haines, individually and/or jointly, forcibly removed the decedent

from Defendant Haines' police vehicle by brutally beating, striking and hitting the

decedent.

152.        As the beating and use of excessive force continued, none of the

individuals present intervened to stop the use of such excessive force or

otherwise bring it to a halt.

31

153.      This failure to intervene in the use of excessive force was so malicious and objectively unreasonable that it would shock the conscience of a reasonable person.

154.      Defendants' failure to intervene exceeded the normal standards of decent conduct, and was willful, malicious, oppressive, outrageous, and unjustifiable. Therefore, punitive damages are necessary and appropriate.

155.      As a direct and proximate result of Defendants' failure to intervene as more particularly described above, decedent Riley's rights protected under the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure and to be free from the use of excessive force were violated, and the decedent suffered injury as a result.

156.      Defendants subjected decedent Riley to these deprivations of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether decedent's rights would be violated by their actions.

157.      As a direct and proximate result of Defendants' failure to intervene, decedent Riley suffered deprivations of his rights, physical injuries, pain and suffering, emotional distress, and mental anguish, all to decedent's great detriment and loss.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants Lieutenant Greg Mendenhall, Sergeant Scott Grieb, Officer Robert Ingersoll, Officer Cameron Weaver, Officer D. Bauer, DCP John Does and Christopher Haines, individually and/or jointly, and requests all appropriate relief, including, but not limited to,

compensatory damages, court costs, punitive damages, attorneys fees and all other

relief as the Court deems appropriate.

**COUNT V: Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -v- DCP Supervisory Officers, DCP Correctional Officers and DCP John Does (Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S. Constitution, addressable via 42 U. S. C. §1983; Use of Excessive Force)**

158.     The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

159.     After being taken into the Dauphin County Prison, instead of being taken

to a hospital or mental health facility, Defendants DCP Supervisory Officers as

defined in Court I, DCP Correctional Officers as defined in Court I and DCP John

Does, individually and/or jointly, subjected the decedent to excessive force,

including by not limited to, shooting excessive pepper spray into his face and

mouth, beatings, and subjecting him to handcuffs and other physical restraints in

such a way as to cause him physical pain and emotional pain and anguish.

160.     Defendants' use of excessive force after decedent Riley was admitted to

the Dauphin County Prison was done maliciously and sadistically for the very

purpose of causing harm, and constituted the deliberate and malicious use of

such excessive force as would shock the conscience of a reasonable person.

161.     Defendants' actions exceeded the normal standards of decent conduct,

and were willful, malicious, oppressive, outrageous, and unjustifiable.  Therefore,

punitive damages are necessary and appropriate.

162.     As a direct and proximate result of Defendants' actions as more

particularly described above, decedent Riley's rights protected under the Fourth

and Fourteenth Amendments to be free from unreasonable search and seizure
and to be free from the use of excessive force were violated, and the decedent
suffered injury as a result.

163.    Defendants subjected decedent Riley to these deprivations of rights
unreasonably, intentionally, wantonly, outrageously, and with conscious and
reckless disregard for whether decedent's rights would be violated by their
actions.

164.    As a direct and proximate result of Defendants' conduct, decedent Riley
suffered deprivations of his rights, physical injuries, pain and suffering, emotional
distress, and mental anguish, all to decedent's great detriment and loss.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants
DCP Supervisory Officers, DCP Correctional Officers and DCP John Does, individually
and/or jointly, and requests all appropriate relief, including, but not limited to,
compensatory damages, court costs, punitive damages, attorneys fees and all other
relief as the Court deems appropriate.

**COUNT VI:   Carmen Riley, Administrator of the Estate of Ty'rique Riley,
Deceased -v- DCP Supervisory Officers, DCP Correctional Officers, Angela
Swanson, Tami Donovan and DCP John Does
(Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S.
Constitution, addressable via 42 U. S. C. §1983; Failure to Intervene)**

165.    The Allegations contained in all preceding Paragraphs are here
incorporated and included by reference as if fully set forth here.

166.    After being taken into the Dauphin County Prison, instead of being taken
to a hospital or mental health facility, Defendants DCP Supervisory Officers as
defined in Court I, DCP Correctional Officers as defined in Court I, Angela

Swanson, Tami Donovan and DCP John Does, individually and/or jointly, observed and/or subjected the decedent to excessive force, including by not limited to, shooting excessive pepper spray into his face and mouth, beatings, and subjecting him to handcuffs and other physical restraints in such a way as to cause him physical pain and emotional pain and anguish.

