UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, *et al.*, | ) | CIVIL ACTION NO. 4:20-CV-325 |
| Plaintiffs | ) | |
| | ) | (BRANN, C.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| WARDEN BRIAN CLARK, *et al.,* | ) | |
| Defendants | ) | |

REPORT & RECOMMENDATION
*Defendant Swanson's Motion to Dismiss (Doc. 71)*

I.   INTRODUCTION

On August 20, 2019, Carmen Riley (as administrator of the estate and as Ty'rique's parent) and Thomas Matthews (as Ty'rique's parent) (collectively "Plaintiffs") initiated this civil action in the Dauphin County Court of Common Pleas alleging claims related to the death of their son, Ty'rique Riley ("Tyrique").[1] That case was removed to federal court, and the original complaint was amended.

Angela Swanson ("Defendant Swanson) moved to dismiss claims alleged in the Amended Complaint. (Doc. 45). Defendant Swanson's motion was granted. (Docs. 52, 54).

On April 9, 2021, Plaintiffs filed a second amended complaint that asserted new claims against Defendant Swanson. (Doc. 64). Currently pending before the

---

[1] In some portions of the Amended Complaint Defendant Thomas Matthews is referred to as Defendant Thomas Matthews-Kemrer.

court is Defendant Swanson's motion to dismiss Plaintiffs' second amended complaint. (Doc. 71).

Upon consideration of Defendant Swanson's motion, and the parties' briefs (Docs. 74, 80, 84), it is RECOMMENDED that:

(1)    Defendant Swanson's Motion to Dismiss the Second Amended Complaint (Doc. 71) be DENIED.

## II.    BACKGROUND & PROCEDURAL HISTORY

According to the second amended complaint, on June 18, 2019, Plaintiffs' son Ty'rique Riley was exhibiting dangerous behavior due to a mental health problem. (Doc. 64, ¶¶ 64). Plaintiff Riley called 911 for help after Plaintiff Matthews collapsed on the floor while wrestling a sledgehammer out of Ty'rique's hands. (Doc. 64, ¶ 65). During the 911 call, Plaintiff Riley spoke with an unidentified 911 operator ("Defendant 911 Operator"). (Doc. 64, ¶ 66-68). Defendant 911 Operator asked if Ty'rique had any mental health conditions, to which Plaintiff Riley responded "yeah, he just snapped." (Doc. 64, ¶ 67).

In response to Plaintiff Riley's call, several police officers were dispatched to Plaintiffs' residence. (Doc. 64, ¶ 69). When the police arrived, Ty'rique was distant and uncommunicative, and did not struggle or resist when he was arrested and placed in a police vehicle. (Doc. 64, ¶ 74).

Ty'rique was transported to Dauphin County Prison, where he remained from June 18, 2019 through June 26, 2019. (Doc. 64, ¶¶ 78-79). During the days spent in prison, Ty'rique sustained physical injuries that eventually resulted in his death. Plaintiffs allege that at least some of those injuries were inflicted by Defendant Swanson. On the morning of June 26, 2019, Ty'rique was transferred to a hospital. Ty'rique died six days later.

On August 20, 2019, Ty'rique's parents—Plaintiffs Carmen Riley and Thomas Matthews—initiated a civil action in the Dauphin County Court of Common Pleas on behalf of Ty'rique by filing a writ of summons. (Doc. 1-1). On February 11, 2020, Plaintiffs filed their Complaint. (Doc. 1-21). On February 25, 2020, a group of Defendants removed this action to federal court. (Doc. 1).

On March 6, 2020, a telephone conference was held to discuss the issue of jurisdiction because no federal claims were alleged in Plaintiffs' original complaint. During that conference the parties agreed that Plaintiffs would either file a motion to remand or an amended complaint by March 27, 2020. (Doc. 13). On April 17, 2020, after being granted an extension of time, Plaintiffs filed a Motion to Amend. (Doc. 14). On May 6, 2020, Plaintiffs' motion to amend was deemed unopposed and the Amended Complaint was deemed filed. (Doc. 15).

On July 13, 2020, Defendant Swanson, moved to dismiss the first amended complaint. (Doc. 45). On December 21, 2020, I issued a Report recommending that

Defendant Swanson's motion be granted. (Doc. 52). On January 13, 2021, that Report was adopted by Chief Judge Brann. (Doc. 54).

