UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, *et al.*, | ) | CIVIL ACTION NO. 4:20-CV-325 |
| Plaintiffs | ) | |
| | ) | (BRANN, C.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| WARDEN BRIAN CLARK, *et al.*, | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**
*Defendant PrimeCare's Motion for Protective Order (Doc. 133)*

**I.   INTRODUCTION**

When a prisoner dies in custody, the circumstances of the death are rightfully scrutinized. Ty'rique Riley's family seeks, via this lawsuit, to look carefully into his death. Riley died on July 1, 2019, while in custody.

According to the second amended complaint, Riley was arrested on June 18, 2019, at 4:40 a.m. in his parents' home while suffering a mental health crisis. (Doc. 64).[1] Instead of being taken to a hospital for mental health treatment, he was taken to Dauphin County Prison, where he was brutally assaulted and placed in a cell.

Riley remained at the Dauphin County Prison from June 18, 2019, through June 26, 2019. (Doc. 64, ¶¶ 78-79). During the days spent in prison, Riley sustained physical injuries at the hands of correction staff that eventually resulted in his death. At some point he was determined to be a suicide risk and placed in a

---

[1] The facts necessary to this discovery issue are according to the amended complaint and do not represent a finding by the Court that these facts are true.

Page 1 of 6

suicide watch cell, locked and shackled. (Doc. 64, p. 22, ¶107). On the morning of June 26, 2019, he was beaten and placed in a restraint chair. He "stopped breathing, was unresponsive, pulseless and apneic." (Doc. 64, p. 23, ¶¶115-116). He was transferred to Harrisburg Hospital, but died six days later. It is alleged that his death resulted from external injuries that occurred at the hands of the staff while he was in prison. (Doc. 64, p. 25, ¶126). Plaintiffs also allege that there is a history of mistreatment of mentally ill prisoners at Dauphin County Prison, and that this history resulted in ten deaths in five years. (Doc. 64, ¶¶ 176-190).

Dr. Garrett Rosas, Psy.D., is a psychologist, and was a PrimeCare employee who treated Riley while Riley was housed in Dauphin County Prison.[2] Dr. Rosas began work at the prison on April 15, 2019. He examined Riley on June 18, 2019. (Doc. 133-1, p. 33). Rosas is not a named defendant in this case. Plaintiffs deposed Rosas on July 7, 2022. He was asked about his education, training, work experience, discipline, policies, procedures, and the treatment he provided to Riley. (Doc. 133, ¶ 9).

PrimeCare fired Rosas on January 10, 2023, seventeen days after an incident involving alleged mistreatment of two suicidal prisoners. Rosas filed a

---

[2] The facts regarding Dr. Rosas' termination and whistleblower lawsuit are taken from the Motion for Protective Order (Doc. 133) and the attached exhibits (Docs. 133-1, the deposition of Dr. Rosas; and 133-2, the whistleblower lawsuit complaint). Like the facts in the amended complaint, these facts are necessary to this discovery issue and do not represent a finding by the Court that these facts are true.

"whistleblower" lawsuit on May 17, 2023, in the Court of Common Pleas of Dauphin County. In that lawsuit he alleges that his firing was retaliation for his complaints about his supervisor, Dr. Robert Nichols, and Nichols' treatment of a mentally ill prisoner in 2022. He also suggests that it was a practice of the prison and medical staff to encourage mistreatment of mentally ill prisoners. Nichols is not a defendant in either lawsuit. He did not treat Riley while Riley was in Dauphin County Prison in 2019.

Plaintiffs now want to depose Rosas a second time to inquire into the details of his whistleblower allegations. Defendant PrimeCare, the medical provider for the prison and Nichols' employer, seeks a protective order to prevent this second deposition. It alleges that it is a "fishing expedition" into irrelevant matters. Plaintiffs disagree, and oppose the motion. The matter is fully briefed and ready to decide.

## II.     LEGAL STANDARD

Rule 26(c)(1) of the Federal Rules of Civil Procedure permits a court to issue a protective order in order to regulate the terms, conditions, time or place of discovery. It provides, in relevant part, that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute

without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . .[3]

The party seeking the protective order bears the burden of persuasion.[4] To meet this burden, it must "show good cause by demonstrating a particular need for protection."[5] "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."[6] Indeed, the "harm must be significant, not a mere trifle."[7]

Rulings regarding the proper scope of discovery under Rule 26 are considered non-dispositive.[8] A Magistrate Judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion."[9]

## III. ANALYSIS

Defendant PrimeCare argues events that occurred more than three years after Riley died have no relevance to the present lawsuit. Especially since Nichols played no role in providing any treatment to Riley. (Doc. 137, pp. 4-5). Defendant

---

[3] Fed. R. Civ. P. 26(c)(1).
[4] *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Halsey v. Pfeiffer*, Civ. No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010).
[9] *Id. (quoting Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also George v. Pennsylvania Tpk. Comm'n*, No. 1:18-CV-766, 2020 WL 2745724, at *2 (M.D. Pa. May 27, 2020).

PrimeCare argues that the information about Rosas' December 2022 lawsuit has no relevance to the present lawsuit, and that permitting a second deposition "is nothing more than a fishing expedition into irrelevant matters with a disgruntled former employee who seems intent on causing embarrassment to PrimeCare." (Doc. 137, pp. 3-4).

In response Plaintiffs argue that Defendant PrimeCare is unable to show undue burden or expense and that a second deposition is required because it would be "Plaintiff[s'] first opportunity to question Dr. Rosas about newly revealed information relevant to the subject matter of this action." (Doc. 140, pp. 3-4) (citing cases). They further argue: "[t]his second deposition is justified because the suspicion of PrimeCare employees placing arrestees on suicide watch as a punitive measure only came to light after Dr. Rosas' first deposition." *Id.* at 5.

We agree that Defendant PrimeCare has not met its burden of showing good cause by demonstrating a need for protection. Although it alleges that Dr. Rosas is "intent on causing embarrassment to PrimeCare" through his whistleblower lawsuit, it does not offer a specific example of how permitting a second deposition of Rosas would result in further embarrassment. A second deposition is reasonable, given the new allegations in the whistleblower lawsuit. It may well be that Dr. Rosas will not provide any facts linking his whistleblower case to the policy or

events that led to Riley's death, but Plaintiffs should have the opportunity to explore that link with a second deposition.

## IV.     CONCLUSION

For the reasons explained in this Memorandum Opinion:

(1)     Defendant PrimeCare's motion for protective order (Doc. 133) is DENIED.

(2)     An appropriate order will follow.

Date: September 19, 2023                              BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge
