# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Estate of Ty'rique Riley, et al. | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| V. | : | NO. 4:20-cv-325 |
| | : | |
| Brian Clark, et.al. | : | JURY TRIAL DEMANDED |
| Defendants | : | |

## REPLY BRIEF OF DEFENDANTS BRIAN CLARK, DAUPHIN COUNTY, ANDREW KLAHR, STEVE SMITH, MARK NEIDIGH, RICHARD ARMERMANN, GREG MENDENHALL, SCOTT GRIEB, JASON ADAMS, MICHAEL BLOUCH, SCOTT LEWIS, KEITH BITER, ROBERT INGERSOLL, CAMERON WEAVER, TAYLOR GLENN, MARTIN MYERS, DELTA BAUER, STEVE SINGLETON, TAMI DONOVAN, AND KEITH HOFFMAN IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,
Lavery Law

Date: June 10, 2024

/s/ Frank Lavery, Jr.
PA Bar No. 42370
225 Market Street, Suite 304
Harrisburg, PA 17101-2126
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
Attorney for Defendants, Brian Clark,
Dauphin County, Andrew Klahr,
Steve Smith, Mark Neidigh, Richard
Armermann, Greg Mendenhall, Scott Grieb,
Jason Adams, Michael Blouch, Scott Lewis,
Keith   Biter, Robert Ingersol, Cameron
Weaver, Taylor Glenn, Martin Myers,
Delta Bauer, Steve Singleton, Tami Donovan and
Keith Hoffman

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.    INTRODUCTION....................................................................................1

II.    ARGUMENTS .......................................................................................2

  1. The County Defendants did not use excessive force on the Decedent nor conspired to use excessive force.............................................................2

    a.    Defendants' use of force was objectively reasonable when Decedent arrived at the Booking Center ...............................................6

    b.    Defendants' use of force was objectively reasonable when Decedent was placed in the restraint belt .............................................8

    c.    Defendants' use of the restraint chair was objectively reasonable .............9

    d.    Plaintiffs failed to demonstrate a failure to supervise.................................9

    e.    Plaintiffs failed to produce any factual evidence of a conspiracy to commit excessive use of force on the Decedent ..........................................10

  2.  Plaintiffs failed to demonstrate the County Defendants deprived Decedent of medical care, or conspired to deny Decedent medical care ...............................11

  3. The County's training policies were not deficient, and Plaintiffs' *Monell* claims fail...............................................................................15

  4. County Defendants are entitled to Qualified Immunity ...................................18

  5. All of Plaintiffs' other claims against County Defendants fail as a matter of law...................................................................................19

III.    CONCLUSION.....................................................................................19

CERTIFICATION OF COUNSEL .........................................................................20

CERTIFICATE OF SERVICE ............................................................................21

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 26 L. Ed. 2d 142,
90 S. Ct. 1598 (1970)...................................................................................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986)................................................................................11

*Bornstein v. Monmouth Cnty. Sheriff's Off.*, 658 Fed. Appx. 663
(3d Cir. 2016) ...............................................................................................16

*Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180 (3d Cir. 2009) ......................10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548,
91 L. Ed. 2d 265 (1986)................................................................................1

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004)......................4,5

*Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001) ......................4

*Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 132 S. Ct. 1510,
182 L. Ed. 2d 566 (2012)...............................................................................6

*Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) ....................................12

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................................................3

*Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999).....................................................3

*Headwaters Forest Def. v. Cnty. Of Humboldt*, 211 F.3d 1121
(9th Cir. 2000) ....................................................................................... 3, 4, 5

*Jacobs v. Cumberland Cnty.*, 8 F. 4th 187 (3d Cir. 2021)........................................5

*Jutrowski v. Township of Riverdale*, 904 F.3d 280 (3d Cir. 2018) ..........................10

*Kinglsey v. Hendrickson*, 576 U.S. 389 (2015) .................................................5, 6

*Kost v. Kozakiewicz*, 1F.3d 176 (3d Cir. 1993) ...................................................10

*Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290
311 (2d Cir. 2008) .........................................................................................3

*Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658,
98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .......................................................15

*Reitz v. Cnty. of Bucks*, 125 F.3d 139 (3d Cir. 1997) ............................................17

