IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, et al. | : | |
| | : | |
| Plaintiffs, | : | Civil Action Number |
| | : | |
| v. | : | 20-CV-00325 |
| | : | |
| WARDEN BRIAN CLARK, et al. | : | |
| | : | (ARBUCKLE, M.J.) |
| Defendants. | : | |

**REPLY OF PLAINTIFFS TO BRIEF OF DEFENDANTS SUSQUEHANNA TOWNSHIP POLICE OFFICER MICHAEL DARCY, OFFICER DEMETRIUS GLENN, CORPORAL RICHARD WILSON AND OFFICER CHRISTOPHER HAINES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENT (DOC. NO. 236)**

Plaintiffs Carmen Riley, Administratrix of the Estate of Ty'rique Riley, Carmen Riley, and Thomas Matthews-Kemrer, submit this Reply in support of their Motion to Supplement. Plaintiffs' motion should be granted for the reasons herein stated.

**I.      PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On January 22, 2024, Defendants Susquehanna Township Police Officer Michael Darcy, Officer Demetrius Glenn, Corporal Richard Wilson, And Officer Christopher Haines (collectively "Susquehanna Defendants") filed a Motion for Summary Judgment on all of Plaintiffs' claims. (Doc. No. 164, 166 – 167). On April 6, 2024, Plaintiffs filed their Brief in Opposition to Susquehanna Defendants'

0

Motion for Summary Judgment. (Doc. No. 188 and 189). Susquehanna Defendants filed their Reply Brief in support of summary judgment on June 3, 2024 (Doc. No. 214).

On July 29, 2024, Plaintiffs filed a motion for leave to supplement their Response in Opposition to make the Court aware of a relevant study that was recently produced regarding Dauphin County Prison ("DCP"). (Doc. No. 228 and 229-1). On August 23, 2024, Susquehanna Defendants filed a brief in opposition of Plaintiffs' motion for leave (Doc. No. 236). Plaintiffs now file this reply to Susquehanna Defendants' brief.

## II.   ARGUMENT

### a.  Plaintiffs should be granted leave to supplement the record.

Susquehanna Defendants argue Plaintiffs are well past the deadline for discovery and a decision on summary judgment is ripe. However, District Courts have broad discretion to reopen the record to take new evidence, which may occur on motion of a party or *sua sponte*. *Bistrian v. Levi*, 448 F. Supp. 3d 454, 483 (E.D. Pa. 2020) citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971);  and *Calage v. Univ. of Tenn.*, 544 F.2d 297, 301–02 (6th Cir. 1976); *see also Lussier v. Runyon*, 50 F.3d 1103, 1113 (1st Cir. 1995) ("Typically, a district court's decision to reopen the record for the purpose of

1

receiving additional evidence engenders an exercise of the court's discretion, reviewable for abuse of discretion. This rule pertains even when the district court opts to reopen the record on its own initiative.") (citations omitted); *Briscoe v. Fred's Dollar Store, Inc.*, 24 F.3d 1026, 1028 (8th Cir. 1994) (affirming district court's decision to reopen record and noting that the court had in the past affirmed reopening "after the close of all evidence and the commencement of closing arguments").

District courts have especially great latitude to reopen the record when a case is not tried to a jury, though it must avoid perpetrating any type of injustice in so doing. *Id*. at 483. The district court must consider several factors, including the burden that will be placed on the parties and their witnesses, the undue prejudice that may result from admitting or not admitting the new evidence, and considerations of judicial economy. *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 229 (3d Cir. 2004).

