# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, Administrator | : | |
| of the Estate of TY'RIQUE | : | CIVIL ACTION NO. 4:20-cv-325 |
| RILEY, CARMEN RILEY, and | : | |
| THOMAS MATTHEW, | : | |
|        Plaintiffs | : | |
|    v. | : | |
| | : | JURY TRIAL DEMANDED |
| BRIAN CLARK, Warden, et al., | : | |
|       Defendants | : | |

**BRIEF IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO THE
REPORT AND RECOMMENDATION FILED ON BEHALF OF
DEFENDANTS DAUPHIN COUNTY AND BRIAN CLARK, ANDREW
KLAHR, STEVE SMITH, MARK NEIDIGH, RICHARD ARMERMANN,
GREG MENDENHALL, SCOTT GRIEB, JASON ADAMS, MICHAEL
BLOUCH, SCOTT LEWIS, KEITH BITER, ROBERT INGERSOLL,
CAMERON WEAVER, TAYLOR GLENN, MARTIN MYERS, DELTA
BAUER, STEVE SINGLETON, TAMI DONOVAN AND KEITH
HOFFMAN ("THE COUNTY DEFENDANTS")**

Respectfully submitted,

LAVERY LAW

/s/ Frank J. Lavery, Esquire
Frank J. Lavery, Jr. Esquire
PA Bar No. 42370
225 Market Street, Suite 304
Harrisburg, PA  17108-1245
(717) 233-6633 (phone)
flavery@laverylaw.com
Attorney for the County Defendants

Date:   March 18, 2025

AND NOW, come the County Defendants, Dauphin County and Brian Clark, Andrew Klahr, Steve Smith, Mark Neidigh, Richard Armermann, Greg Mendenhall, Scott Grieb, Jason Adams, Michael Blouch, Scott Lewis, Keith Biter, Robert Ingersoll, Cameron Weaver, Taylor Glenn, Martin Myers, Delta Bauer, Steve Singleton, Tami Donovan and Keith Hoffman by and through Lavery Law, and under Local Rules 72.2 and 72.3 file the following Brief in Opposition to Plaintiffs' Objections (DOC. 255) to the Magistrate Judge's February 18, 2025 Report and Recommendation (DOC. 247).

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiffs filed their operative Second Amended Complaint on April 9, 2021. (DOC. 64). County Defendants filed their Motion for Summary Judgment on January 30, 2024. (DOC. 173). On February 18, 2025, Magistrate Judge William Arbuckle issued his Report and Recommendation ("R&R"). (DOC. 247). On March 4, 2025, Plaintiffs filed Objections to the R&R, wherein they objected to the Magistrate Judge's recommendation to dismiss Plaintiffs' conspiracy claim, Count II, as it relates to the denial of medical care and the recommendation to dismiss the *Monell* claim, Count VII, against Dauphin County. (DOC. 255-2, p.1). The R&R correctly concludes that Plaintiffs did not adequately plead a denial of medical care claim against the County Defendants under Count II, Plaintiffs' Conspiracy claim,

and under Count VII, the *Monell* Claim against Dauphin County. (DOC. 247, pp. 125, 138, 139).

## II.   DECEDENT'S MEDICAL CARE

In Count II of Plaintiffs' Second Amended Complaint, they allege the County Defendants "agreed and conspired among themselves to deny [Decedent] **adequate** mental and physical health care[.]" (DOC. 64, ¶¶138-140) (emphasis added). However, in Plaintiffs' Brief in Opposition to County Defendants' Motion for Summary Judgment, Plaintiffs argue County Defendants did not provide Decedent with any medical care. (DOC. 192, pp. 23-26). "The Court cannot rely on allegations brought only in Plaintiff's briefing." *Winfield Scott Tower Urb. Renewal LP v. Luciani*, 2024 U.S. Dist. LEXIS 17676, 2024 WL 383980, at n. 4, citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988). While Plaintiffs should not be permitted to assert, for the first time, a total denial of medical care claim at this stage, the County Defendants will address both the denial of medical care claim and the adequacy of medical care claim. However, a jury should not be permitted to hear argument about the denial of medical care because Plaintiffs did not raise it in their Second Amended Complaint. Plaintiffs' raising of this issue now or in its Brief in Opposition does not create a genuine dispute of material fact.

