# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN RILEY, ADMINISTRATOR OF THE ESTATE FOR TY'RIQUE RILEY, et al. | No.:4:20-CV-00325-MWB-WIA |
| | CIVIL ACTION – LAW |
| | |
| | Judge Matthew W. Brann |
| Plaintiffs, | Mag. Judge William I. Arbuckle |
| | |
| v. | *Electronically Filed* |
| | |
| PRIMECARE MEDICAL, INC., et al. | |
| | JURY TRIAL DEMANDED |
| Defendants. | |

## PLAINTIFFS' RESPONSE TO PRIMECARE MEDICAL, INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

NOW COME Plaintiffs, by and through their counsel, Mincey Fitzpatrick Ross, LLC, and hereby file this Response to PrimeCare Medical, Inc.'s Objections to the Report and Recommendation issued on February 18, 2025, and in support thereof, state as follows:

**I. INTRODUCTION**

On February 18, 2025, Magistrate Judge William I. Arbuckle issued a Report and Recommendation ("R&R") recommending that PrimeCare Medical, Inc.'s ("PrimeCare") Motion for Summary Judgment be denied (ECF No. 247). PrimeCare filed objections to the R&R, specifically challenging: (1) the finding

that Dr. Marcus Patterson's expert opinion provides sufficient causation evidence; and (2) the recommendation that summary judgment be denied on Plaintiffs' request for punitive damages. Neither objection has merit, and the R&R as it relates to PrimeCare's Motion for Summary Judgment should be adopted in full.

## II. ARGUMENT

### A. Dr. Patterson's Expert Opinion Provides Sufficient Causation Evidence to Overcome Summary Judgment

PrimeCare's first objection claims that Dr. Marcus Patterson, a forensic psychologist, is not qualified to render an opinion on causation and that his opinion conflicts with Plaintiffs' pathology expert, Dr. Zhongxue Hua. This argument fundamentally misunderstands both the scope of expert testimony in complex cases and the complementary nature of the expert opinions in this case.

First, Dr. Patterson is entirely qualified to render an opinion on whether deficiencies in mental health treatment contributed to Mr. Riley's decline and death. As a forensic psychologist, Dr. Patterson possesses specialized knowledge, training, and experience in evaluating mental health treatment standards and the consequences of their breach. Courts routinely permit psychologists to testify regarding causation in their area of expertise. See e.g. Estate of Thomas v. Fayette County, 194 F.Supp.3d 358, 364 (W.D. Pa. 2016) ("the expert testimony [of psychologist, registered nurse and doctor] here would assist the trier of fact by

providing the fact-finder with information pertinent to observable drug-withdrawal symptoms, suicide correlates, treatment procedures, and the standards of care to be employed by medical professionals in a prison setting.").

Courts have recognized that psychologists have specialized knowledge about the consequences of inadequate mental health treatment in correctional settings that makes their testimony especially relevant to causation analysis in cases like the present. In Estate of Thomas, the court explicitly confirmed that a nurse expert and psychologist expert were permitted to consider the record facts of the case in light of their extensive education, training, and experience in order to render their professional judgments, and these opinions were relevant, reliable and admissible. Id. at 365. The Estate of Thomas court explained in relevant part that the nurse expert, who was a health care operations administrator and experienced correctional nurse, analyzed the documented actions of the Prison medical personnel to determine whether, given her training and experience, these actions were reasonable and comported with applicable standards of care. Id. The expert who was a former psychologist for various correctional institutions opined on whether the intake procedures were appropriately conducted by Prison staff and whether the decedent indicated suicidality. Id. "Each expert analyzed the documents in the record in light of their respective area of expertise and rendered an opinion based on this expertise pertinent to a contested issue in the case." Id.

(citing Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d. Cir. 2008) ("Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility.")).

Courts addressing challenges similar to those raised by Defendant PrimeCare have consistently recognized that a psychologist's expert testimony on mental health treatment standards in correctional settings can create genuine issues of material fact sufficient to preclude summary judgment. In the present case, Dr. Patterson's opinion that the mental health care provided to Mr. Riley failed to meet behavioral health standards and that these failures significantly contributed to and more likely than not were the causes in bringing about the harm, i.e. the severe mental decline and eventual death of Tyrique Riley, falls squarely within his professional expertise. A psychologist with expertise in correctional mental health care may offer opinions concerning whether deficiencies in mental health treatment contributed to a detainee's deterioration and ultimate harm. Estate of Thomas, 194 F.Supp.3d at 364. Judge Arbuckle in his R&R correctly concluded that Dr. Patterson has relevant specialized knowledge that will assist the trier of fact.

