# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARMEN RILEY, et al.** | : | |
| **Plaintiffs,** | : | **Civil Action Number** |
| **v.** | : | **20-CV-00325** |
| **WARDEN BRIAN CLARK, et al.** | : | **(BRANN, J.)** |
| | : | **(ARBUCKLE, M.J.)** |
| **Defendants.** | : | |

## PLAINTIFFS' RESPONSE TO OBJECTIONS TO THE REPORT AND RECOMMENDATIONS FILED ON BEHALF OF COUNTY DEFENDANTS

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC.**

/s/ Riley H. Ross III
Kevin V. Mincey, PA ID No. 90201
Riley H. Ross III, PA ID No. 204676
Jennifer A. Nearn, PA ID No. 307517
Zainab K. Shields, PA ID No. 321181
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Pa 19103
Telephone: (215) 587-0006
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................ 1

II. ARGUMENT ............................................................... 2

    A. EXCESSIVE FORCE ................................................. 2

        1. Mendenhall's Use of OC Spray ............................... 2

        2. Ingersoll's and Weaver's Pressure on Ty'rique's Neck .................. 4

        3. Ingersoll's Knee on Ty'rique's Neck .............................. 5

        4. Restraint Belt Application ................................... 7

        5. Use of Force on June 26, 2019 ............................... 8

            a) The Video Evidence Supports the Magistrate Judge's Analysis .. …………………………........................................ 8

            b) Inconsistent Testimony About Ty'rique's Condition…......... 9

            c) Defendant Lewis's Use of the Hypoglossal Pressure Point. 10

            d) Proper Application of the *Kingsley* Factors .......................10

    B. FAILURE TO INTERVENE ................................................12

    C. SUPERVISORY LIABILITY AND IIED ............................. 13

            a) County Defendants Failed to Meet Their Initial Burden..... 14

            b) The Report Applied the Correct Legal Standard…......... 14

            c) Plaintiffs' Claims Were Adequately Pled and Supported.... 15

    D. WRONGFUL DEATH AND SURVIVAL ............................. 16

E. QUALIFIED IMMUNITY ....................................................... 17

F. ASSAULT AND BATTERY ................................................... 19

**III. CONCLUSION**.................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995) ..................................... 16

*Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001) ......................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................. 17, 18

*Doe v. Luzerne County*, 660 F.3d 169 (3d Cir. 2011) ........................................... 14

*El v. City of Pittsburgh*, 975 F.3d 327 (3d Cir. 2020) ........................................... 20

*Geist v. Ammary*, 40 F. Supp. 3d 467 (E.D. Pa. 2014) ......................................... 12

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) ................................................... 19

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) ................................................ 11, 20

*Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013) ................................ 14

*Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) ............................................. 14

*Patterson v. City of Wildwood*, 354 Fed.Appx. 695 (3d Cir. 2009) ..................... 12

*Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002) ................................................ 16

*White v. City of Vineland*, 500 F.Supp.3d 295 (D.N.J. 2020) ............................... 12

## Statutes and Rules

Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").......................... 17

(by implication)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARMEN RILEY, et al.** | : | |
| **Plaintiffs,** | : | **Civil Action Number** |
| **v.** | : | **20-CV-00325** |
| **WARDEN BRIAN CLARK, et al.** | : | **(BRANN, J.)** |
| | : | **(ARBUCKLE, M.J.)** |
| **Defendants.** | : | |

## PLAINTIFFS' RESPONSE TO OBJECTIONS TO THE REPORT AND RECOMMENDATIONS FILED ON BEHALF OF COUNTY DEFENDANTS

### I.    INTRODUCTION

Plaintiffs Carmen Riley, as Administrator of the Estate of Ty'rique Riley, Carmen Riley, and Thomas Matthews-Kemrer, through their undersigned counsel, hereby file this response to the objections to the Magistrate Judge's Report and Recommendations ("R&R" or the "Report") filed on behalf of Defendants Dauphin County, Brian Clark, Andrew Klahr, Steve Smith, Mark Neidigh, Richard Armermann, Greg Mendenhall, Scott Grieb, Jason Adams, Michael Blouch, Scott Lewis, Keith Biter, Robert Ingersoll, Cameron Weaver, Taylor Glenn, Martin Myers, Delta Bauer, Steve Singleton, Tami Donovan and Keith Hoffman ("Defendants" or "County Defendants") (Doc. 254). For the reasons stated below, and the reasons stated in the R&R, the District Court should overrule County

1

Defendants' objections and adopt the recommendations of the R&R as it relates to the issues raised by County Defendants.