167.    As the beating and use of excessive force continued after decedent Riley was admitted to the Dauphin County Prison and over the period of time that he stayed at Dauphin County Prison, none of the individuals present intervened to stop the use of such excessive force or otherwise bring it to a halt.

168.    This failure to intervene in the use of excessive force was so malicious and objectively unreasonable that it would shock the conscience of a reasonable person.

169.    Defendants' failure to intervene exceeded the normal standards of decent conduct, and was willful, malicious, oppressive, outrageous, and unjustifiable. Therefore, punitive damages are necessary and appropriate.

170.    As a direct and proximate result of Defendants' failure to intervene as more particularly described above, decedent Riley's rights protected under the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure and to be free from the use of excessive force were violated, and the decedent suffered injury as a result.

171.    Defendants subjected decedent Riley to these deprivations of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether decedent's rights would be violated by their

actions.

172.     As a direct and proximate result of Defendants' failure to intervene,

decedent Riley suffered deprivations of his rights, physical injuries, pain and

suffering, emotional distress, and mental anguish, all to decedent's great

detriment and loss.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

DCP Supervisory Officers, DCP Correctional Officers, Angela Swanson, Tami Donovan

and DCP John Does, individually and/or jointly, and requests all appropriate relief,

including, but not limited to, compensatory damages, court costs, punitive damages,

attorneys fees and all other relief as the Court deems appropriate.

**COUNT VII:   Carmen Riley, Administrator of the Estate of Ty'rique Riley,
Deceased -v- Brian Clark, Dauphin County and DCP Supervisory Officers
(Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U. S.
Constitution, addressable via 42 U. S. C. §1983; Failure to Train and Supervise)**

173.     The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

174.     The actions and inactions of Defendants DCP Supervisory Officers as

defined in Court I, DCP Correctional Officers as defined in Court I and DCP John

Does, which caused decedent Riley physical and emotional injuries and

eventually death, were the direct result of a failure to properly train and supervise

correctional and medical staff at Dauphin County Prison.

175.     Defendants Brian Clark, Dauphin County and DCP Supervisory Officers

failed to properly train and supervise their subordinates when they failed to

implement and enforce polices that trained correctional and medical staff how to

identify and handle inmates with mental health issues and how to identify and apply the proper use of force when dealing with inmates.

176.    At all times relevant hereto, Defendants Brian Clark, Dauphin County and DCP Supervisory Officers were aware of the prevalence of Dauphin County Prison inmates with mental health issues not receiving proper care.

177.    Upon information and belief, in the three (3) months before decedent Riley entered Dauphin County Prison, two (2) inmates suffering from mental health issues (Emily Endrizzi, and James Macaulay) committed suicide after not receiving proper care.

178.    Another Dauphin County Prison inmate (Sarah Quinn) committed suicide in 2017.

179.    Indeed, in the five (5) years preceding decedent Riley's arrival to Dauphin County Prison, ten (10) inmates died while in the custody of Dauphin County Prison.

180.    In January 2019, Charles McPherson, who suffers from bipolar disorder, was taken to the Dauphin County Prison during a manic episode.  His mental illness was not treated, even though officials were away of his condition.  Instead, Correctional Officers subjected Mr. McPherson to excessive uses of force by restraining him in a chair, physically beating him and excessively dousing him with pepper spray.  To add insult to injury, Mr. McPherson was thrown into solitary confinement for 14 days without medication.

181.    At all times relevant hereto, Defendants Brian Clark, Dauphin County and DCP Supervisory Officers were aware of the prevalence of the excessive use of

force by its staff at Dauphin County Prison.

182.    For example, in 2017, Christopher McGraw suffered blunt force trauma after a Dauphin County Prison Correctional Officer intentionally shoved him into a privacy wall in the holding cell.  The Correctional Officer was never disciplined and would go on to assault Jarrett Leaman at the Dauphin County Prison within days of decedent Riley arriving at Dauphin County Prison.  The same Correctional Officer also injured a female African-American inmate by shoving her into a wall in a holding cell at a date before decedent Riley arrived at Dauphin County Prison.

183.    Upon information and belief, no Correctional Officers have been disciplined by Defendants Brian Clark, Dauphin County and/or DCP Supervisory Officers for these actions.  This lack of discipline is a custom and practice at Dauphin County Prison.