On January 29, 2021, Plaintiffs filed a motion seeking leave to file a second amended complaint. (Doc. 59). On April 8, 2021, that motion was granted. (Doc. 63).

In the second amended complaint, Plaintiffs assert the following claims against Defendant Swanson:

Count I: "Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U.S. Constitution, addressable via 42 U.S.C. § 1983; Conspiracy"

Count VI: "Deprivation of Rights Guaranteed Under the 4th and 14th Amendments to the U.S. Constitution, addressable via 42 U.S.C. § 1983; Failure to Intervene"

Count XIII: "Wrongful Death"

Count XIV: "Survival Action"

(Doc. 64).

On April 26, 2021, Defendant Swanson filed a motion to dismiss the claims asserted against her in Plaintiffs' second amended complaint. (Doc. 71). On May 10, 2021, Defendant Swanson filed a brief in support. (Doc. 74). On May 24, 2021, Plaintiffs filed a brief in opposition. (Doc. 80). On June 7, 2021, Defendant Swanson filed a reply. (Doc. 84).

III.     LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether Plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review of a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." Id. at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothchild, O'Brief & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* The court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Further, it is not proper to "assume that the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility

standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

IV.     ANALYSIS

A.     WHETHER THE § 1983 CLAIMS (COUNTS I & VI) AGAINST DEFENDANT SWANSON SHOULD BE DISMISSED DUE TO LACK OF PERSONAL INVOLVEMENT

Defendant Swanson argues:

Swanson did not participate in any of the following: (i) taking Riley into custody and transport to the prison on June 18, 2018; (ii) changing Riley from a suicide smock to a prison uniform on June 26, 2018; (iii) placing Riley into a restraint chair and shackles on June 26, 2018; and (iv) beatings of Riley while in custody. *See* ECF 64, ¶¶ 64-112, 113-127. The Amended Complaint pleads no facts from which the Court could draw a reasonable inference that Swanson is liable for any wrongdoing, *Iqbal*, 556 U.S. at 678, and fails to articulate whether or how Swanson personally participated in conduct that resulted in a deprivation of Riley's Constitutional rights. *See Baker, Robinson, Dellarciprete, Andrews, supra.*

(Doc. 74, pp. 8-9).

I am not persuaded by Defendant Swanson's argument. Plaintiff alleges that

Defendant Swanson witnessed a use of excessive force by other corrections

officers on June 29, 2019, and wrote a report about that incident that was

deliberately vague and omitted key information. Accordingly, I find Plaintiffs have alleged enough information to show personal involvement.

      B.    WHETHER THE COUNT I (CONSPIRACY) CLAIM AGAINST DEFENDANT SWANSON SHOULD BE DISMISSED

In their second amended complaint, Plaintiffs allege:

128.    Defendant Klahr, Danner, Singleton, Biter, Lewis, Hoffman, Donovan, and Swanson conspired and agreed to cover up the abuse inflicted upon decedent Riley by submitting false reports about decedent Riley's beating on June 26, 2019. Each report purposefully omitted details about the physical and mental abuse inflicted on decedent Riley in order to cover up the wrongdoings of the Dauphin County Correctional Officers and to attempt to absolve said Defendants of any responsibility for the harm suffered by decedent Riley.

(Doc. 64, ¶ 128).

In Count I of the second amended complaint, Plaintiffs allege:

130.    Defendants Captain Andrew Klahr, Captain Steve Smith, Captain Mark Neidigh, Lieutenant Richard Armermann, Lieutenant Greg Mendenhall, Sergeant Scott Rowe, Sergeant Scott Grieb, Sergeant Jason Adams, Sergeant Michael Blouch, Sergeant Scott Lewis, Sergeant Keith Biter (collectively "DCP Supervisory Officers"), Officer Robert Ingersoll, Officer Cameron Weaver, Officer Taylor Glenn, Officer Martin Myers, Officer Delta Bauer, Officer Matthew Danner, Officer Steve Singleton, Officer Derek Umberger, Officer Joseph Doyle, Officer Richard Otten, Officer Keith Hoffman, Officer Michael Shaeffer (collectively "DCP Correctional Officers"), Officer Angela Swanson, Officer Tami Donovan and Dauphin County Prison John Doe Correctional Officers 1-10 ("DCP John Does"), individually and jointly were, at all times hereto, acting under color of law and were aware that decedent Riley had a serious medical/psychiatric need, specifically that decedent Riley had serious mental health needs.