*Robinson v. Danberg*, 673 F. App'x 205 (3d Cir. 2016) .....................................5, 6

*Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)..............2

*Smalls v. Sassaman*, 2019 WL 4194211 (M.D. Pa. Sept. 4, 2019) .........................2

*Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992)...................................................16

*Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002) ..............................................4, 5

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004)...........................................................12

*Taylor v. Barkes*, 135 S. Ct. 2042, 192 L. Ed. 2d 78 (2015) ...................................18

*Thomas v. Cumberland Cnty.*, 749 F.3d 217 (3d Cir. 2014) ........................... 16, 18

*Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir. 2009).................................................2

*Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)..................5

AND NOW come the Defendants, Brian Clark, Dauphin County, Andrew Klahr, Steve Smith, Mark Neidigh, Richard Armermann, Greg Mendenhall, Scott Grieb, Jason Adams, Michael Blouch, Scott Lewis, Keith Biter, Robert Ingersoll, Cameron Weaver, Taylor Glenn, Martin Myers, Delta Bauer, Steve Singleton, Tami Donovan and Keith Hoffman ("County Defendants"), by and through Lavery Law, and submit the following Reply Brief in further support of their Motion for Summary Judgment and to address issues raised in Plaintiffs' Brief in Opposition.

## I.   <u>INTRODUCTION</u>

Plaintiffs' Brief in Opposition fails to remedy the deficiencies raised in County Defendants' Statement of Undisputed Facts, Motion for Summary Judgment and Brief in Support. Instead of admitting Defendants' facts as true or denying those facts and supporting their denials by citations to the record, Plaintiffs submitted a 120 page statement (DOC. 193) in response to the County Defendants' Statement of Undisputed Material Facts that heavily relies on nothing but the opinions of their experts. This is insufficient.  The nonmoving party must go beyond their pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Relying on expert opinions is not enough to establish the existence of any remaining genuine issue of material fact. Plaintiffs also failed to address video evidence that grossly

contradicted the allegations that the County Defendants used excessive force against the Decedent. To the contrary, the evidence of record, including the video submitted by the County Defendants, establishes that Plaintiffs' claims against the County Defendants are not supported by evidence of record and summary judgment is appropriate against all of Plaintiffs' claims.

## II.   <u>ARGUMENTS</u>

**1. The County Defendants did not use excessive force on the Decedent nor conspired to use excessive force.**

Plaintiffs allege the County Defendants used excessive force to attempt to gain compliance from the non-cooperative Decedent. (DOC. 64, Counts III, V). The County Defendants refuted these claims through deposition testimony and through available video evidence. (DOCS. 174, 175). Summary judgment is appropriate where a videotape refutes an inmate's claims that excessive force was used and precludes an inference that prison officials acted maliciously and sadistically. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); See also, *Smalls v. Sassaman*, 2019 WL 4194211, *8 (M.D. Pa. Sept. 4, 2019)(citing *Tindell v. Beard*, 351 Fed. Appx. 591 (3d Cir. 2009). Plaintiff's Amended Complaint contained allegations that County Defendants "beat" and "struck" Decedent violently on multiple occasions. (DOC. 64, ¶¶ 86, 98, 111, 132, 145, 151, 209, 213). To the contrary, the video evidence submitted in support defeats Plaintiffs' excessive

force claims. Specifically, the video evidence demonstrates that officers never beat, hit, or struck Decedent but instead used reasonable force to gain compliance when Decedent was not following orders. (DOCS. 175-7, 175-20, 177).