Plaintiffs seek to supplement their previously submitted Response by adding a recently produced survey that is relevant to the facts and claims of this lawsuit. *See* Study attached to Doc. No. 228 and 229-1 as Exhibit A. In June of 2024, researchers at UCLA's BioCritical Studies Lab published the report titled, *Deaths in Dauphin County Prison* (Harrisburg, Penn.), 2009 -2022. The study examined

the deaths of 31 people who died at DCP between 2008 and 2022, including Decedent Ty'rique Riley. The study concluded the following:

> 1) Dauphin County Prison appears to have subjected Black prisoners to injurious and potentially lethal violence at higher levels than white prisoners; and
>
> 2) the Dauphin County Office of the Coroner appears to have habitually misclassified in-custody deaths attributable to traumatic violence as 'natural,' especially in cases involving deceased Black men.

Study attached to Doc. No. 228 and 229-1 as Exh. A at at 1.

This supplement will enhance the record and add to the Court's understanding of issues relevant to this lawsuit. The study analyzed the autopsy reports and related documents of 31 decedents who died in the custody of Dauphin County Prison between 2008 and 2022 (Exhibit 1 at 4). This study analyzed the autopsy reports and related documents of decedents who died in the custody of the same facility as Mr. Riley, who also had evidence of bodily trauma and use of force by law enforcement or jail staff, who were also held in restraints, who also had OC spray used on them, all during the same time period that Mr. Riley was in DCP custody, and whose autopsies were all performed by the same forensic pathologist as Mr. Riley. Furthermore, the Defendants rely heavily on the findings of the Dauphin County Coroner. *See* Doc. 164 at 3, 12. The report goes to the likelihood that the coroner's classification of Mr. Riley's death as natural was incorrect. This is clearly a fact of consequence in this litigation. The Court would

3

be justified in exercising its discretion here as the study provides information relevant to the facts and claims in this lawsuit.

Furthermore, the study was recent and therefore Plaintiffs did not have the ability to include the study in its Response in Opposition to Defendants' Motion for Summary Judgment or in discovery. Susquehanna Defendants do not identify any burden that consideration of this study will have on them or its witnesses.

### b. The Study is relevant and probative of Susquehanna Defendants' treatment of Mr. Riley

Susquehanna Defendants next argue that Plaintiffs should not be granted leave to supplement because the study is prejudicial to Susquehanna Defendants (Doc. No. 236 at 5). Evidence is not excluded merely because it is prejudicial, as almost all evidence that could affect the outcome of a case is inherently prejudicial. *United States v. Repak*, 852 F.3d 230 (2017). The key is whether the evidence is unfairly prejudicial, meaning it has an undue tendency to suggest a decision on an improper basis, commonly an emotional one, or if it might cause the jury to base its decision on something other than the legal propositions relevant to the case. *Carter v. Hewitt*, 617 F.2d 961 (1980).

Susquehanna Defendants assert that evidence or testimony regarding deaths would be "unduly prejudicial" but fails to identify any prejudice, let alone unfair prejudice. Far from confusing the issues, misleading the jury, wasting time, or

4

otherwise unduly or unfairly prejudicing Susquehanna Defendants, such evidence goes to the heart of Plaintiffs' claims: that some or all Susquehanna Defendants denied Mr. Riley medical treatment, failed to intervene to stop excessive force, and assaulted Mr. Riley. To the extent Defendants seeks to challenge this evidence, they must do so through the presentation of their case or cross-examination of Plaintiffs' witnesses.

Next, Susquehanna Defendants argue that the study does not meet the standard of habit evidence. However, although one of the findings of the report is that "the Dauphin County Office of the Coroner appears to have habitually misclassified in-custody deaths attributable to traumatic violence as 'natural,' especially in cases involving deceased Black men," Plaintiffs do not argue that the report is habit evidence. Study attached to Doc. No. 228 and 229-1 as Exh. A.

Implicit in Susquehanna Defendants' argument regarding the habit exception to hearsay is that the report under consideration is hearsay. The study, *Deaths in Dauphin County Prison*, meets an exception to the rule against hearsay under Rule 803(18).

> Evidence is admissible under Rule 803(18) as a statement contained in a treatise, periodical, or pamphlet if:

>  (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and
>
>  (B) the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.
>
>  …

Fed. R. Evid. 803.