The record is replete with evidence that Decedent was seen and treated multiple times by PrimeCare Medical staff during his duration at the County's facilities. The R&R addressed whether or not the Decedent received any medical care under its analysis of Plaintiffs' denial of medical care claim. The R&R concluded that Decedent received medical care and therefore, Plaintiffs cannot sustain an underlying constitutional violation of denial of medical care for their conspiracy claim to survive. (DOC. 247, p. 122). In Plaintiffs' Objections to the R&R, they attempt to revert back to the inadequate medical care argument, stating: "Plaintiffs have established that inadequate care was given to [Decedent] and the R&R does not dispute such." (DOC 255-2, p. 4). This is a mischaracterization of the Magistrate Judge's conclusion. In the R&R, Magistrate Judge Arbuckle states: "Plaintiffs argue that the care [Decedent] received was not adequate, and that might well be true. But deliberate indifference to medical needs is not shown by poor care, **and the parties all agree that [Decedent] received medical care during his stay at the prison**." (DOC. 247, p. 122) (emphasis added). The Magistrate Judge did not conclude that the care the Decedent received was inadequate, because he analyzed the claim under a denial of medical care theory, not an adequacy of medical care claim. Further, all parties agree, including Plaintiffs, that the Decedent received medical care at DCP. *Id.* Regardless of whether Plaintiffs are attempting to improperly argue a denial of medical care claim at this stage, or an adequacy of

medical care claim, both fail. However, Plaintiffs cannot allege that there is a genuine issue of fact for a jury simply because they were inconsistent with their medical care claims.

Plaintiffs contend the R&R incorrectly focuses only on its decision that providing inadequate medical care on its own could not amount to deliberate indifference. (DOC. 255-2, p. 3). Plaintiffs assert that the Magistrate Judge should have given more weight to the Plaintiffs' inadequate medical care argument. As evidenced above, however, the R&R did not analyze Count II as an adequacy of medical care claim. Regardless, Plaintiffs have not established an Eighth Amendment medical care claim under either theory. To be successful in their medical care claim, Plaintiffs must demonstrate both that the Decedent had a serious medical need, and that certain acts or omissions by the County Defendants indicated deliberate indifference to such medical need. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Plaintiffs rely on one conclusory statement in their Objections to the R&R, that: "defendants were deliberately indifferent to a serious medical need." (DOC. 255-2, p. 4). This statement is not nearly enough to plausibly allege deliberate indifference to sustain a medical care claim under either theory. Deliberate indifference requires a factual, subjective showing of "(i) a serious medical need, and (ii) acts or omissions by officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. The Third Circuit has held that

deliberate indifference can exist in circumstances where there was "'objective evidence that [a] plaintiff had a serious need for medical care,' and officials ignored that evidence" or "where 'necessary medical treatment is delayed for non-medical reasons.'" *Id.* at 582, citing *Nicini v. Morra,* 212 F.3d 798, 815 n.14 (3d Cir. 2000); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Whether the medical care of an inmate may or may not have been adequate does not automatically amount to a finding of deliberate indifference. *Pearson v. Prison Health Serv*., 850 F.3d 526, 535 (3d Cir. 2017). Plaintiffs have not shown deliberate indifference, and their only attempt in their Brief is the conclusory statement that, "Here, defendants were deliberately indifferent to a serious medical need." (DOC. 255-2, p. 4).

### A. Plaintiffs cannot sustain a theory of inadequate medical care

Plaintiffs incorrectly argue that because "inadequate medical care may deprive a prisoner of his constitutional rights," this automatically equates to the Decedent's rights being violated. Plaintiffs first cite *Farmer*, for their position that "inadequate prison medical care" may violate the Eighth Amendment[.] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), (DOC. 255-2, p. 3). "May" is the operative word here. As the R&R points out, even if the medical care was inadequate, this alone is not enough to find that any of the County Defendants acted with deliberate indifference or violated Decedent's constitutional rights. (DOC. 247, p. 122).