The Third Circuit has consistently interpreted Rule 702's qualification requirement liberally, allowing experts to opine on matters within their field of specialized knowledge. Pineda, 520 F.3d at 244 ("We have held that a broad range

of knowledge, skills, and training qualify an expert. This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts. It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.") (internal citations and quotations omitted); see also A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 581 (3d. Cir. 2004) ("we believe the evidence [testimony of a corrections expert who opined that the problems with inadequate supervision of residents directly contributed to the abusive treatment A.M. endured at the Center] provides a causal link between the hiring and staffing policies and A.M.'s injuries…. we conclude the evidence of the causal connection between these policies and A.M.'s injuries presented a jury question.").

Defendant PrimeCare next argues that Dr. Patterson's opinion conflicts with the opinion of Dr. Hua. Even if Defendant PrimeCare's narrow argument of "conflicting expert opinions" is considered, courts have emphasized that differing expert opinions proffered at summary judgment must be reconciled by a jury, as such factual interpretations are within the jury's province. See United States ex. rel. Gohil v. Sanofi U.S. Services Inc., 500 F. Supp. 3d 345, 367 (E.D. Pa. 2020) ("To the extent differing opinions must be reconciled, such a factual interpretation

is within the province of a jury."); Koninklijke Philips Elecs. N.V. v. Zoll Lifecor Corp., 2017 WL 3140798, at *6 (W.D. Pa. July 25, 2017) ("complimentary rather than redundant testimony would be allowed"); Francis ex rel. Estate of Francis v. Northumberland County, 636 F. Supp. 2d 368, 395-396 (M.D. Pa. 2009) (holding that disputes between expert opinions on standard of care and causation in the correctional healthcare context created genuine issues of material fact that precluded summary judgment).

    In the present case, there is no conflict between Dr. Patterson's opinion and Dr. Hua's opinion. Dr. Hua's opinion that Mr. Riley's death was "due to neck compression during physical restraint" addresses the immediate physiological mechanism of death, while Dr. Patterson's opinion addresses how inadequate mental health care contributed to Mr. Riley's deterioration and ultimately placed him in the circumstances that led to his death. These opinions are complementary, not contradictory.  Dr. Hua addresses the immediate physiological mechanism of death while Dr. Patterson addresses how inadequate mental health care contributed to the chain of events leading to that outcome, these opinions can be harmonized as part of a comprehensive analysis that assist the factfinder in understanding the complete causal chain.  The factfinder could reasonably conclude that inadequate mental health treatment led to further behavioral deterioration bringing about physical restraint, which in turn resulted in the physiological cause of death. See

Bingham v. Lancaster County, 709 F. Supp.3d 176, 189 n.7 (E.D. Pa. 2024) (referencing that experts can provide opinions addressing different aspects of causation in a detainee death case). Different expert opinions proffered on the issue of causation does not make them contradictory merely because they explain distinctive aspects of causation.

Defendant PrimeCare's reliance on N.T. v. Children's Hospital of Philadelphia, 308 A.3d 1284 (Pa. Super. 2024) is misplaced. That case involved truly contradictory expert opinions on the specific mechanism of injury, not complementary opinions addressing different aspects of causation as is the case here. As discussed above, numerous courts specifically addressed scenarios where multiple expert opinions may appear to conflict but are actually complementary. "[T]he credibility and weight attributed to expert conclusions are not proper considerations at summary judgment; these determinations are for the jury." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995). The R&R correctly recognized that Dr. Patterson's opinion provides sufficient evidence of causation to overcome summary judgment. Whether PrimeCare's inadequate mental health treatment contributed to Mr. Riley's death is a factual question for the jury to decide based on all the expert testimony presented at trial.

**B. The R&R Correctly Concluded That Summary Judgment Should Be Denied on Plaintiffs' Punitive Damages Claim**

PrimeCare's second objection argues that Magistrate Judge Arbuckle erred in recommending denial of summary judgment on Plaintiffs' punitive damages claim. This argument fails for multiple reasons.

As an initial matter, Defendant PrimeCare bore the initial burden at summary judgment to demonstrate the absence of a genuine issue of material fact regarding punitive damages. PrimeCare argues that Plaintiffs failed to bring forth evidence showing PrimeCare knew of the alleged reckless behavior of its employees. This argument improperly attempts to shift the burden to Plaintiffs before PrimeCare has met its initial burden. The R&R correctly found that PrimeCare failed to address the applicable standard under 40 P.S. § 1303.505(c), which provides that punitive damages may be awarded against a vicariously liable healthcare provider if "it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages."