## II.    ARGUMENT

## A. EXCESSIVE FORCE

The Magistrate Judge correctly analyzed the evidence regarding the alleged excessive force incidents at the Booking Center and properly recommended denial of summary judgment for County Defendants. Despite Defendants' objections, the Report and Recommendation ("R&R") applied the proper *Kingsley* factors and correctly identified genuine disputes of material fact that require jury resolution.

### 1. Mendenhall's Use of OC Spray

The Magistrate Judge properly determined that a genuine dispute of material fact exists as to whether Lieutenant Mendenhall's use of OC spray was excessive. Contrary to Defendants' assertion that the R&R "dismissed the uncontroverted testimony" of officers, the Magistrate Judge carefully weighed both the video evidence and officer testimony to reach his conclusion.

As the R&R noted, "Mendenhall, Ingersoll, and Weaver testify that Ty'rique was resisting at the time the OC spray was used." (Doc. 247 at 85.) However, the Magistrate Judge correctly observed that the video evidence does not clearly establish whether or to what extent Ty'rique was resisting when the spray was

2

deployed. The relevant two-second portion shows movement, but it is not definitive whether this movement reflects resistance by Ty'rique or simply the officers' motions.

Defendants mischaracterize the R&R as finding the video "unclear" while simultaneously relying on it. In fact, the Magistrate Judge appropriately recognized that the video shows some facts definitively (officers holding Ty'rique down) while other aspects (whether Ty'rique was actively resisting) remain subject to reasonable interpretation by a jury. This nuanced approach to video evidence is entirely proper and consistent with legal standards governing summary judgment. *Patterson v. City of Wildwood,* 354 Fed.Appx. 695 (2009)  (holding that when the videotape does not capture the entire incident or is susceptible to multiple reasonable interpretations, courts cannot resolve issues of fact or make credibility determinations); *White v. City of Vineland, 500 F.Supp.3d 295 (2020)* (holding that when videos and photos are not conclusive, a jury must decide what to make of the footage among other evidence); *Geist v. Ammary,* 40 F. Supp. 3d 467, 480 (E.D. Pa. 2014) (finding that even with video evidence, interpretations can differ based on perspective, and the resolution of factual disputes in such cases is the proper role of a jury trial and cannot be resolved at summary judgment).

Moreover, the R&R applied all *Kingsley* factors—not just resistance— noting that Ty'rique "was held down by four Officers, in leg shackles, with his

hands cuffed behind his back," (Doc. 247 at 87), which a reasonable jury could find lessened any threat posed and made the OC spray objectively unreasonable.

Furthermore, the Magistrate Judge properly considered all the circumstances, including that "Ty'rique was the only inmate present in the Booking Center lobby" and "was surrounded by six total Officers, four of whom were holding him down." (Doc. 247 at 87.) These factors bear directly on "the severity of the security problem at issue" under *Kingsley*, and the Magistrate Judge correctly determined that a reasonable jury could find the use of OC spray excessive under these circumstances.

County Defendants' claim that the Magistrate Judge "improperly discounts deposition testimony," (Doc. 254 at 3), mischaracterizes the Report. The Magistrate Judge acknowledged the testimony but correctly recognized that when contradictory evidence exists, it creates a genuine dispute of material fact for a jury to resolve.

### 2. Ingersoll's and Weaver's Pressure on Ty'rique's Neck

Defendants mischaracterize the R&R's analysis regarding Ingersoll's forearm and Weaver's hand and body weight allegedly applied to Ty'rique's neck. The Magistrate Judge noted that the video ***only*** definitively shows "Ingersoll and Weaver had their arms and hands near Ty'rique's neck," (Doc. 247 at 88), meaning

that the fact that Defendants had their arms and hands near Ty'rique's neck cannot be disputed.  However, the Magistrate Judge goes on to assert that a reasonable trier of fact could determine, based on the totality of the evidence, that these officers applied pressure to Ty'rique's neck.  (Doc. 247 at 90.)