184.    Despite knowing of the prevalence of inmate deaths and assaults and despite knowing of the importance of implementing and enforcing polices that train correctional and medical staff how to identify and handle inmates with mental health issues and how to identify and apply the proper use of force when dealing with inmates, Defendants Brian Clark, Dauphin County and DCP Supervisory Officers failed to implement and/or enforce polices that trained correctional and medical staff how to identify and handle inmates with mental health issues and how to identify and apply the proper use of force when dealing with inmates.

185.    The lack of training, supervision and discipline by Defendants Brian Clark,

38

Dauphin County and DCP Supervisory Officers is long-standing and amounts to a custom and practice that is so well settled and permanent at Dauphin County Prison that it virtually constitutes law.

186.    Indeed, this custom and practice was the moving force behind the Constitutional violations committed by Defendants DCP Supervisory Officers, DCP Correctional Officers, DCP John Does and DCP PrimeCare John Does against decedent Riley.

187.    Defendants Brian Clark, Dauphin County and DCP Supervisory Officers encouraged, tolerated, ratified, and/or were deliberately and maliciously indifferent to the patterns, practices and customs and/or to the need for the implementation of some, more or different training, supervision, investigation and/or discipline and failed to train, supervise, investigate and/or discipline Defendants DCP Correctional Officers and DCP John Does in the areas of proper use of force, and the recognition and treatment of those suffering from mental health and/or medical issues.

188.    The acts and failures to act of Defendants Brian Clark, Dauphin County and DCP Supervisory Officers were objectively unreasonable, and so deliberate and malicious that it would shock the conscience of a reasonable person.

189.    Decedent Riley's injuries and damages were a direct and proximate result of Defendants' encouragement, toleration, ratification, and/or deliberate indifference to the patterns, practices and customs and/or to the need for the implementation of some, more or different training, supervision, investigation and/or discipline by failing to train, supervise, investigate and/or discipline

Defendants DCP Correctional Officers and DCP John Does in the areas of proper use of force, and the recognition and treatment of those suffering from mental health and/or medical issues.

190.     As a result, Defendants Brian Clark, Dauphin County and DCP Supervisory Officers deprived decedent Riley of the protections and procedural due process guaranteed him under the Fourth and Fourteenth Amendments to the U. S. Constitution.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants Brian Clark, Dauphin County and DCP Supervisory Officers, individually and/or jointly, and requests all appropriate relief, including, but not limited to, compensatory damages, court costs, punitive damages, attorneys fees and all other relief as the Court deems appropriate.

**COUNT VIII:   Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -v- Defendants Susquehanna Police Officers, Susquehanna John Doe 911 Operator and Susquehanna John Does (Deprivation of Rights Guaranteed Under the 14th Amendment to the U. S. Constitution, addressable via 42 U. S. C. §1983; Failure to Provide Medical Care)**

191.     The Allegations contained in all preceding Paragraphs are here incorporated and included by reference as if fully set forth here.

192.     At all times relevant hereto, pursuant to the 14th Amendment to the United States Constitution, decedent Riley had the right to be free from punishment while in the custody of the Susquehanna Police.

193.     Decedent Riley had the right to appropriate medical and mental health care to address his serious mental health crisis.

194.     Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron

Osman, Patrolman Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines (collectively "Susquehanna Police Officers"), Susquehanna John Doe 911 Operator ("John Doe 911 Operator") and Susquehanna Township John Doe Police Officers 1 – 5 (collectively "Susquehanna John Does"), individually and/or jointly, were compelled by the 14th Amendment to provide medical and mental health care to decedent Riley to address his serious mental health crisis.

195.    Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines, John Doe 911 Operator and Susquehanna John Does had actual knowledge of decedent Riley's serious mental health crisis through repeated reports from Plaintiff Carmen Riley that decedent Riley had "snapped" and through said Defendants' own visual and/or audible observations of decedent Riley.

196.    Despite this knowledge, Defendants Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines, John Doe 911 Operator and Susquehanna John Does showed deliberate indifference to decedent Riley's serious medical and mental health needs by taking him to a prison rather than a hospital or mental health facility.

197.    Said Defendants were aware that taking decedent Riley to a hospital or mental health facility would ensure that his serious mental health crisis would be addressed.  By taking decedent Riley to a prison instead, said Defendants showed a conscious disregard of the serious risk to decedent Riley that was full

41

of obduracy and wantonness that lead to serious punishment and harm being

inflicted upon decedent Riley.