131.  Despite knowing of the decedent's serious medical needs, DCP Supervisory Officers, DCP Correctional Officers and DCP John Does were each deliberately and maliciously indifferent to those mental and medical health needs of decedent Riley, and agreed and conspired among themselves to use and/or to cover up the use of unreasonable and excessive force in their efforts to retrain him, to deny him adequate care, and then to cover and conceal their efforts.

132.  In furtherance of their agreement and conspiracy, said DCP Supervisory Officers, DCP Correctional Officers and DCP John Does beat the decedent, and then failed to obtain for him adequate medical care, and, along with Defendants Swanson and Donovan, further failed to adequately document the levels of force used against him.

133.  Defendants, in agreeing and conspiring to use excessive force against the decedent, despite knowing of his serious medical needs; beating the decedent on several occasions; denying him adequate medical care; and/or covering up the harm inflicted upon decedent by submitting false reports, were so outrageous and malicious and sadistic that it would utterly shock the conscience of a reasonable individual.

134.  As a direct and proximate result of said Defendants' individual and/or joint deliberate and malicious indifference to the serious medical and mental health needs of decedent Riley, and the conspiracy and agreement among them, decedent Riley was held in prison, instead of being sent to a mental hospital, denied proper care and was physically injured and eventually killed.

135.  Defendants' acts and failures to act, under color of law, violated decedent Riley's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States of America and the Commonwealth of Pennsylvania and are redressed here pursuant to 42 U.S.C. § 1983.

(Doc. 64, ¶¶ 130-135).

Defendant Swanson argues:

Rather than plead facts establishing an agreement that included Swanson, the Second Amended Complaint once again simply asserts conclusory allegations. At paragraph 128, Plaintiffs allege various defendants, including Swanson

> . . .conspired and agreed to cover up the abuse inflicted upon decedent Riley by submitting false reports about decedent Riley's beating on June 26, 2019. Each report purposefully omitted details about the physical and mental abuse inflicted upon decedent Riley in order to cover up the wrongdoings of the Dauphin County Correctional Officers and to attempt to absolve said Defendants of any responsibility for the harm suffered by decedent Riley.

ECF 64 ¶ 128. What "details" were omitted? Whose idea was it to omit these details? who agreed to do these things, and most important, when was this agreement reached? The Second Amended Complaint contains none of these facts. Plaintiffs' conclusory allegation of an "agreement" is insufficient to make out a conspiracy claim. *See Ammlung, Muth, supra*.

Plaintiffs' imprecise pleading does not help. At Paragraph 130, Plaintiffs allege that a great number of defendants, including Swanson, ". . .individually and/or jointly . . .were aware that decedent Riley had serious mental health needs." But the Second Amended Complaint contains no allegations of fact establishing that Swanson had any knowledge of Riley's supposed "mental health needs." Again, according to Plaintiffs' pleading, Swanson did not participate in taking Riley into custody, transporting Riley to the prison, or interacting with Riley in any way once he arrived at the prison and thereafter. No facts are pleaded showing Swanson knew that Riley had any "mental health needs", much less that Swanson agreed to a conspiracy to deprive Riley of anything.

Other than these bald allegations, Plaintiffs fail to state a claim for civil conspiracy. Not only do Plaintiffs fail to demonstrate "conscious parallelism," but they also fail to plead any facts in support of the various alleged agreements and understanding, between whom these agreements were reached, and what actions were taken in furtherance

of these agreements. As noted in Part 1 of this section, Plaintiffs fail to plead any individualized conduct on the part of Swanson.

(Doc. 74, pp. 10-11).

In response, Plaintiffs argue:

The Second Amended Complaint properly states a conspiracy claim. First it is alleged that Defendant Swanson reached an agreed [sic] with other Dauphin County Prison Correctional Officers to cover up abuse that was inflicted on Decedent Riley. ECF 64 at ¶ 128. Next, the Complaint states *How* the abuse was covered up by stating that Defendant Swanson submitted false reports about the beating Decedent Riley received on June 26, 2019 and specifically failed to state the level of force used against Decedent Riley. ECF 64 at ¶¶ 128, 132. Details about the report were also alleged by stating that details about the physical and mental abuse suffered by Decedent Riley were omitted. *Id.* Moreover, it was alleged that the purpose of omitting the details was to cover up the wrongdoings of the Correctional Officers and to try to absolve them of the harm inflicted upon Decedent Riley. *Id.* Contrary to Defendant Swanson's argument, these allegations show Defendants direct participation in the conspiracy and provide not only details of her actions, but also the reasons for her actions.