While the County Defendants maintain Plaintiffs' reliance on expert testimony is premature, nevertheless, Plaintiffs' correctional expert does not cite to or rely on any instances when Decedent was "beaten or struck." Instead, he only offers suggestions on what the County Defendants could have done better, not considering the fast-paced and volatile nature of county correctional facilities, but rather having roughly four years of hindsight when the correctional officers only had seconds to make their decisions. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The hindsight, conclusory opinions of experts are inappropriate for consideration on a motion for summary judgment. See, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Plaintiffs repeatedly rely on *Headwaters Forest Defense v. County of Humboldt* (DOC. 192, pp. 13, 22, 36) reiterating that court's holding that: "where there is no need for force, any force used is constitutionally unreasonable." Initially, the County Defendants note that *Humboldt* is not binding on this Court, merely

instructive.   Second, the facts in *Humboldt* are not analogous to Plaintiffs' claims. In *Humboldt*, the (Ninth Circuit) found the sheriff's use of pepper spray on otherwise nonviolent protesters constituted excessive force. *Headwaters Forest Def. v. Cnty. Of Humboldt*, 211 F.3d 1121, 1133 (9th Cir.), *vacated on other grds by Cnty. of Humboldt v. Headwaters Forest Def.*, 534 U.S. 801 (2001). In *Humboldt*, the protesters linked themselves together with locking devices and held rallies to protest the unnecessary logging of trees, and, although the protesters were peaceful, the sheriff's department made no efforts to attempt to negotiate with the protestors but instead chose to unreasonably deploy pepper spray in a series of otherwise nonviolent events. *Id.* The Decedent, however, repeatedly refused to cooperate with officers after the officers spoke with him and gave verbal commands to comply in all of the incidents. The Decedent became dead weight, pushed himself off of a bench in the Booking Center, and otherwise flouted all attempts of the officers trying to assist him, causing the officers to use reasonable force in an attempt to gain compliance. (DOCS. 175-7, 175-20, 177).

Like *Humbodlt*, Plaintiffs rely on other cases that are factually dissimilar to the facts here.  For example, Plaintiffs rely on *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002).  In *Smith,* the prisoner was allegedly punched and kicked repeatedly by officers and thrown into cabinets and walls. *Id.* Next, Plaintiffs turn to a Sixth Circuit case, *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004). In

*Champion, it* was alleged officers laid on top of a mentally challenged individual and dispensed pepper spray after the individual stopped resisting. Here, there is no dispute that Plaintiff failed to comply with commands from officers. (DOC. 190, p. 5). There is also no dispute that Decedent actively resisted the officers by pushing off of a bench when the COs attempted to sit him on a bench in the Booking Center. (DOC. 175-7, 177). Unlike the actions of the defendants in *Humbodlt, Smith* and *Champion*, the actions of the County Defendants were reasonable under the circumstances they encountered at the time.

A detainee must prove "that the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kinglsey v. Hendrickson*, 576 U.S. 389, 397-98 (2015)). When determining if the use of force was objectively reasonable, a court should not apply the standard "mechanically" but should give "careful attention to the facts and circumstances of each particular case." *Jacobs v. Cumberland Cnty.*, 8 F. 4th 187, 194-195 (3d Cir. 2021). Further, the underlying events in this case took place in a prison where "[r]unning a prison is an inordinately difficult undertaking," *Kingsley*, 576 U.S. at 399 (citing *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)), and that "safety and order at these institutions requires the expertise of correctional officials, who must have

substantial discretion to devise reasonable solutions to the problems they face." *Id.* (assuming it is Kingsley) (citing *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326, 132 S. Ct. 1510, 1515, 182 L. Ed. 2d 566, 574 (2012). Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* For these reasons, a court must judge the reasonableness of the force used from the perspective of the defendant officer at the time the force was used. *Id.*

### a. Defendants' use of force was objectively reasonable when Decedent arrived at the Booking Center

Plaintiffs failed to rehabilitate their claim that any County Defendant used objectively unreasonable force against Decedent. A detainee must prove 'that the force purposely or knowingly used against him was objectively unreasonable,' meaning 'that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.' *Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397-98). Plaintiffs have not relied on portions of the record, including the available video, to show otherwise. Instead, Plaintiffs rely again on the expert opinion of Tim Gravette to opine that the force used on the Decedent after he arrived at the Booking Center was excessive when Corrections Officers attempted to "switch the handcuffs" from the Susquehanna Township Police Department to Dauphin County Prison handcuffs. While the Court should not rely on Gravette's opinion, nevertheless, he admits Decedent was not compliant

with the orders given by the Corrections Officers. (DOC. 190, p. 5). He ignores the fact that the officers' use of force was objectively reasonable because the Decedent was being noncompliant in a correctional facility and was a security concern as officers were unsuccessfully attempting to search him. (DOCS. 175-7, 177).