The report will be considered by Plaintiffs' experts and therefore can be explored on direct examination at trial. Additionally, Defendants' expert witnesses, if any, may be questioned about the study on cross- examination given that Responding Defendants rely heavily on the findings of the Dauphin County Coroner on summary judgment. *See* Doc. 174 at 3, 27, 30, 33. Plaintiffs anticipate Responding Defendants will also rely on the findings of the Dauphin County Coroner at trial.

One of the major findings of the study is that the "the Dauphin County Office of the Coroner appears to have habitually misclassified in-custody deaths attributable to traumatic violence as 'natural,' especially in cases involving deceased Black men." Study attached to Doc. No. 228 and 229-1 as Exh. A at at 1. The UCLA report specifically examined three deaths in which there was evidence of bodily trauma and use of force by law enforcement or jail staff. Study attached to Doc. No. 228 and 229-1 as Exh. A at at 11, 13 (Decedent Riley is "2019d".) Despite this evidence, two of the cases are designated 'natural' deaths, and the

third was designated 'undetermined.' In all three of these cases, one or more restraint chairs was used against the decedent. In two of these three cases, including Decedent Riley's case, oleoresin capsicum spray was used against the decedent. The decedents in all three of these cases were Black men. Two of them, including Decedent Riley, were younger than 30 years old.

The credibility of the Dauphin County Coroner and the credibility of its findings are at issue in this case. As stated above, Responding Defendants even rely on the findings of the Coroner to absolve themselves of liability. Accordingly, the study, with its findings about the failures of the Dauphin County Coroner at the time of the death of Mr. Riley are crucial to evaluating the credibility of the Dauphin County Coroner and giving weight to its finding that Mr. Riley's death was natural. The questioning of expert witnesses will establish the study as a reliable authority for the data and conclusions to satisfy the second requirement under the Rule. *See Maggipinto v. Reichman*, 481 F.Supp. 547 (1979).

Moreover, if the Court finds that the report may not be considered as a supplement to Plaintiffs' opposition to the motion for summary judgment, this report should nonetheless be made a part of the record that may be utilized at trial. "A court has discretion to grant leave to supplement the record of a case." *Baker v. LivaNova PLC, et al.*, 1:16-cv-00260, 2016 WL 11587245, at *2 (Sept. 20, 2016 M.D.Pa.); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 483 (E.D. Pa. 2020) citing *Zenith*

7

*Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); and *Calage v. Univ. of Tenn.*, 544 F.2d 297, 301–02 (6th Cir. 1976); *see also Lussier v. Runyon*, 50 F.3d 1103, 1113 (1st Cir. 1995) ("Typically, a district court's decision to reopen the record for the purpose of receiving additional evidence engenders an exercise of the court's discretion, reviewable for abuse of discretion. This rule pertains even when the district court opts to reopen the record on its own initiative.") (citations omitted); *Briscoe v. Fred's Dollar Store, Inc.*, 24 F.3d 1026, 1028 (8th Cir. 19) (affirming district court's decision to reopen record and noting that the court had in the past affirmed reopening "after the close of all evidence and the commencement of closing arguments"). The Court would be justified in exercising its discretion here as the study provides information relevant to the facts and claims in this lawsuit.

### III. CONCLUSION

Based on the foregoing, and for the reasons set forth in their Motion for Leave to supplement, Plaintiffs respectfully request that this Honorable Court grant them leave to file the Supplement.

                                      Respectfully submitted,

                                      **MINCEY FITZPATRICK ROSS, LLC**

Dated: September 30, 2024    By:  /s/ Riley H. Ross III
                                                     Riley H. Ross III
                                                     Kevin V. Mincey
                                                     1650 Market Street, 36th Floor
                                                     Philadelphia, PA 19103
                                                     *Attorneys for Plaintiff*