"'Mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017), *quoting Monmouth Cty. Corr. Inst. v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987). "In order to succeed in an action claiming inadequate medical treatment, a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993), (DOC. 255-2, pp. 3-4). "[T]he mere receipt of inadequate medical care does not itself amount to deliberate indifference—the defendant must also act with the requisite state of mind when providing that inadequate care." *Pearson*, 850 F.3d at 535, citing *Durmer*, 991 F.2d at 69 n.13. According to *Pearson*, the observation in *Durmer* "is critical because it makes it clear that there are two very distinct subcomponents to the deliberate indifference prong of an adequacy of care claim. The first is the adequacy of the medical care—an objective inquiry[.] The second is the individual defendant's state of mind—a subjective inquiry[.]" *Id.* at 536.

Plaintiffs fail to show either prong of their adequacy of care claim. The first prong fails because the Decedent received medical care. The second prong fails because Plaintiffs have not demonstrated a subjective inquiry into any of the individual County Defendants' states of mind. Again, Plaintiff relies on the conclusory statement that all defendants were deliberately indifferent. The R&R is

correct when it states, "deliberate indifference to medical needs is not shown by poor care[.]" (DOC. 247, p. 122).

Plaintiffs argue that, even though the Decedent received medical treatment, that fact does not "preclude a jury from finding that the provided care was inadequate." (DOC. 255-2, p. 4). This does not show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiffs disagree with Third Circuit precedent, which holds that a deliberate indifference claim against medically untrained correctional officers fails when the plaintiff receives regular assessment, treatment, and care. (DOC. 247, p. 123), *citing Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). It is not disputed that Decedent was provided with medical care. Plaintiffs place too much emphasis on their claim of inadequate medical care by inserting their own opinions about medical "care" versus medical "treatment," a distinguishment that, not only medically untrained correctional officers are not required to know, but also are not relevant to the claims made against them. According to Plaintiffs, "the care a defendant provides should correlate to the need a plaintiff exhibited. Treating a heart attack with aspirin may provide medical treatment, but it is a question of fact whether that is adequate medical care. The latter is the dispositive question." (DOC. 255-2, p.4). The dispositive question is whether the Dauphin County Defendants acted with deliberate indifference, which, according to precedent, they did not, as the Decedent received regular treatment and care. It is

not up to the medically untrained correctional officers to question the allegedly nuanced differences between the "treatment" and "care" that Decedent unquestionably received from the medical staff, unless it is obviously deficient.

### B. Plaintiffs cannot sustain a claim for a denial of medical care

Plaintiffs' claims for denial of medical care fail for the same reasons. Notwithstanding the fact that Plaintiffs did not plead a denial of medical care claim in their Second Amended Complaint, there is no question that Decedent was provided medical care by PrimeCare Medical staff while at the Dauphin County Booking Center and Prison. As opposed to an adequacy of care claim, a denial of care claim only involves the subjective inquiry for a showing of deliberate indifference. *See Pearson*, 850 F.3d at 537.

Again, as pointed out in the R&R, "the parties all agree that [Decedent] received medical care during his stay at the prison." (DOC. 247, p. 122). The Decedent received regular medical and mental health treatment at DCP. *Id*. at 123. The Decedent was seen by a licensed psychologist and psychiatrist multiple times, who both believed that Decedent did not need urgent medical care and could be effectively treated at DCP. *Id*. at 123-24. Plaintiffs cannot deny the fact that the Decedent was provided with medical care, let alone prove the subjective intent element to deprive him of such against each County Defendant. There is no question

for the jury whether or not the Decedent received medical care, as it is an undisputed fact.

In Plaintiffs' opposition to the County Defendants' Motion for Summary Judgment, Plaintiffs claim that the County Defendants "either ignored [Decedent] altogether or often times met his indications of being in a crisis with the use of force." (DOC. 192, p. 28). Plaintiffs have not pointed to any specific incident where any of the County Defendants ignored the Decedent's need for medical care, because they cannot. Further, the courts are silent on whether the use of force can automatically amount to a denial of medical care. As such, the County Defendants are also entitled to qualified immunity, as County Defendants were not on notice that using force can amount to an Eighth Amendment medical care violation. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The R&R correctly concluded that Plaintiffs did not adequately plead an underlying constitutional violation for a medical care claim and therefore could not sustain a claim for conspiracy against the County Defendants. Therefore, the portion of the R&R recommending the dismissal of Count II against the County Defendants must be adopted.