The record contains ample evidence from which a reasonable jury could find that PrimeCare knew of and allowed the problematic conduct by its employees. The record reflects that PrimeCare staff recognized Mr. Riley's serious mental health condition but failed to provide adequate treatment. Dr. Miller, a PrimeCare psychiatrist, testified that "the prison guards run the prison" and that "the medical staff is subservient to what the prison guards want to do."  Doc. 184-1 **Exhibit J**,

18:2-12. She further explained that PrimeCare's medical staff "were prevented from sending [Mr. Riley] to the medical unit several times" by prison guards, and that this made it difficult to provide effective treatment. Doc. 184-1, **Exhibit J**, 17:12-23, 18:2-12, 35:17-23. This testimony suggests institutional knowledge of problematic practices that interfered with proper patient care. The record shows that PrimeCare staff failed to complete a proper mental health intake, failed to ensure Mr. Riley received his prescribed medications, and failed to recommend hospitalization despite his obvious deterioration until it was too late. Dr. Patterson opined that these failures fell below the standard of care.

This Court already rejected nearly identical arguments in Rossman v. PrimeCare Medical Inc., 2024 WL 115203 (M.D. Pa. Jan. 10, 2024) (rejecting this exact argument by Defendant PrimeCare); Redclift v. Schuylkill Cnty., 2022 WL 3951356 (M.D. Pa. Aug. 31, 2022) (holding that where a plaintiff has alleged a deliberate indifference claim, he has also plead a claim for punitive damages); *accord* Thomas v. Luzerne Cnty. Corr. Facility, 310 F. Supp. 2d 718 (M.D. Pa. 2004). In Rossman, PrimeCare similarly sought summary judgment on punitive damages claims arising from alleged inadequate mental health care in a correctional setting. 2024 WL 115203. The Rossman court went on to specifically address PrimeCare's knowledge of deficiencies in these exact areas, finding that there was evidence in the record that PrimeCare was aware of recurring problems

with its mental health intake procedures and medication administration protocols as evidenced by prior incidents, internal reports, and testimony from supervisory personnel. Id. at *10-*23. This Court concluded that this evidence creates a genuine issue of material fact as to whether PrimeCare knew of and allowed the problematic conduct of its employees. Id.

Particularly relevant to the present case, the Rossman court found significant evidence that PrimeCare management (and Centre County) were aware that correctional officers interfered with healthcare decisions and directives but failed to implement adequate procedures to address this issue. Id. at *11-12. This knowledge and indifference created a genuine issue of material fact as to whether PrimeCare recklessly disregarded a known risk to patient safety. Id. This directly parallels Dr. Miller's testimony in the present case that correctional officers similarly interfered and negatively affected the standard of care provided by the medical staff.

Other courts have reviewed and addressed similar allegations of systemic healthcare failures in a correctional facility and their analysis denying summary judgment remains applicable in the present case. See e.g. Evans v. Columbia County, 711 F.Supp.3d 256 (2024) (denying summary judgment on punitive damages claims against healthcare provider when there was evidence suggesting institutional knowledge of systemic deficiencies in mental health treatment

protocols); Francis, 636 F. Supp.2d 368 (holding that evidence of a healthcare provider's knowledge of deficient practices, combined with failures to remedy those deficiencies, created factual issues regarding reckless indifference that precluded summary judgment on punitive damages claims); A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 582 (3d. Cir. 2004) (institutional knowledge of deficient practices can support claims of deliberate indifference); Palakovic v. Wetzel, 854 F.3d 209, 225 (3d. Cir. 2017) (holding that healthcare providers in correctional settings have a duty to ensure adequate care regardless of administrative constraints).

These precedents are directly applicable to the present case, where the record contains substantial evidence of systemic failures in mental health protocols that were known to PrimeCare management.  Where material facts are in dispute regarding the adequacy of care and PrimeCare's knowledge of deficiencies, summary judgment must be denied.  Plaintiffs' expert opinions addressing the standards of care and their breach must be considered at the summary judgment stage.  When viewed in the light most favorable to the Plaintiffs as the non-moving party, this evidence creates a genuine issue of material fact as to whether PrimeCare's conduct rose to the level of reckless indifference.  Defendant PrimeCare's request for summary judgment on Plaintiffs' claim for punitive damages was appropriately denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court overrule PrimeCare's objections and adopt the Magistrate Judge's Report and Recommendation in its entirety.

                    Respectfully submitted,

                    **MINCEY FITZPATRICK ROSS, LLC**

                    /s/ Kevin V. Mincey
                    Kevin V. Mincey, PA ID No. 90201
                    Riley H. Ross III, PA ID No. 204676
                    Jennifer A. Nearn, PA ID No. 307517
                    One Liberty Place
                    1650 Market Street, Suite 3600
                    Philadelphia, PA 19103
                    Telephone: (215) 550-1999

                    *Attorneys for Plaintiffs*

Dated: March 18, 2025

## **Certificate of Service**

I, Kevin V. Mincey, hereby certify that on this 18th day of March, 2025, the foregoing Response was filed via ECF and therefore is considered served on all parties and is available for viewing.

/s/ Kevin V. Mincey
Kevin V. Mincey, Esquire