County Defendants' characterization of this as a "contradiction" is unfounded. The Magistrate Judge properly acknowledged the limitations of the video evidence while recognizing that a jury could reasonably infer, based on the positioning of the officers and subsequent movements, that pressure was applied to Ty'rique's neck. This is precisely the type of factual dispute that should be resolved by a jury.

The Magistrate Judge also correctly applied the *Kingsley* factors, noting that Ty'rique was already restrained and surrounded by multiple officers, factors that "could find these facts lessened the security risk Ty'rique presented and made these uses of force by Ingersoll and Weaver excessive." (Doc. 247 at 91.)

### 3. Ingersoll's Knee on Ty'rique's Neck

County Defendants' objection to the Magistrate Judge's analysis of Ingersoll placing his knee on Ty'rique's neck is similarly without merit. The Magistrate Judge properly considered the totality of circumstances, including that Ty'rique was already handcuffed, shackled, and held down by multiple officers as well as

the video depicting Defendant Ingersoll placing his knee on Ty'rique's back for approximately forty-seven seconds. These facts directly bear on the *Kingsley* factors regarding "the relationship between the need for the use of force and the amount of force used" and "the threat reasonably perceived by the officer." (Doc. 247 at 78.)

The Magistrate Judge also noted that Mendenhall testified that placing a knee on a detainee's neck "would not be the thing to do that would be condoned." (Doc. 247 at 82.) This evidence further supports the R&R's conclusion that reasonable minds could differ on whether this use of force was excessive.

County Defendants' claim that the Magistrate Judge "failed to consider Decedent's actions" is incorrect. The Report explicitly acknowledges testimony about resistance but notes that "the video only definitively demonstrates that Weaver, Ingersoll, Grieb and Bauer were on top of Ty'rique and restraining him." (Doc. 247 at 85-86.) County Defendants seek to have the Court credit their version of events over conflicting evidence, which is inappropriate at the summary judgment stage. *Paladino v. Newsome*, 885 F.3d 203, 209-10 (3d Cir. 2018) (emphasizing that courts may not resolve factual disputes or make credibility determinations at summary judgment, and must view the facts in the light most favorable to the non-moving party); *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) (holding that "in considering a motion for summary judgment, a

6

district court may not make credibility determinations or engage in any weighing of the evidence"); *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011) (instructing that courts "may not weigh the evidence or make credibility determinations" at the summary judgment stage).

The Magistrate Judge correctly concluded that genuine disputes of material fact exist regarding whether Ingersoll placed his knee on Ty'rique's neck, whether such force was necessary given Ty'rique's restrained status, and whether this use of force complied with accepted practices. These disputed factual issues, coupled with evidence that such a technique "would not be condoned," preclude summary judgment and require jury determination.

### 4. Restraint Belt Application

The Magistrate Judge properly analyzed the restraint belt incident under the *Kingsley* factors. The R&R noted that while Ty'rique had moved his handcuffs to the front of his body, he was locked in his cell. (Doc. 247 at 96.) A reasonable jury could find that Ty'rique did not present an immediate security threat while confined in his cell.

Defendants' assertion that "once Decedent moved his cuffs to the front of his body, he was failing to comply with orders and resisting and created a security issue for DCP and PrimeCare staff entering the cell," (Doc. 254 at 10), begs the

question of whether Officers needed to enter the cell at that moment. The Magistrate Judge correctly recognized this created a genuine dispute of material fact.

At best for Defendants, the surveillance video creates more questions than it answers. As the R&R states, "reasonable minds may disagree whether that movement was due to Ty'rique resisting, due to the Officers manipulating his body to get the belt around his waist and secured..." (Doc. 247 at 98.) This is precisely the type of factual dispute that must be resolved by a jury, not on summary judgment.