198.        As a direct and proximate result of the actions of Defendants Corporal

Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman

Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines, John Doe

911 Operator and Susquehanna John Does, decedent Ty'rique Riley suffered

deprivations of his rights, physical injuries, pain and suffering, emotional distress,

mental anguish, and eventually death on July 1, 2019 at the age of twenty one

(21) years old.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Corporal Richard Wilson, Sergeant Richard Adams, Officer Aaron Osman, Patrolman

Demetrius Glenn, Patrolman Michael Darcy and PFC Chris Haines, John Doe 911

Operator and Susquehanna John Does, individually and/or jointly, and requests all

appropriate relief, including, but not limited to, compensatory damages, court costs,

punitive damages, attorneys fees and all other relief as the Court deems appropriate.

### COUNT IX:   Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased -v- Defendants PrimeCare and PrimeCare John Does (Medical Negligence)

199.        The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

200.        At all times relevant hereto, Defendant PrimeCare and its medical

providers including PrimeCare John Does had a duty to comply with generally

accepted medical and mental health standards of care in its medical and mental

health treatment of decedent Riley.

201.     Defendant PrimeCare had a duty to establish polices, practices, and

procedures to ensure that inmates admitted to Dauphin County Prison and

suffering from mental health issues, like decedent Riley, received proper

treatment, including being sent to the proper mental health facility.

202.     Defendant PrimeCare, by and through its respective agents, workmen,

doctors and nurses, including PrimeCare John Does, violated its duty of care to

decedent Riley and provided care that was below applicable standards of care

for monitoring and supervising inmates in need of mental health treatment.

203.     Defendant PrimeCare's violation of its duty of care to decedent Riley was

a direct and proximate cause and a substantial factor in bringing about the

decedent's injuries and eventual death.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

PrimeCare and PrimeCare John Does, individually and/or jointly, and requests all

appropriate relief, including, but not limited to, compensatory damages, court costs,

punitive damages, attorneys fees and all other relief as the Court deems appropriate

**COUNT X:  Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased
-v- Defendants DCP Supervisory Officers, DCP Correctional Officers and DCP
John Does
(Intentional Infliction of Emotional Distress)**

204.     The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

205.     At all relevant times hereto, Defendants DCP Supervisory Officers as

defined in Court I, DCP Correctional Officers as defined in Court I and DCP John

Does, individually/or jointly, acted intentionally and recklessly toward decedent

43

Riley.

206.    Said Defendants' acts in deliberately agreeing and conspiring to hurt and

harm the decedent by subjecting him to deliberate excessive and harmful force

and restraints, and then deliberately hurting and harming him as described

herein, caused decedent Riley to suffer severe and extreme emotional pain and

distress.

207.    The severe and extreme emotional pain and distress decedent Riley

suffered was caused by the Defendants' deliberate or reckless individual and/or

joint acts.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

DCP Supervisory Officers, DCP Correctional Officers and DCP John Does, individually

and/or jointly, and requests all appropriate relief, including, but not limited to,

compensatory damages, court costs, punitive damages, attorneys fees and all other

relief as the Court deems appropriate.

**COUNT XI:  Carmen Riley, Administrator of the Estate of Ty'rique Riley, Deceased**
**-v- Defendants Christopher Haines, DCP Supervisory Officers, DCP Correctional**
**Officers and DCP John Does**
**(Assault)**

208.    The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

209.    At all times when decedent Riley was beaten and rough-handled at

Defendant Dauphin County Prison by Defendants Christopher Haines, DCP

Supervisory Officers as defined in Court I, DCP Correctional Officers as defined

in Court I and DCP John Does, individually and/or jointly, said Defendants,

44

individually and/or jointly, intended to cause harmful and offensive physical

contact with decedent Ty'rique Riley.

210.     As a result of said Defendants' acts, decedent Ty'rique Riley was placed

in imminent fear and immediate apprehension that said Defendants would cause

harmful and offensive touching of his person.

211.     Said Defendants, therefore, did assault decedent Ty'rique Riley.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Christopher Haines, DCP Supervisory Officers, DCP Correctional Officers and DCP

John Does, individually and/or jointly, and requests all appropriate relief, including, but

not limited to, compensatory damages, court costs, punitive damages, attorneys fees

and all other relief as the Court deems appropriate.