(Doc. 80, p. 3).

In Count I of the second amended complaint, Plaintiffs assert a claim that various Dauphin County Prison supervisors and corrections officers, including Defendant Swanson, conspired to conceal the use of excessive force on June 26, 2019.

To establish a § 1983 conspiracy claim, a plaintiff "must allege facts that plausibly show: (1) the existence of a conspiracy and (2) deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Jackson-Gilmore v.*

*Dixon*, No. 04-03759, 2005 WL 3110991 (E.D. Pa. Nov. 17, 2005). "Such rights include, of course, those protected by the Due Process Clause of the Fourteenth Amendment, such as the 'right to be heard in an impartial forum,' and the 'right of access to the courts." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (internal citations omitted). The Third Circuit has recognized these rights are denied when "law enforcement officers conspire to cover up constitutional violations." *Id.*

Defendant Swanson argues that Plaintiffs have not pleaded enough facts to meet the first element of their § 1983 conspiracy claim—the existence of a conspiracy—because they have not alleged enough facts to show an agreement between Defendant Swanson and the other alleged "conspirators." I am not persuaded.

In *Jutrowski*, the Third Circuit explained that:

> After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ). To show agreement, he must demonstrate that "the state actors named as defendants in the[ ] complaint somehow reached an understanding to deny [the plaintiff] his rights," *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993), and in the absence of direct proof, that "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence, *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Such circumstantial evidence may include that the alleged conspirators "did or said

> something . . . to create an understanding," "the approximate time
> when the agreement was made, the specific parties to the agreement[,]
> the period of the conspiracy, or the object of the conspiracy." *Great
> W. Mining*, 615 F.3d at 178–79 (citations omitted). And in the context
> of an alleged conspiracy among police officers, it may manifest as
> "conversations" between officers about the incident, "allegedly
> distorted" stories that "emerged," an "awareness of conflicting
> stories" and "irregularities in the series of official investigations" into
> the incident. *Hampton v. Hanrahan*, 600 F.2d 600, 627–28 (7th Cir.
> 1979), *rev'd in part on other grounds by Hanrahan v. Hampton*, 446
> U.S. 754 (1980).

*Jutrowski*, 904 F.3d at 295; *see also Swiggett v. Upper Merion Twp.*, 2008 WL

4916039 at *3 (E.D. Pa. Nov. 17, 2008) (finding that a plaintiff adequately pleaded

the first element of a conspiracy claim by alleging that specific defendants entered

into a conspiracy to cover up the use of excessive force during an arrest by filing a

false police report). I find that, accounting for the facts alleged and drawing

reasonable inferences, there is enough in the second amended complaint to show

agreement.

C.    WHETHER THE COUNT VI (FAILURE TO PROTECT) CLAIM AGAINST
      DEFENDANT SWANSON SHOULD BE DISMISSED

In the second amended complaint, Plaintiffs allege:

110.   At or about 9:50 AM on June 26, 2019, Defendant Correctional
       Officers began changing decedent Riley from his suicide smock
       and into a prison uniform to take him to the hospital, but said
       Correctional Officers handled him with unnecessary roughness
       and he was again placed in handcuffs and leg irons.

111.   At that time, several Corrections Officers, including Shift
       Commander Captain Andrew Klahr, Sergeants Scott Lewis and
       Keith Biter, and Officers Matthew Danner, Steve Singleton,

Keith Hoffman and DCP John Does, beat and wrestled the decedent to the ground and placed him in shackles.

112. Decedent Riley experienced considerable pain and anguish at again being beaten, wrestled to the ground and shackled.

113. Defendants Angela Swanson and Tami Donovan observed Decent Riley being beaten and failed to intervene to stop the abuse.

(Doc. 64, ¶¶ 110-113).

In Count VI of the second amended complaint, Plaintiffs allege:

166. After being taken into the Dauphin County Prison, instead of being taken to a hospital or mental facility, Defendants DCP Supervisory Officers as defined in Court [sic] I, DCP Correctional Officers as defined in Court 1, Angela Swanson, Tami Donovan and DCP John Does, individually and/or jointly, observed and/or subjected the decedent to excessive force, including by [sic] not limited to, shooting excessive pepper spray into his face and mouth, beatings, and subjecting him to handcuffs and other physical restraints in such a way as to cause him physical pain and emotional anguish.