Gravette continues to criticize the actions of the officers at the Booking Center. "Note: the continuous use of force has been going on for 3 minutes and 14 seconds. To put this amount of time into perspective, a round of fighting in a boxing match ends at the three-minute mark." (DOC. 190, p. 4). Again, Gravette nor the Plaintiffs consider the factual circumstances of this event. The reasonable use of force had gone on for 3 minutes and 14 seconds because the Decedent had been noncompliant for well over 3 minutes and 14 seconds, as shown in the videos. To compare the officers using a reasonable amount of force to gain compliance in a security facility to a boxing match is misguided. ("Based on my review of the video footage, Riley was not compliant, and he was resisting the attempts of the officers to control him[.]" DOC. 190, p. 5).

Gravette's conclusion that the brief use of oleoresin capsicum ("OC spray") on the Decedent was excessive. This conclusion is not supported by the record.  Lt. Mendenhall used one quick burst of OC spray to gain Decedent's compliance with commands. (DOC. 175-7, 177). Next, Gravette claims, the medical assistant did not adequately treat Decedent by flushing his eyes for more than six seconds.  Gravette's

7

opinion on the post use of force medical treatment is irrelevant to the reasonable force used by the Count Defendants and does not support the claim of a constitutional violation against the County Defendants.   Further, Plaintiffs' argument is directed to the wrong Defendants.  There is no dispute that the medical assistant was not a County employee.  The medical staff are employees of Defendant Prime Care.   Correctional Officers do not make medical decisions or perform medical treatments on inmates.

> **b.** **Defendants' use of force was objectively reasonable when Decedent was placed in the restraint belt.**

Once Decedent was secured in handcuffs by the Corrections Officers, the Decedent was placed in a holding cell where he slipped his handcuffs from back to front and began banging on his cell door. (DOC. 175-7, 177, Video #14, 21:38). Because Decedent was now a danger to himself and to DCP and PrimeCare staff, Corrections Officers entered the cell and attempted to place Decedent into a restraint belt.   Video evidence submitted to the Court confirms the use of force was objectively reasonable, because as the Decedent was able to move his handcuffs to the front of his body, he became a danger to himself and others. Once in the restraint belt, Decedent was immediately examined by medical staff, and no injuries were documented.[1]

---

[1] In fact, Plaintiffs' expert Gravette does not state in his report that the incident with the restraint belt constituted excessive force, he simply made recommendations on

### c.    Defendants' use of the restraint chair was objectively reasonable.

Aside from the clear video footage, Plaintiffs' expert was not able to determine that the use of the restraint chair was excessive. (DOC. 190, p. 11). Again, the Decedent was not compliant when officers were attempting to help him change into a uniform to be transferred to the hospital, and Gravette offers only suggestions about what could have been done differently. Interestingly, although Plaintiffs claim that the Decedent was "choked to death" while he was in the restraint chair due to the hypoglossal pressure point tactic used by Sergeant Lewis, Plaintiffs' expert never mentioned the use of the hypoglossal pressure point tactic in his report, nor is he able to assert that placing the decedent in the restraint chair was excessive.

### d.    Plaintiffs failed to demonstrate a failure to supervise.

Plaintiffs fail to show any County Defendant used excessive force by alleging Officer Ingersoll placed his knee on Decedent's neck while attempting to gain Decedent's compliance with lawful commands. However, the video on this particular allegation is unclear. Plaintiffs repeat the statement from Officer Mendenhall's deposition that "Obviously that would not be the thing to do that would be condoned." (DOC. 175-6, Mendenhall Depo., p. 49, lns. 22-22). Regardless of whether or not the prison had a specific policy regarding the use of an

---

how he believes the situation could have been handled differently. Plaintiffs cannot factually show that the force used in this incident was reasonable and not excessive.

officer's knee, Mendenhall's statement actually contradicts what Plaintiffs are attempting to argue. Their claim that Mendenhall and other County Defendants had a duty to intervene as supervisory officers if they observed unconstitutional behavior is not contested. Mendenhall confirms in his deposition that he knows the placement of a knee on an inmate's neck is not an appropriate practice for a correctional officer, therefore, if he would have actually observed this taking place with the Decedent and Officer Ingersoll, he would have intervened.  Plaintiffs cannot assert any factual evidence that any County Defendant knew that Officer Ingersoll did in fact have a knee placed on the Decedent's neck.