## III.    PLAINTIFFS' MONELL CLAIMS MUST BE DISMISSED

The R&R correctly concluded that Plaintiffs cannot sustain a *Monell* claim against Dauphin County. (DOC. 247, p. 141). 42 U.S.C. § 1983 is not a cause of action in and of itself. Municipal liability is limited to those actions for which the

municipality itself is liable. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). To succeed in their § 1983 claims against Dauphin County, the Plaintiffs must demonstrate that (1) a constitutionally protected right was violated and (2) the alleged violation resulted from a municipal policy or custom that exhibits deliberate indifference to the rights of citizens. *Monell v. Dep't Soc. Servs. of City of New York,* 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

Plaintiffs allege two *Monell* claims under the failure to train theory, one deriving from their excessive force claims and the other deriving from the alleged denial of medical care. (DOC. 274, p. 138). However, in their Brief in Opposition to the R&R, Plaintiffs focus on the theory that County Defendants had a "custom" of not following policies related to use of force or medical care.  As previously established, Plaintiffs cannot sustain a denial of medical care claim. However, as they attempt to do so here, County Defendants will address this argument.

To sustain a claim based on a failure to train theory, the identified deficiency in the training program must be closely related to the ultimate constitutional injury. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014) (internal quotation marks omitted).  Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. Instead, the causation inquiry focuses on whether the injury could have been avoided had the

employee been trained under a program not deficient in the identified respect. *Id.* (internal citations and quotation marks omitted).

A custom is shown when practices are "so permanent and well-settled as to virtually constitute law." *Mulholland v. Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). When bringing a custom or policy claim, a plaintiff must "identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg, Pennsylvania*, 736 F.2d 903, 910 (3d Cir. 1984); *Forrest*, 930 F.3d at 105. The causal link must be so direct as to establish that the allegedly deficient policy or custom was the moving force behind the plaintiff's alleged injury. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407-08, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

## A. Denial of Medical Care

Plaintiffs assert that Dauphin County "had a practice and custom of not following policies relating to the … rendering of medical care." (DOC. 255-2, p. 5). Plaintiffs also allege that Dauphin County has a "custom of correctional officers interfering with the medical treatment of detainees and prisoners." *Id*. at p. 7. Plaintiffs attempt to show such custom with the argument that County Defendants "ignored" a Dauphin County policy teaching correctional officers to treat an individual with empathy rather than force when that individual is experiencing a serious mental illness. *Id*. at 6. Plaintiffs again incorrectly attempt to show deficiencies in training,

this time training involving medical care, by arguing that County Defendants failed to follow their own policies. The R&R previously concluded that, when analyzing the excessive force theory, this argument does not identify a deficiency in the training. ("It is not clear what precisely Plaintiff intends this discussion to do for them. At most it is another argument that two County Defendants failed to follow DCP policies, but it does not identify a deficiency in DCP use of force training.") (DOC. 247, p. 140). Therefore, Plaintiffs' claims fail.

Plaintiffs' bald conclusion that correctional officers have a custom of interfering with medical treatment also fails. Plaintiffs attempt to prove such claim with only the testimony of Dr. Miller. Dr. Miller testified specifically that the correctional officers were "reluctant" to take **the Decedent** out of his cell because he was uncooperative. (Miller Dep. County Defs' Ex. P. DOC. 175-17, p. 18, lns. 12-23) (emphasis added). Dr. Miller was speaking only about the Decedent. Plaintiffs rely on one general statement from Dr. Miller, that "the prison guards run the prison," in a clearly deficient attempt to show a custom of the County Defendants interfering with medical treatment. (*Id.* at p. 18, ln. 3). However, Dr. Miller also testified that "she never made a request to send an inmate to the hospital that was refused." (DOC. 247, p. 124). Plaintiffs cannot rely on one single, conclusory statement as evidence to prove a custom of interfering with medical treatment.