## 5. Use of Force on June 26, 2019

County Defendants' objections to the Magistrate Judge's findings regarding the June 26, 2019 incidents are unfounded and should be rejected for the following reasons:

a) <u>The Video Evidence Supports the Magistrate Judge's Analysis</u>

The R&R correctly noted that while County Defendants claim the video "clearly shows" Ty'rique resisting, the video quality is such that it is difficult to determine the extent of any resistance. The Magistrate Judge properly concluded the following:

> "[W]hen Ty'rique is picked up and put onto the chair, his torso
> and upper body are obscured from view by the Officers
> standing around him. Ty'rique, including his lower body,
> quickly becomes more obscured from view as additional
> Officers surround him, making it unclear whether, and if so to
> what extent, Ty'rique was actually resisting as he was dragged
> from his cell, placed in the chair and secured in it."

(Doc. 247 at 106.)

County Defendants' characterization that the Magistrate Judge's analysis is "contradictory" is itself contradictory. The Magistrate Judge made the perfectly reasonable observation that the video's limitations create genuine disputes of material fact that must be resolved by a jury. Moreover, Defendants first assert that the Magistrate Judge should rely on the video but then later conclude that the video should *not* be considered as to Defendant Singleton. Defendants offer no argument for this assertion and do not explain their contradiction. (Doc. 254 at 14.)

b) <u>Inconsistent Testimony About Ty'rique's Condition</u>

The Magistrate Judge correctly considered Susan Irvine's testimony that Ty'rique appeared "wobbly" earlier in the day. County Defendants argue this is irrelevant because the officers may not have known this information, but this misses the point. The Magistrate Judge properly noted that "[a] reasonable trier of fact could find that Ty'rique's physical condition at the time was poor enough that it lessened, perhaps significantly, the reasonably perceived threat or security concern Ty'rique posed to DCP and the Officers." (Doc. 247 at 108.) County Defendants

attempt to discount this by pointing to Ty'rique later becoming "agitated" in the wheelchair. Defendants argue that such an action by Ty'rique somehow cancels out or overrules Susan Irvine's earlier observation. To the contrary, Defendants' allegation regarding Ty'rique's agitation serves to underscore the Magistrate Judge's conclusion that the record contains conflicting evidence about Ty'rique's condition that a jury should be permitted to evaluate.

c) <u>Defendant Lewis's Use of the Hypoglossal Pressure Point</u>

County Defendants minimize Defendant Lewis's application of the hypoglossal pressure point technique, claiming he only used it for "one second" at a time. However, the Magistrate Judge correctly considered Dr. Hua's expert opinion that "Riley's neck compression occurred during his being physical[ly] restrained and immediately before his witnessed sudden unconsciousness and pulseless electrical activity (PEA), which was due to a traumatic neck compression..." (Doc. 247 at 107.)

This is substantial evidence creating a genuine dispute of material fact about causation that cannot be resolved at summary judgment.

d) <u>Proper Application of the *Kingsley* Factors</u>

The Magistrate Judge correctly applied the *Kingsley* factors to determine that summary judgment should be denied. While County Defendants claim all

10

factors favor them, the Magistrate Judge properly found several factors create genuine disputes of material fact, including:

- The relationship between the need for force and amount of force used;

- The extent of Ty'rique's injury (ultimately leading to his death);

- The severity of the security problem and threat reasonably perceived; and

- Whether Ty'rique was actively resisting.

County Defendants' objections essentially ask this Court to reweigh the evidence and make credibility determinations, which is inappropriate at the summary judgment stage.

In sum, the Magistrate Judge's thorough analysis of the June 26, 2019 incidents correctly identified multiple genuine disputes of material fact that must be resolved by a jury. These include questions about the extent of Ty'rique's resistance, his physical condition at the time, the necessity and proportionality of the force used, and the causal relationship between the officers' actions and Ty'rique's subsequent medical emergency. County Defendants' objections improperly ask the Court to make credibility determinations and weigh conflicting evidence, which is inappropriate at the summary judgment stage.

**B. FAILURE TO INTERVENE**

The Magistrate Judge correctly recommended denying the County Defendants' Motion for Summary Judgment on Count VI, as their argument relied on the premise that Plaintiffs failed to show excessive force—a claim the Magistrate Judge found sufficient evidence to support.

Defendants go on to argue that "because Plaintiffs maintain these County Defendants were directly involved in the alleged excessive use of force and the Report denied them summary judgment, they cannot be liable under a failure to intervene theory because they had no realistic opportunity to prevent the alleged excessive force from occurring." (Doc. 254 at 15.)