**COUNT XII:  Carmen Riley, Administrator of the Estate of Ty'rique Riley,
Deceased -v- Defendants Christopher Haines, DCP Supervisory Officers, DCP
Correctional Officers and DCP John Does
(Battery)**

212.     The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

213.     At all times when decedent Riley was beaten and rough-handled at

Defendant Dauphin County Prison by Defendants Christopher Haines, DCP

Supervisory Officers as defined in Court I, DCP Correctional Officers as defined

in Court I and DCP John Does, individually and/or jointly, said Defendants,

individually and/or jointly, intended to cause harmful and offensive physical

contact with decedent Ty'rique Riley, and did, in fact, touch and contact his

physical person harmfully and offensively.

45

214.     As a result of said Defendants' harmful and offensive contact with his

physical person, decedent Ty'rique Riley was battered; said Defendants,

therefore, did batter decedent Ty'rique Riley.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants

Christopher Haines, DCP Supervisory Officers, DCP Correctional Officers and DCP

John Does, individually and/or jointly, and requests all appropriate relief, including, but

not limited to, compensatory damages, court costs, punitive damages, attorneys fees

and all other relief as the Court deems appropriate.

### COUNT XIII:  Plaintiffs Carmen Riley and Thomas Mathews - Kemrer -v- All Defendants
### (Wrongful Death)

215.     The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

216.     Decedent's sole survivors are his parents, Carmen Riley and Thomas

Mathews-Kemrer, who together are entitled to recover damages for his death,

and on whose behalf this action is brought pursuant to the Pennsylvania

Wrongful Death Act 42 Pa.C.S.A. Section 8301 et seq.

217.     Decedent's death was caused by the intentional, malicious, and/or grossly

negligent conduct of Defendants, individually and/or jointly.

218.     As described above, Defendants unlawfully, wantonly, unreasonably,

maliciously, unnecessarily and/or with deliberate and reckless indifference to the

health and welfare of the Decedent and the Plaintiffs, caused the death of

decedent, Ty'rique Riley, by subjecting him to excessive and unwarranted

beatings and other physical force.

219.     As a direct and proximate result of Defendants' individual and joint

actions, decedent Ty'rique Riley was unnecessarily caused extreme physical

pain, mental anguish and suffering, and death, and was deprived of the

enjoyment and pleasure of life.

220.     As a further direct and proximate result of Defendants' actions, decedent's

survivors have suffered serious emotional pain and economic loss due to the

wrongful death of their son, Ty'rique Riley.

221.     As a direct and proximate result of defendant's actions, decedent's

parents are entitled to recover damages for:

    (a)     the loss of the value of decedent's services;

    (b)     loss of decedent's comfort and society;

    (c)     contributions decedent would have made to the plaintiffs from his

labor;

    (d)     all damages recoverable under the statute.

**WHEREFORE**, Plaintiffs Carmen Riley and Thomas Matthews-Kemrer demand

judgment in their favor and against all Defendants, individually and/or jointly, and

request all appropriate relief, including, but not limited to, compensatory damages, court

costs, attorneys fees and all other relief as the Court deems appropriate.

### COUNT XIV: Estate of Ty'rique Riley -v- All Defendants
### (Survival Action)

222.     The Allegations contained in all preceding Paragraphs are here

incorporated and included by reference as if fully set forth here.

47

223.     As a direct and proximate result of Defendants' actions as described herein, Ty'rique Riley suffered grievous bodily injury, and mental and physical pain and suffering.

224.     From the time of his arrest until the time of his death, and throughout his detention, decedent Riley was conscious and aware of the beatings and other harmful acts to which he was subjected by Defendants, individually and/or jointly, and felt extreme pain and suffering as a result thereof.

225.     On behalf of the Estate of Ty'rique Riley, Carmen Riley, Administrator of the Decedent's Estate, brings this action under the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302, and claims for Ty'rique Riley's Estate compensation for all damages suffered by Ty'rique Riley and recoverable under the statute by reason of the grievous bodily injury, mental and physical pain and suffering caused him by the Defendant as described above.

**WHEREFORE**, the Estate of Ty'rique Riley demands judgment in its favor and against all Defendants, individually and/or jointly, and requests all appropriate relief, including, but not limited to, compensatory damages, court costs, attorneys fees and all other relief as the Court deems appropriate.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC**

/s/ Kevin V. Mincey
Kevin V. Mincey


/s/ Riley H. Ross III
Riley H. Ross III
***Attorneys for Plaintiffs***

Date:  January 29, 2021

48