167. As the beating and use of excessive force continued after decedent Riley was admitted to the Dauphin County Prison and over the period of time that he stayed at Dauphin County Prison, none of the individuals present intervened to stop the use of such excessive force or otherwise bring it to a halt.

168. This failure to intervene in the use of excessive force was so malicious and objectively unreasonable that it would shock the conscience of a reasonable person.

169. Defendants' failure to intervene exceeded the normal standards of decent conduct, and was willful, malicious, oppressive, outrageous, and unjustifiable. Therefore, punitive damages are appropriate.

170.   As a direct and proximate result of Defendants' failure to intervene as more particularly described above, decedent Riley's rights protected under the Fourth and Fourteenth Amendments to be free from unreasonable search and seizure and to be free from the use of excessive force were violated, and the decedent suffered injury as a result.

171.   Defendants subjected decedent Riley to these deprivations of rights unreasonably, intentionally, wantonly, outrageously, and with conscious and reckless disregard for whether decedent's rights would be violated by their actions.

172.   As a direct and proximate result of Defendants' failure to intervene, decedent Riley suffered deprivations of his rights, physical injuries, pain and suffering, emotional distress, and mental anguish, all to decedent's great detriment and loss.

(Doc. 64, ¶¶ 166-172).

Defendant Swanson argues:

No allegations establish that Swanson knew of any alleged constitutional rights violation, or had an opportunity to intervene. Rather, Plaintiffs make a single allegation that "Defendants Angela Swanson and Tami Donovan observed decedent Riley being beaten and failed to intervene to stop the abuse." ECF Doc. 64, ¶113. Plaintiff's lack of the *prima facial* element that Swanson that Swanson [sic] had a realistic opportunity to intervene. Further, Plaintiffs fail to plead (i) when Swanson allegedly observed the "beating"; (ii) where Swanson was when the events took place; or (iii) how long the incident occurred relative to Swanson' [sic] observation of the same, such that she could be charged with waiting too long to take action.

(Doc. 74, p. 12).

In response, Plaintiffs argue:

Despite Defendant Swanson's assertions, the Second Amended Complaint alleges specifics about Decedent Riley's mental health status, the excessive force used against him, and the opportunity that Defendant Swanson had to intervene. Specifically, the Second

Amended Complaint states that Decedent Riley's mental health status was determined to have deteriorated so much that he was regarded a suicide risk and placed in a suicide smock. ECF 64 at ¶ 105. Defendant Swanson knew of Decedent Riley's condition because she was a Correctional Officer at Dauphin County Prison who witnessed several of her fellow Correctional Officers beat Decedent Riley while he was being changed out of his suicide smock and into a prison uniform beginning at roughly 9:50 am on June 26, 2019. ECF 64 at ¶¶ 110-113. Despite observing Decedent Riley being beaten and having excessive forced [sic] used against him, she failed to intervene to stop the abuse. ECF 64 at ¶ 113. Defendant Swanson had the opportunity to intervene as she was present when the excessive force was being used against Decedent Riley. However, she failed to do so. Instead, Defendant Swanson helped to cover up the abuse and excessive force by submitting a report that failed to adequately document the levels of force used against Decedent Riley. ECF 64 at ¶ 128, 130, 132. Any claims that Defendant Swanson is not aware of the claims against her to allow her to defend herself must fail given the allegations of in [sic] the Second Amended Complaint and given the fact that Defendant Swanson is well aware of the report that she authored and submitted.

(Doc. 80, pp. 4-5).

A prison guard's failure to intervene in another guard's use of excessive force can form the basis of liability under Section 1983. *Okey v. Strebig*, No. 1:12-CV-609, 2012 WL 5439042, at *7 (M.D. Pa. Nov. 7, 2012) *aff'd by* 531 F. App'x 212 (3d Cir. 2013). In order to prevail on a failure-to-intervene claim, Plaintiffs must show: "(1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was 'a realistic and reasonable opportunity to intervene.'" *Knight v. Walton*, No. 2:12-CV-984, 2014 WL 1316115, at *8 (W.D. Pa. Mar. 28, 2014) (quoting *Smith v. Mensinger,* 293 F. 3d 641, 651 3d Cir. 2002)).