### e.   Plaintiffs failed to produce any factual evidence of a conspiracy to commit excessive use of force on the Decedent.

To establish a § 1983 conspiracy claim, a plaintiff must establish (1) the deprivation of a constitutional right and (2) a factual basis to support a conspiracy agreement and concerted action.  *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018); *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009).   To demonstrate the existence of an agreement, a plaintiff must show that the defendants reached an understanding to deny them their rights.  *Kost v. Kozakiewicz*, 1F.3d 176, 186 (3d Cir. 1993)(citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 150, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970).  Although Plaintiffs suggest that all they need to prove a conspiracy is "circumstantial evidence," (DOC. 192, pp. 35, 39) they rely only on insufficient conclusory statements. Aside from alleging

that a conspiracy took place because multiple County Defendants used reasonable force on the Decedent, there are no facts to establish a conspiracy to use excessive force. Plaintiff alludes to several minor discrepancies in the Incident Reports in an attempt to show that the reports were intentionally falsified. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Plaintiffs attempt to show a discrepancy because Defendant Klahr's account was that he authorized the restraint chair because the Decedent was being combative, but Plaintiffs claim that the video shows the Decedent was handcuffed and shackled, and therefore, could not have been combative. The video, however, clearly shows the Decedent kicking and moving the chair whilst being noncompliant. (DOC. 175-20, Video #18, 30:48). Plaintiffs also point out that Defendant Klahr stated that a spit shield was ordered because the Decedent was spitting, but Officer Danner stated that the Decedent had white foam coming from his mouth. This minor discrepancy is insufficient, as a matter of law, to establish evidence of a conspiracy.

### 2.   Plaintiffs failed to demonstrate the County Defendants deprived Decedent of medical care, or conspired to deny Decedent medical care.

In their Brief in Opposition, Plaintiffs assert that County Defendants failed to provide the Decedent with proper medical care because they should have known he

11

was suffering from a crisis. (DOC. 192, pp. 16, 32, 47, 50).  However, courts have routinely held that regular assessment, treatment, and care preclude a finding of deliberate indifference and, therefore, defeats Plaintiffs' claim that Decedent was deprived of medical care. (See, *Gause v. Diguglielmo*, 339 Fed. Appx. 132, 135 (3d Cir. 2009)(deliberate indifference standard unmet where the plaintiff's medical records show that he was seen by the prison medical staff).  A claim of deliberate indifference against medically untrained correctional officers fails when a detainee, like the Decedent, receives medical treatment. (See,  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with deliberate indifference.").  There is no dispute that Decedent was treated by PrimeCare Medical staff, as he was seen multiple times per day by medical staff. (DOC. 175-19). The County Defendants would not know, nor are they required to know, the specifics of the treatment provided to Decedent and had no actual knowledge or reason to believe that Doctors Rosas or Miller were mistreating, or not treating, the Decedent. Plaintiffs have never actually asserted exactly what type of medical care they are alleging that the Decedent was denied. Dr. Miller could have, at any point, directed that the Decedent be taken to the hospital. Contrary to what Plaintiffs assert, Dr. Miller believed that Decedent could be treated at DCP.  (DOC. 175-17, Miller Depo. at p. 66, lns. 9-23).

Q:    And, Dr. Miller, my question was, do you think that it prevented you

from effectively treating Mr. Riley, that decision?

A:    Well, I mean, I was under the assumption that when the medications

kicked in that his condition would improve. So I don't think it effectively

prevented me from treating him, no.

(DOC. 175-17, Miller Depo. at p. 36, lns. 11-18).   Therefore, County

Defendants did not know, nor did they have a reason to know, that the Decedent was

not receiving, or was denied, adequate medical treatment. Plaintiffs cannot establish

that the County Defendants prevented the Decedent, nor any other inmate or

detainee, from receiving medical care, because no one from PrimeCare Medical

stated that they were prevented from treating the Decedent. Therefore, because

Plaintiffs cannot show a denial of medical care, they cannot demonstrate any

evidence of a conspiracy to deny the Decedent medical care.