Furthermore, Plaintiffs have not, because they are unable, successfully connected the challenged policy with the injury suffered by the Decedent. As the R&R correctly points out, "Dr. Miller confirmed that the correctional officers did not prevent her from correctly treating Decedent," and that "lockdowns did not occur while Decedent was housed at DCP." (DOC. 247, p. 124). Plaintiffs' *Monell* claim regarding an alleged custom of preventing medical treatment fails.

**B. <u>USE OF FORCE</u>**

Plaintiffs assert that Dauphin County has a custom of not following policies related to the use of force (DOC. 255-25, p. 5) and a custom related to not attending said trainings. *Id.* at p. 7. Again, their argument that County officials ignored or failed to follow their own policies does not show that the training was deficient. The R&R correctly concluded previously that this argument fails. ("Plaintiffs have failed to 'make a showing sufficient to establish the existence of an element essential' to their *Monell* claim from their excessive force claims against Dauphin County.") (DOC. 247, p. 140).

Therefore, Plaintiffs attempt to fall back on their custom argument. Because they cannot show sufficient evidence of a training deficiency in use of force policies, Plaintiffs argue that the County has a custom of not following the training. Here, while Plaintiffs attempt to argue a link between the policies to the injury suffered by the Decedent, they are unable to show evidence of a custom so well-settled it

virtually constitutes law. ("This failure to follow the policy led to officers using excessive force on [Decedent]." "[T]he Use of Force Policy was ignored when [Decedent] was not adequately examined" following the use of OC spray. "Lieutenant Mendenhall failed to adhere to policy regarding the documentation of the use of force by…failing to indicate that physical force was used on [Decedent] in his Extraordinary Occurrence Report.") (DOC. 255-2, p. 6). These are the same arguments the R&R previously found lacking when analyzing Plaintiffs' allegations that the training was defective. (DOC. 247, p. 140).

Plaintiffs also argue that Dauphin County has a custom of not attending trainings related to the use of force. (DOC. 255-2, p. 7). Plaintiffs point to the testimony of Lieutenant Mendenhall in an incorrect attempt to show that officers never attended any such training. ("DCP correctional officers were allowed to forego training on the use of force.") *Id.* In reality, Lieutenant Mendenhall stated that use of force training was not conducted within the last "couple years." (Mendenhall Dep., County Defs.' Ex. E, DOC. 175-6, p. 28, lns. 18, 24). Plaintiffs have turned this into an allegation that "the training was not conducted at all," and "proof that none of the County correctional officers received such training." (DOC. 255-2, p. 7). Plaintiffs have no evidence of record to prove that any of the County Defendants never attended any use of force training. Therefore, Plaintiffs cannot sufficiently allege a custom of not attending trainings, let alone that such custom caused an injury to the

Decedent. Further, the R&R previously stated, "Plaintiffs do not explain how this lack of annual refresher training demonstrates a deficiency in DCP's use of force training." (DOC. 247, p. 140). They have again failed to do so. Therefore, Plaintiffs' *Monell* claims against Dauphin County fail and this Court should adopt said section of the R&R recommending dismissal.

## IV.    CONCLUSION

For the foregoing reasons, County Defendants respectfully request that this Honorable Court deny Plaintiffs' Objections to the Report and Recommendation and adopt the portion of the report recommending dismissal of Counts II and VII against the County Defendants.

Respectfully submitted,

LAVERY LAW

/s/ Frank J. Lavery, Esquire
Frank J. Lavery, Jr. Esquire
PA Bar No. 42370
225 Market Street, Suite 304
Harrisburg, PA  17108-1245
(717) 233-6633 (phone)
flavery@laverylaw.com
Attorney for the County Defendants

CERTIFICATION OF COUNSEL

I certify that this brief complies with Local Rule 7.8. The brief contains 3,475 words. I relied upon the word count feature of Microsoft Word to obtain the foregoing number.

_s/ Aimee Paukovits._
Senior Legal Assistant

Dated:  March 18, 2025

CERTIFICATE OF SERVICE

I, Aimee L. Paukovits, an employee with the law firm of Lavery Law, do hereby certify that on this 18th day of March, 2025, I served a true and correct copy of the foregoing Brief on all counsel of record via the Court's ECF system.


*/s/ Aimee L. Paukovits*
Aimee L. Paukovits,
Senior Legal Assistant