This argument fundamentally misunderstands both the law and the Plaintiffs' claims. A defendant may be liable for both direct participation in excessive force and failure to intervene to prevent excessive force by others during the same incident. *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002) (holding that an officer who actively participated in excessive force against an inmate could also be liable for failure to intervene during other portions of the same incident). Different officers were involved in different aspects of the incidents at issue, and the evidence suggests that officers who weren't actively using force at certain moments had opportunities to intervene when others used excessive force.); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (finding that a supervising

12

officer could be liable for both his own actions and failure to prevent other officers' use of excessive force where he was in close proximity and had sufficient time to intervene).

Lastly, Defendants' request that summary judgement be entered for Defendant Donovan should be denied as Plaintiffs clearly allege that Defendant Donovan was present when excessive uses of force were asserted against Ty'rique and that Donovan had the opportunity to intervene and failed to do so. (Doc 192 at 18-19.)

The Magistrate Judge properly recognized that when excessive force claims survive summary judgment, related failure to intervene claims should likewise proceed to trial. Defendants' suggestion that an officer cannot be liable for both direct participation and failure to intervene misinterprets established Third Circuit precedent. The evidence creates genuine disputes of material fact regarding whether each officer had realistic opportunities to intervene during the prolonged encounters with Ty'rique, which must be resolved by a jury.

## C. SUPERVISORY LIABILITY AND IIED

The Magistrate Judge correctly recommended denial of summary judgment on Plaintiffs' supervisory liability and intentional infliction of emotional distress ("IIED") claims against County Defendants. Defendants' arguments

13

mischaracterize the nature of the summary judgment standard and improperly attempt to shift their initial burden to Plaintiffs.

a) <u>County Defendants Failed to Meet Their Initial Burden</u>

County Defendants' objection fundamentally misunderstands their burden at the summary judgment stage. As the Report correctly observed, when moving for summary judgment, the moving party bears "the initial responsibility of informing the district court of the basis for its motion, *and* identifying those portions of the summary judgment record which they believe demonstrates the absence of a genuine issue of material fact." (Doc. 247 at 133, *emphasis in original*.) This is not merely a procedural formality but a substantive requirement.

The Report correctly found that County Defendants offered only conclusory statements that Plaintiffs "did not show" County Defendants used objectively unreasonable force. Such bare assertions do not discharge the moving party's initial burden under *Celotex*. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). County Defendants' argument that they "do not have a burden to prove a negative until Plaintiffs meet their initial burden of proof through record evidence," (Doc. 254 at 16-17), fundamentally inverts the summary judgment standard.

b) <u>The Report Applied the Correct Legal Standard</u>

County Defendants' assertion that "Plaintiffs must then rebut County Defendants' motion by making a factual showing," (Doc. 254 at 17), prematurely shifts the burden to Plaintiffs. The Supreme Court in *Celotex* clearly established that this burden-shifting only occurs after the moving party has properly discharged its initial responsibility. 477 U.S. 317, 323 (1986).

County Defendants' reliance on a portion of *Celotex* stating that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case," (Doc. 254 at 17), actually undermines their position. County Defendants did not conduct such a "showing" or "pointing out" of the absence of evidence. They merely recited legal conclusions without engaging with the evidentiary record.

c) <u>Plaintiffs' Claims Were Adequately Pled and Supported</u>

County Defendants mischaracterize Plaintiffs' claims as mere "boiler plate language and general claims." (Doc. 254 at 17.) In fact, the Second Amended Complaint contains specific allegations regarding County Defendants' failure to implement and enforce policies regarding the treatment of inmates with mental health conditions, and allegations regarding their reckless and outrageous conduct toward Ty'rique Riley. (Doc. 64 at ¶¶173-190, 204-207.)

Furthermore, the Record contains substantial evidence that could allow a reasonable jury to find for Plaintiffs on both claims:

1. For supervisory liability, the record includes evidence that County Defendants failed to properly train officers on handling inmates with mental health conditions, as evidenced by the repeated use of force against Ty'rique despite his obvious mental distress. (Doc 192 at 39-41.)

2. For IIED, the record includes evidence of objectively outrageous conduct, including the use of force against a clearly mentally distressed individual who was already restrained. (Doc. 192 at 44.)