I find that Plaintiffs have alleged enough information to proceed with their failure to protect claim against Defendant Swanson. Plaintiffs allege that Defendant Swanson observed Plaintiff being beaten by several officers at 9:50 AM on June 26, 2019, and did not intervene. To the extent Defendant Swanson argues that Plaintiff did not allege enough facts to show that Defendant Swanson had a reasonable opportunity to intervene in the June 29, 2019 beating, I disagree. Courts have dismissed failure to intervene claims at the motion to dismiss stage where the facts alleged in the complaint suggest that the "encounter was so brief, that even viewed in the light most favorable to [the plaintiff], the [failure to intervene defendant] simply would have had no opportunity to instruct [the individual using force] to stop." *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018); *see also Howard v. Hollenbaugh*, 2021 WL 602722 at *6 (M.D. Pa. Feb. 16, 2021) (finding that a plaintiff failed to allege facts supporting a plausible claim for relief for failure to intervene because the plaintiff alleges he was tased "suddenly" and "without warning"). However, in this case, Plaintiffs describe an incident involving use of force against one inmate by more then seven corrections officers that involved changing Ty'rique into a suicide smock. Applying the proper standard, which requires this court to accept as true all facts alleged and construe make all reasonable inferences in Plaintiff's favor, Plaintiff has alleged enough facts from

which the court can infer that Defendant Swanson may have had a reasonable opportunity to intervene.

Accordingly, this claim against Defendant Swanson should be permitted to proceed.

D.   WHETHER DEFENDANT SWANSON IS ENTITLED TO QUALIFIED IMMUNITY

Defendant Swanson argues:

In this matter, the Court need look no further than the first prong of the qualified immunity analysis. As explained elsewhere in this Brief, the Second Amended Complaint fails to set forth any facts whatsoever establishing that Swanson violated any of Riley's statutory or constitutional rights. Accordingly, because the Second Amended Complaint fails to plead facts showing that Swanson violated any of Riley's constitutional or statutory rights, Swanson is entitled to qualified immunity.

To the extent that the Court finds Plaintiffs satisfy the first prong, as plead (no individualized action or opportunity to intervene), Swanson did not violate clearly established rights. Thus qualified immunity bars Plaintiffs' claims against Swanson.

Lastly, even if the Court determines Swanson violated a clearly established right, her actions as plead amounted to reasonable mistakes of judgment.

(Doc. 74, pp. 12-13).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions:

whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Defendant Swanson argues that she is entitled to qualified immunity because Plaintiffs did not meet the first element—violation of a statutory or constitutional right. As explained in Sections IV. (A), (B), and (C) of this Report, I find that Plaintiffs have adequately pleaded a violation of Ty'rique's constitutional rights by Defendant Swanson.

Proceeding to the second element—whether the constitutional right at issue was clearly established at the time it was violated—I find that Defendant Swanson has not adequately developed this issue in her brief.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.' " *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has stated that this standard does not require a case directly on point but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly

incompetent or those who knowingly violate the law." *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Taylor v. Barkes*, 575 U.S. 822 (2015).

The dispositive question that the court must ask is "whether the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Davenport v. Borough of Homestead*, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." *Reichle*, 566 U.S. at 664.

Although Defendant Swanson bears the burden of showing that she is entitled to qualified immunity, she has not cited any decision applying qualified immunity under similar facts. In light of the inadequate briefing on this issue, I recommend that Defendant Swanson's request for dismissal on the basis of qualified immunity be denied. Defendant Swanson is free to raise this issue again with appropriate briefing at a later date. *See e.g. Bruscianelli v. Hicks*, 2021 WL 1139844 at *3 (D.N.J. Mar. 24, 2021) (declining to dismiss on the basis of qualified immunity due to inadequate briefing).

E.    WHETHER COUNTS XIII AND XIV SHOULD BE DISMISSED

In Count XIII (Wrongful Death) of the second amended complaint, Plaintiffs

allege:

> 216.   Decedent's sole survivors are his parents, Carmen Riley and Thomas Mathews-Kemrer, who together are entitled to recover damages for his death and on whose behalf this action is brought pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. Section 8301 et seq.

> 217.   Decedent's death was caused by the intentional, malicious, and/or grossly negligent conduct of Defendants, individually and/or jointly.

> 218.   As described above, Defendants unlawfully, wantonly, unreasonably, maliciously, unnecessarily and/or with deliberate and reckless indifference to the health and welfare of the Decedent and the Plaintiffs, caused the death of decedent, Ty'rique Riley, by subjecting him to excessive and unwarranted beatings and other physical force.