Plaintiffs' claims that Decedent was denied medical care because the County

Defendants purposefully withheld the Decedent in his cell and did not allow him to

be examined in the medical department is not supported by the evidence of record.

To the contrary, the County Defendants demonstrated that the record shows

corrections staff were "reluctant" to remove Decedent from his cell on certain

occasions because of his behavior; specifically, corrections officers did not want to

use force against Decedent to remove him from his cell and to transport him to the

medical unit. Plaintiffs admit that "Although stating that in-person assessments are clinically preferred and even necessary in some cases, Dr. Rosas did not communicate that to the correctional officers or other medical personnel." (DOC. 193, ¶ 90). Plaintiffs also state that Dr. Rosas was told by "someone" that the Decedent had to be met cell side. *Id.* Plaintiffs also believe Dr. Miller was prevented from treating the Decedent because some unknown officers "refused" to take the Decedent out of his cell. To support this, they offer the opinion of Dr. Miller, where she states that "the CO's kind of run the jail" (DOC. 193, ¶ 121) and "the medical staff is subservient to what the prison guards want to do." (DOC. 192, p. 39). Plaintiffs incorrectly believe that Dr. Miller's opinion establishes a "custom of correctional officers interfering with the medical treatment of detainees and prisoners." (DOC. 192, p. 38).

Plaintiffs offer no other evidence of PrimeCare Medical staff with the same opinion that their treatment options were limited because the officers would not allow inmates to leave their cells for the medical department. To the contrary, Dr. Miller did not testify that she could not provide specific care to the Decedent. Further, which Plaintiff admits, when asked who prevented Decedent from entering the medical unit, Dr. Miller stated, "the prison guards." (DOC. 192, p. 38). Neither she nor Dr. Rosas could assert with specificity what officers, if any, refused to take the Decedent or any other inmate to the medical department. Even if they could,

14

Plaintiffs have still failed to establish any actual denial of medical care.  Plaintiffs claim that because there is no documentation of any officers refusing to take the Decedent out of his cell to the medical department, that would be enough circumstantial evidence to prove a conspiracy, when in reality, they have no specific facts and therefore cannot sustain their conspiracy claim on circumstantial evidence alone.

**3. The County's training policies were not deficient, and Plaintiffs' *Monell* claims fail.**

To prevail on a Monell claim, the Plaintiffs must demonstrate that (1) a constitutionally protected right was violated and (2) the alleged violation resulted from a municipal policy or custom that exhibits deliberate indifference to the rights of citizens. *Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The County cannot be held liable under § 1983 on a theory of *respondeat superior*. *Id*. at 691. Firstly, Plaintiffs have failed to establish any violation of a constitutional right. Second, Plaintiffs have not pointed to any pattern, policy, or custom of using excessive force on inmates or denying them medical care (or conspiring to do so). In their Amended Complaint, Plaintiffs attempt to use incidents of previous inmate deaths to support their allegations of a bad practice, which is legally insufficient to support a *Monell* claim. (DOC. 174, p. 32). Interestingly, Plaintiffs seemed to have abandoned this route and now attempt to prove a pattern based on an opinion from Dr. Miller that the County Defendants

would not allow Decedent out of his cell to be seen in the medical department. Aside from the fact that Dr. Miller nor Plaintiffs can allege with any particularity who these defendants were, because they cannot, Plaintiffs' assertions are insufficient to support any of their claims.

In their Statement of Facts and Brief in Opposition, Plaintiffs heavily rely on the fact that County Defendants did not follow their own policies regarding their use of force training being conducted annually.  "But the issue is not whether they violated internal prison policies but whether they violated the constitution." *Bornstein v. Monmouth Cnty. Sheriff's Off.*, 658 Fed. Appx. 663, 668 (3d Cir. 2016), citing *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). Plaintiffs allege that Clark, the County, and supervisory officers failed to implement policies to train correctional and medical staff how to identify and handle inmates with mental health issues and the proper use of force. (DOC. 64, ¶185).  To sustain a claim based on a failure to train theory, the identified deficiency in the training program must be closely related to the ultimate constitutional injury. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014).