The Magistrate Judge correctly found that County Defendants failed to meet their initial burden at the summary judgment stage on both the supervisory liability and IIED claims. Their objections mischaracterize the summary judgment standard and improperly attempt to shift their burden to Plaintiffs. The record contains substantial evidence from which a reasonable jury could find supervisory liability based on failures to implement appropriate policies for mentally distressed detainees and could find that Defendants' conduct toward Ty'rique was extreme and outrageous, satisfying the elements of IIED.

## D. WRONGFUL DEATH AND SURVIVAL

Plaintiffs rely on the R&R's analysis to support the recommendation to deny summary judgment for Plaintiffs' Wrongful death and survival claims.

## E. QUALIFIED IMMUNITY

County Defendants incorrectly argue that the Magistrate Judge failed to grant them qualified immunity. This argument should be rejected for multiple substantive reasons.

First, the Report correctly declined to consider County Defendants' underdeveloped and conclusory argument for qualified immunity. As the Magistrate Judge properly found, County Defendants' qualified immunity argument consisted of merely setting forth the legal standard followed by the conclusory statement that "[i]t was not" clearly established that their conduct violated constitutional rights. (Doc. 247 at 113.) The Report correctly found that "the County Defendants do not cite to evidence, and aside from a boilerplate standard do not cite to any legal authority demonstrating why they are entitled to summary judgment." (Doc. 247 at 114.)

Second, when claiming qualified immunity, defendants bear the burden of demonstrating that the right in question was not clearly established. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (holding that the burden of persuasion in qualified immunity cases is on the defendant to demonstrate that the challenged conduct did not violate a clearly established statutory or constitutional

right); *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (reaffirming that the burden of persuasion at both steps of the analysis is on the defendant seeking qualified immunity). Here, County Defendants utterly failed to meet this burden, providing no analysis of relevant precedents that would demonstrate why the prohibition against excessive force against restrained detainees was not clearly established; *El v. City of Pittsburgh*, 975 F.3d 327, 339 (3d Cir. 2020) (explaining that a right is clearly established when "existing precedent [has] placed the statutory or constitutional question beyond debate" and emphasizing that officials must conduct a reasonable inquiry into whether their conduct violates established rights).

Third, the right to be free from excessive force was clearly established at the time of the incidents in question. The Supreme Court has long recognized that detainees have a right to be free from excessive force, and the *Kingsley* decision in 2015 clearly established that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable" to prevail on an excessive force claim. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). This decision predated the incidents in this case by four years.

Fourth, County Defendants' post-hoc attempt to supplement their qualified immunity argument in their Objections highlights the inadequacy of their original position. Their newly expanded argument in their Objections inappropriately

attempts to add factual assertions and legal analysis that were absent from their summary judgment motion, which the Magistrate Judge properly declined to consider.

The Magistrate Judge correctly denied qualified immunity at this stage for multiple compelling reasons. County Defendants failed to meet their burden of demonstrating that the constitutional right at issue was not clearly established. Moreover, the right of pretrial detainees to be free from objectively unreasonable force was clearly established by *Kingsley* and other precedents well before the incidents in question. Given the numerous disputed material facts surrounding the force used against Ty'rique, qualified immunity determination is inappropriate at the summary judgment stage and should be reserved for trial.

## F. ASSAULT AND BATTERY

Plaintiffs rely on the R&R's analysis to support the recommendation to deny summary judgment for Plaintiffs' Assault and Battery claims.

## III. CONCLUSION

For the reasons stated herein and for the reasons stated in the Magistrate Judge's Report and Recommendation, County Defendants' Objections should be overruled.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC.**

Date: March 18, 2025

/s/ Riley H. Ross III
Kevin V. Mincey, PA ID No. 90201
Riley H. Ross III, PA ID No. 204676
Jennifer A. Nearn, PA ID No. 307517
Zainab K. Shields, PA ID No. 321181
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Pa 19103
Telephone: (215) 587-0006
*Attorneys for Plaintiffs*

## **Certificate of Service**

I, Riley H. Ross III, hereby certify that on this 18th day of March, 2025, the foregoing Response was filed via ECF and therefore is considered served on all parties and is available for viewing.

/s/ Riley H. Ross III
Riley H. Ross III