> 219.   As a direct and proximate result of Defendants' individual and joint actions, decedent Ty'rique Riley was unnecessarily caused extreme physical pain, mental anguish and suffering, and death, and was deprived of the enjoyment and pleasure of life.

> 220.   As a further direct and proximate result of Defendants' actions, decedent's survivors have suffered serious emotional pain and economic loss due to the wrongful death of their son, Ty'rique Riley.

(Doc. 64, ¶¶ 216-220).

In Count XIV (Survival Action) of the second amended complaint, Plaintiffs

allege:

223.   As a direct and proximate result of Defendants' actions as described herein, Ty'rique Riley suffered grievous bodily injury, and mental and physical pain and suffering.

224.   From the time of his arrest until the time of his death, and throughout his detention, decedent Riley was conscious and aware of the beatings and other harmful acts to which he was subjected by Defendants, individually and/or jointly, and felt extreme pain and suffering as a result thereof.

225.   On behalf of the Estate of Ty'rique Riley, Carmen Riley, Administrator of the Decedent's Estate, brings this action under the Pennsylvania Survival Act, 42 Pa. C.S.A. Section 8302, and claims for Ty'rique Riley's Estate compensation for all damages suffered by Ty'rique Riley and recoverable under the statute by reason of the grievous bodily injury, mental and physical pain and suffering caused him by Defendant as described above.

(Doc. 64, ¶¶ 223-225).

Defendant Swanson argues:

Count XIII purports to asserts [sic] a state law claims [sic] under the Pennsylvania Wrongful Death and Survival Act, 42 Pa. Conn. Stat. Ann. §§ 8301 and 8302. Again, these claims fail.

"The Pennsylvania Wrongful Death and Survival Act, 42 Pa.C.S. §§ 8301, 8302, was enacted to allow the survival of viable causes of action for bodily injury to a deceased, beyond the life of a victim. The Wrongful Death and Survival <u>Act did not create a new theory of liability</u> but merely allowed a tort claim of the decedent to be prosecuted. As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes and such theory is subject to defenses." *Becker v. Carbon Cty.,* 177 F.Supp.3d 847 (M.D. Pa. 2016) (emphasis added) (quoting *Ferencz v. Medlock,* 905 F.Supp.2d 656, 674 (W.D. Pa. 2012)).

As explained in detail above, Plaintiffs have failed to plead a cognizable tort claim. As such, their Wrongful Death and Survival

actions both fail. *See Becker*, 177 F.Supp.3d at 847. Counts XIII and XIV must be dismissed.

(Doc. 74, pp. 14-15).

In response, Plaintiffs argue:

Defendant Swanson argues that Plaintiffs' Wrongful Death and Survival claims fail because Plaintiffs fail to state underlying torts. Because Plaintiffs have successfully alleged the claims of Conspiracy and Failure to Intervene, Defendant Swanson's claims fail.

(Doc. 80, p. 7).

I am not persuaded by Defendant Swanson's argument that Plaintiff's wrongful death and survivor act claims should be dismissed. As explained in Sections IV. (A), (B), and (C) Plaintiffs have pleaded plausible § 1983 claims against Defendant Swanson. *See e.g. Beaty v. Delaware County*, No. 21-CV-1617, 2021 WL 4026373 at *3 (E.D. Pa. Aug. 5, 2021) (allowing state wrongful death claim on decedent's behalf via § 1983 to proceed past the pleading stage); *Maldet v. Johnstown Police Dep't,* no. 2:19-CV-325, 2019 WL 2435869 at *7 n. 7 (W.D. Pa. June 11, 2019).

V.     RECOMMENDATION

Accordingly, it is RECOMMENDED that:

(1)     Defendant Swanson's Motion to Dismiss (Doc. 71) be DENIED.

Date: December 23, 2021                    BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, *et al.*, | ) | CIVIL ACTION NO. 4:20-CV-325 |
| Plaintiffs | ) | |
| | ) | (BRANN, C.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| WARDEN BRIAN CLARK, *et al.,* | ) | |
| Defendants | ) | |

<u>NOTICE OF LOCAL RULE 72.3</u>

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: December 23, 2021                    BY THE COURT

<u>*s/William I. Arbuckle*</u>
William I. Arbuckle
U.S. Magistrate Judge