Plaintiffs incorrectly rest their failure to train arguments on Defendant Mendenhall's testimony that, although use of force training normally took place yearly, he did not recall it happening "the last couple of years." (DOC. 192, p. 46). However, Plaintiffs have not proven that any specific training was deficient. What

Plaintiffs fail to understand is, "The focus in this determination is on the adequacy of the training program in relation to the tasks the particular officers must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Based on Third Circuit precedent, the focus is on the adequacy of the training rather than the frequency. As Plaintiffs admit from the testimony of Major Lucas, "there are no state guidelines that training officers have to follow in making and scheduling a specific curriculum." (DOC. 196, ¶ 267). Plaintiffs suggest that there is no discipline for missed or unattended trainings, (*Id.*, ¶ 286) however, Major Lucas testified in his deposition that officers are disciplined if they refuse to attend the training or failure to report. (DOC. 175-11, Lucas Depo. p. 21, lns. 13-24).

Despite Plaintiffs' suggestions that the use of force trainings were not held frequently enough, or that officers were "allowed to forego training," (DOC. 192, p. 46) they are unable to sustain their claims that the training was deficient. Their expert also does not opine that the training itself was deficient, only that things could have been done differently. Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. Instead, the causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program not deficient in the identified respect. *Thomas v.*

*Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014). Conversely, Plaintiffs admit that "DCP's correctional officers have been trained on Crisis Intervention and De-escalation tactics." (DOC. 196, ¶ 269). Plaintiffs have never asserted, because they cannot, that the training County Defendants received on mental health was inadequate or deficient. Their only argument, which cannot survive summary judgment, is that "according to their own policies, there are de-escalation procedures and tactics that could have been employed[.]" *Id*. Therefore, Plaintiffs have failed to prove that inadequate training was the cause of Decedent's death.

### 4. County Defendants are entitled to Qualified Immunity.

Plaintiffs assert that County Defendants' argument for qualified immunity only relates to the use of force and not the denial of adequate medical care. (DOC. 192, p. 48., n. 4). In § 1983 actions, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015). It has been sufficiently established that County Defendants did not violate Plaintiffs' clearly established right to adequate medical care. As the Decedent was being treated by PrimeCare Medical staff during his entire duration at DCP, and medical staff confirmed that County Defendants did not interfere with their ability to treat the Decedent, County Defendants cannot be said to have violated the Decedent's right

to adequate medical care. County Defendants are entitled to qualified immunity for the use of force claims and claims regarding lack of medical care.

**5. All of Plaintiffs' other claims against County Defendants fail as a matter of law.**

For the reasons stated above and more fully incorporated in County Defendants' Brief in Support of their Motion for Summary Judgment, Plaintiffs' claims of intentional infliction of emotional distress, assault and battery, wrongful death and survival action claims also fail and must be dismissed.

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Honorable Court grant County Defendants' Motion for Summary Judgment and dismiss Plaintiffs' claims against them with prejudice.

Respectfully submitted,

Dated:  June 10, 2024

LAVERY LAW
/s/ Frank J. Lavery, Esquire
Frank J. Lavery, Jr. Esquire
PA Bar No. 42370
225 Market Street, Suite 304
Harrisburg, PA  17101
(717) 233-6633 (phone)
(717) 233-7003 (fax)
flavery@laverylaw.com
Attorney for Defendants

CERTIFICATION OF COUNSEL

I certify that this brief complies with Local Rule 7.8 so long and the brief does not exceed the word limit.  The brief contains 4,595 words. I relied upon the word count feature of Microsoft Word to obtain the foregoing number.

<u>*s/ Frank J. Lavery, Jr.*</u>
Frank J. Lavery, Jr., Esquire

Dated:  June 10, 2024

CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm of Lavery Law, do hereby certify that on this 10th day of June, 2024, I served a true and correct copy of the foregoing Reply Brief in Support of Motion for Summary Judgment on all counsel of record via the Court's ECF system.


*/s/ Aimee L. Paukovits*
Aimee L. Paukovits,
Senior Legal Assistant