## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, *et. al.*, | : | CIVIL ACTION NO. 4:20-cv-00325 |
| Plaintiffs | : | |
| | : | Honorable Matthew W. Brann |
| v. | : | |
| | : | |
| ANDREW KLAHR, *et al.* | : | *Electronically Filed* |
| Defendants | : | |
| | : | JURY TRIAL DEMANDED |


## <u>DEFENDANTS' BRIEF IN SUPPORT OF JOINT MOTION TO SEVER CLAIMS</u>


Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____

Donald L. Carmelite, Esquire
PA I.D. No. 84730
Coryn D. Hubbert, Esquire
PA I.D. No. 334121
200 Corporate Center Drive, Suite 300
Camp Hill, PA 17011
Telephone: (717) 651-3504; (717) 651-3703
Facsimile: (717) 651-3707
Email: dlcarmelite@mdwcg.com;
cdhubbert@mdwcg.com
Attorneys for Defendants, Matthew Danner
and Robert Ingersoll

Dated: <u>August 13, 2025</u>

i

**LAVERY LAW**

BY: /s/ *Frank J. Lavery, Jr.*
    Frank J. Lavery, Jr., Esquire
    PA I.D. No. 42370
    Andrew Norfleet, Esquire
    PA I.D. No. 83894
    225 Market Street, Suite 304
    Harrisburg, PA 17108
Dated: August 13, 2025  Telephone: (717) 233-6633
    Facsimile: (717) 651-3707
    Email: flavery@laverylaw.com;
    anorfleet@laverylaw.com
    Attorneys for Defendants Cameron Weaver,
    Greg Mendenhall, Scott Grieb, Delta Bauer,
    Scott Lewis, Andrew Klahr, Keith Biter,
    Steve Singleton, and Keith Hoffman

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ............................................................... ii

I.    INTRODUCTION ......................................................................1

II.   PROCEDURAL BACKGROUND ...........................................2

III.  FACTUAL HISTORY ...............................................................4

IV.   STATEMENT OF QUESTIONS ...............................................6

      1.      Whether Plaintiffs' BC Incident claims against Defendants Ingersoll, Weaver, Mendenhall, Grieb, and Bauer should be severed from Plaintiffs' DCP Incident claims against Defendants Lewis, Klahr, Biter, Singleton, Hoffman, and Danner?

      ***Suggested Answer in the Affirmative.***

V.    STANDARD OF REVIEW.........................................................7

VI.   ARGUMENT..............................................................................9

VII.  CONCLUSION.......................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Bermudez v. Progressive Ins. Co.*, 2021 WL 3033757 (E.D. Pa. July 19, 2021)....14

*Carr v. Borden*, 2024 WL 4291081 (M.D. Pa. Sept. 25, 2024) ...............................10

*Carter v. Hewitt*, 617 F.2d 961 (3d Cir. 1980) ................................................. 17, 18

*DirecTV, Inc. v. Chorba*, 2003 WL 24178469 (M.D. Pa. Oct. 16, 2003) ..............10

*Grigsby v. Kane*, 250 F. Supp. 2d 453 (M.D. Pa. 2003)............................... 7, 13, 16

*Henderson v. Mahally*, 639 F. Supp. 3d 481 (M.D. Pa. 2022) ...................... 8, 9, 20

*In re Bayside Prison Litig.*, 157 F. App'x 545 (3d Cir. 2005) ...............................14

*Jacobs v. Cumberland Cnty.*, 8 F.4th 187 (3d Cir. 2021).........................................11

*Klein v. Madison*, 2018 WL 3535301 (E.D. Pa. July 20, 2018).............................16

*Mayo v. City of York, PA*, 2007 WL 1227726 (M.D. Pa. Apr. 25, 2007)...............20

*Morris v. Kesserling*, 2010 WL 5158412 (M.D. Pa. Dec. 14, 2010) .......................9

*Norwood Co. v. RLI Ins. Co.,* 2002 WL 523946 (E.D. Pa. Apr. 4, 2002)...............10

*Price v. New Castle Police Dep't*, 2021 WL 322228 (W.D. Pa. Feb. 1, 2021).......13

*Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78 (M.D. Pa. 2015) ... 7, 8, 9

*Spain v. Gallegos*, 26 F.3d 439 (3d Cir. 1994) .......................................................14

*White v. ABCO Eng'g Corp.*, 199 F.3d 140 (3d Cir. 1999) ......................................7

*Xerox Corp. v. SCM Corp.*, 576 F.2d 1057 (3d Cir. 1978) .....................................10

*Zampetis v. City of Atl. City*, 2018 WL 5729905 (D.N.J. Nov. 2, 2018)................16

**Rules**

Fed. R. Civ. P. 21 .......................................................................................................7

AND NOW, COME Defendants, Matthew Danner and Robert Ingersoll, by and through their counsel Marshall Dennehey, P.C. Donald L. Carmelite, Esquire, and Coryn D. Hubbert, Esquire, and Cameron Weaver, Greg Mendenhall, Scott Grieb, Delta Bauer, Scott Lewis, Andrew Klahr, Keith Biter, Steve Singleton, and Keith Hoffman, by and through their counsel Lavery Law and Frank J. Lavery, Esquire, and respectfully submit this Brief in Support of their Joint Motion to Sever Claims.

## I.     __INTRODUCTION__

This action presents the unique circumstance wherein Plaintiffs' remaining claims against the Officer Defendants arise from two distinct use of force incidents involving different occurrence dates, Defendants, locations, and alleged injuries. The Court's dismissal of Plaintiffs' conspiracy and *Monell* claims leaves Plaintiffs seeking relief for two separate incidents lacking any commonalities.

Defendants Ingersoll, Weaver, Mendenhall, Bauer, and Grieb ("BC Defendants") and Defendants Lewis, Klahr, Biter, Singleton, Hoffman, and Danner ("DCP Defendants") seek severance of Plaintiffs' claims related to these distinct incidents to ensure a fair and focused trial for all parties involved, avoid jury confusion, allow for a more precise evaluation of the distinct legal and factual issues, and avoid undue prejudice to Defendants that would certainly result from conflating the two incidents.

## II.    <u>STATEMENT OF RELEVANT PROCEDURAL BACKGROUND</u>

Plaintiffs initiated this matter on August 20, 2019 in the Dauphin County Court of Common Pleas, alleging claims related to the arrest, pretrial detention, and death of their son, Ty'rique Riley ("Ty'rique"). **ECF 1-1.** The case was removed to federal court, and Plaintiffs filed an Amended Complaint on May 8, 2020. **ECF 1, 16.** On April 9, 2021, Plaintiffs filed a Second Amended Complaint, the operative pleading, asserting fourteen claims against 34 defendants and numerous John Does. **ECF 64.** In January of 2024, the parties stipulated to the dismissal of seven Defendants. **ECF 168, 172.** All remaining Defendants subsequently moved for summary judgment. **ECF 157, 160, 164, 173.** On March 31, 2025, this Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' Motions for Summary Judgment. **ECF 272, 273.** Following this Order, and this Court's Order partially granting Plaintiffs' Motion for Reconsideration (**ECF 286-287**), the  remaining claims in this matter are:

- Count V: § 1983 Excessive Force against Defendants Ingersoll, Weaver, Mendenhall, and Lewis;

- Count VI: § 1983 Failure to Intervene against Defendants Weaver, Mendenhall, Grieb, Bauer, Klahr, Biter, Singleton, Hoffman, and Danner;

2

- Count IX: Medical Negligence against PrimeCare Medical, Inc.;

- Count XI: Assault against Defendants Ingersoll, Weaver, Mendenhall, and Lewis;

- Count XII: Battery against Defendants Ingersoll, Weaver, Mendenhall, and Lewis;

- Count XIII: Wrongful Death against Defendants Klahr, Lewis, Biter, Singleton, Hoffman, and Danner (DCP Defendants only); and

- Count XIV: Survival Action against Defendants Ingersoll, Weaver, Mendenhall, Bauer, Grieb, Klahr, Lewis, Biter, Singleton, Hoffman, Danner, and PrimeCare Medical, Inc.

**Id.**[1]

Defendants now file their Joint Motion to Sever Claims, and submit the within Brief in Support thereof.

---

[1] PrimeCare since filed a Motion to Dismiss for Lack or Jurisdiction, or in the Alternative, Motion to Sever. **ECF 288-289.** Moving Defendants agree that Plaintiffs' claims against PrimeCare should be severed from their claims against the Corrections Officer Defendants. As discussed throughout this Brief, Moving Defendants argue that it is further necessary to sever Plaintiffs' claims against the BC and DCP Defendants.

### III.  RELEVANT FACTUAL HISTORY

Plaintiffs' claims arise from two separate incidents of alleged excessive force. The first incident occurred on June 18, 2019 at the Dauphin County Booking Center and involved the BC Defendants ("BC Incident"). The second incident occurred more than a week later, on June 26, 2019, at Dauphin County Prison and involved the DCP Defendants ("DCP Incident"). **See ECF 64, 247, 272.**

The BC Incident began with Ty'rique's arrival at the Dauphin County Booking Center, following his arrest by Susquehanna Township Police. **ECF 159, ¶¶ 13-14.** Upon arrival at the Booking Center, Ty'rique resisted instructions to exit the vehicle. **ECF 159, ¶ 14; ECF 175, ¶ 36; ECF 272, p. 18.** Once inside the booking center, Ty'rique did not comply with multiple commands to face the wall, attempted to step on top of the bench when officers moved him to face the wall, and pulled away from officers. **ECF 175, ¶¶ 37-38; ECF 272, p. 18.** Weaver and Ingersoll took Ty'rique to the ground. **ECF 175, ¶ 39; ECF 272, p. 18.** Bauer held down Ty'rique's legs and Ingersoll and Weaver held down Ty'rique's torso and head while Ty'rique was searched and his handcuffs and leg irons removed. **ECF 175-7; ECF 177; ECF 272, p. 18.** Ingersoll subsequently placed his knee on Ty'rique. **ECF 175-7, 177.** Once the officers secured Ty'rique in leg restraints, the officers attempted to roll Ty'rique onto his back, at which point he began to struggle. **ECF 175-7; ECF 177; ECF 272, pp. 19-20.** Mendenhall then administered OC spray.

4

**ECF 175-7, 177.** The officers removed Ty'rique's belt and switched his handcuffs. **Id.**

Ingersoll and Weaver's actions in holding Ty'rique down and Mendenhall's use of OC spray form the basis for Plaintiffs' surviving claims of excessive force, battery, and assault related to the BC Incident. **ECF 272, pp. 17-36.** Plaintiffs' BC Incident failure to intervene claims are based solely on a failure to intervene in Ingersoll and Weaver's actions. **Id.** The BC Incident forms the exclusive basis for all claims against the BC Defendants. **See ECF 272-273.**

The DCP Incident occurred more than a week later at a completely separate facility. That morning, medical staff determined that Ty'Rique needed an emergency transport to the hospital. **ECF 159, ¶¶ 25-27.** Danner and Singleton came to Ty'rique's cell to prepare him for transport. **ECF 159, ¶ 29-30; ECF 272, pp. 45-46.** Ty'rique did not comply with orders to change out of his suicide smock, and further engaged in acts of physical resistance against Danner and Singleton. **ECF 159, ¶¶ 31-35; ECF 272, pp. 45-46.** Despite such resistance, Danner, Singleton, and Hoffman handcuffed Ty'rique and shackled his legs. **ECF 159, ¶¶ 36-39; ECF 272, pp. 45-46.** Hoffman then left the area. **ECF 159, ¶ 38.**

Klahr and Lewis then arrived at Ty'rique's cell, and Klahr ordered that Ty'rique be placed into a restraint chair due to Ty'rique's continued resistance. **Id. at ¶ 40.** Biter brought the restraint chair to Ty'rique's cell, and a spit shield was

5

placed on Ty'rique. **Id. at ¶¶ 40-41.** Ty'rique was then removed from his cell and placed in the restraint chair. **Id. at ¶ 44.** Ty'rique began to struggle and kick repeatedly, resulting in Lewis applying a hypoglossal pressure point to stop Ty'rique from kicking. **Id. at ¶ 45.** As Lewis did this, Klahr, Biter, Danner, and Singleton were able to secure the restraints of the chair, and thereafter, Ty'rique became unresponsive. **Id. at ¶¶ 46-47.**

Lewis's application of the hypoglossal pressure point forms the sole basis for Plaintiffs' claims of excessive force, battery, and assault arising from DCP Incident. **ECF 272, pp. 44-60.** Plaintiffs' DCP Incident failure to intervene claims are based solely on a failure to intervene in Lewis's actions. **Id.** The DCP Incident forms the basis for all claims against the DCP Defendants. **Id.** Additionally, in contrast to Plaintiffs' claims against the BC Defendants, Plaintiffs assert an additional claim of wrongful death against DCP Defendants, asserting that the use of force during the DCP Incident caused Ty'rique's death. **ECF 64, Count XIII; ECF 272, p. 5.**

IV.    <u>**STATEMENT OF QUESTIONS**</u>

1.    Whether Plaintiffs' BC Incident claims against the BC Defendants should be severed from Plaintiffs' DCP Incident claims against the DCP Defendants?

***Suggested Answer in the Affirmative.***

6

## V.    <u>STANDARD OF REVIEW</u>

A district court possesses "virtually unfettered discretion in determining whether or not severance is appropriate." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003). Under Fed. R. Civ. P. 21, "the court may at any time, on just terms [ . . . ] sever any claim against a party." Fed. R. Civ. P. 21. Claims severed pursuant to Fed. R. Civ. P. 21 "become independent actions with separate judgments entered in each". *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999) (internal quotations omitted).

Fed. R. Civ. P. 20 "imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action." *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 80-81 (M.D. Pa. 2015) (internal quotations omitted). "Rule 21 [. . .] allows parties to move to sever any claim or party that has been improperly joined." *Id.* at 81. "Misjoinder is the improper union of parties in a civil case." *Id.* (quoting Black's Law Dictionary (9th ed. 2009)). "Where there has been a misjoinder of parties because they do not satisfy the requirements of Rule 20(a), Rule 21 authorizes the Court to 'on just terms, add or drop a party' and 'may also sever any claim against a party.'" *Id.* (quoting Fed. R. Civ. P. 21).

"Courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence or a series of transactions or occurrences. Transaction is a word of flexible meaning, and may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (cleaned up, internal quotations and citation omitted). "In determining whether a logical relationship exists between claims, the Third Circuit has stated that courts must engage in 'a detailed analysis to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.'" *Id.* (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978) (internal quotations omitted)).

"Severance is appropriate when the claims are 'discrete and separate,' each capable of resolution without dependence or effect on the other." *Henderson v. Mahally*, 639 F. Supp. 3d 481, 486 (M.D. Pa. 2022). "[T]he absence of a finding of misjoinder does not end the inquiry of whether severance is appropriate. Rather, once the court has resolved [the analysis of misjoinder], it may then consider additional factors in determining whether to grant a motion to sever. These factors include: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the

8

severance will be prejudiced if it is granted; and (4) whether the party requesting the severance will be prejudiced if it is not granted."[2] *Morris v. Kesserling*, 2010 WL 5158412, at *4 (M.D. Pa. Dec. 14, 2010). *See also Henderson*, 639 F. Supp. 3d at 486-487.

## VI.  **ARGUMENT**

### A.  **The BC Incident and DCP Incident fail the logical relationship and transaction test, and accordingly, are misjoined.**

The BC and DCP Incidents share no factual issues, entail differing legal issues, and do not arise from the same basic controversy. *Russell*, 305 F.R.D at 81. Each incident involves different defendants, locations, occurrence dates, and alleged injuries. While both incidents involve common causes of action, Plaintiffs only assert a wrongful death claim related to the DCP Incident. Thus "a jury will need examine evidence of the two [incidents] independently" and the "key question of whether [the BC Defendants and DCP Defendants violated Ty'rique's rights] will not involve [any] of the same factual issues, will not promote trial convenience, and will make the jury's task most burdensome if not confusing." *Norwood Co. v. RLI*

---

[2] These severance factors are identical to the factors to be considered in deciding whether to bifurcate a trial under Fed. R. Civ. P. 42(b). *Henderson*, 639 F. Supp. 3d at 487; *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014). While Defendants do not seek bifurcation, as separate juries are necessary to ensure fairness, cases in this Circuit ruling on whether to bifurcate a trial have relevance to the severance analysis.

*Ins. Co.*, 2002 WL 523946, *4 (E.D. Pa. Apr. 4, 2002) (cited with approval by *Russell*, 305 F.R.D. at 81). *See also Carr v. Borden*, 2024 WL 4291081, *2 (M.D. Pa. Sept. 25, 2024) (finding claims were misjoined where the plaintiff "asserted civil rights claims based on four completely distinct events that [were] not connected in any way other than the fact that they occurred while he was incarcerated in Dauphin County Prison"). Simply, the BC and DCP Incidents do not share a logical relationship of facts or controversies. *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978).

Further, Plaintiffs' conspiracy and municipal liability claims did not survive summary judgment. Thus, "in the absence of any claims that the defendants conspired or acted jointly, the same transaction requirement of Rule 20, even when read as broadly as possible, is plainly not satisfied." *DirecTV, Inc. v. Chorba*, 2003 WL 24178469, *3 (M.D. Pa. Oct. 16, 2003) (internal citation omitted) (cited with approval by *Russell*, 305 F.R.D. at 81). Plaintiffs now lack any cause of action or claim tying the two incidents together. As noted previously, but worth noting again, not one BC Defendant is a DCP Defendant, and vice versa.

The legal analyses underlying Plaintiffs' claims related to each incident are also distinct. While the claims of excessive force, failure to intervene, battery, and assault are considered under the same legal standard, the similarities between the two incidents stop there. Indeed, a determination as to whether a use of force is

objectively reasonable "requires 'careful attention to the facts and circumstances of each particular case'", and for such circumstances to be analyzed "from the perspective of a reasonable officer on the scene". *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194-195 (3d Cir. 2021). In analyzing such facts and circumstances, six factors are considered in analyzing the reasonableness of a use of force: 1) the relationship between the need for the use of force and the amount of force used; 2) the extent of the plaintiff's injury; 3) any effort made by the officer to temper or to limit the amount of force; 4) the severity of the security problem at issue; 5) the threat reasonably perceived by the officer; and 6) whether the plaintiff was actively resisting. *Id.* Accordingly, where, as here, the underlying facts and circumstances of the two incidents are significantly different, the issues underlying the analyses of the same must also be different.

Specifically, the BC Incident occurred immediately after Ty'rique's arrest at the Dauphin County Booking Center. This context presents distinct security concerns as Ty'rique was not yet processed, searched, or properly restrained. In contrast, by the time of the DCP Incident more than a week later, Ty'rique had been medically assessed, placed on suicide watch, wore only a suicide smock, and was being transferred to a hospital due to his altered mental status. **ECF 159, ¶¶ 25-27; ECF 175, ¶ 147.** Ty'rique further engaged in different acts of resistance in each incident, and the respective Defendants met such resistance with different force.

11

During the BC Incident, Ty'rique did not comply with multiple commands to face the wall, attempted to step on top of the bench when moved to face the wall, tried to sit and create "dead weight", and further pulled away from officers. **ECF 175, ¶¶ 37-38; ECF 175-7.** In contrast, during the DCP Incident, Ty'rique engaged in multiple acts of resistance by refusing to comply with orders to change out of his suicide smock, grabbing Danner's hand, and kicking and struggling both in his cell and after being placed in the restraint chair. **ECF 159, ¶¶ 31-35, 45-46; ECF 174, ¶¶ 165-167.**

The second *Jacobs* factor, extent of the injury, is perhaps most relevant to analysis of misjoinder, given the vast divergence between the injuries Ty'rique allegedly sustained each incident. Plaintiffs assert minimal injuries related to the BC Incident, citing, at most, OC spray in Ty'rique's eyes and a potentially related injury to Ty'rique's wrist and forearm. **ECF 193, ¶¶ 59, 72; ECF 194-7.** Plaintiffs further lack a medical expert to opine on Ty'rique's injuries causally related to the the BC Incident. **ECF 272, pp. 23-24.** The Court specifically stated that it is "ill-equipped to assess [Ty'rique's] medical reports in the absence of expert opinion, and the distance of time between [Ty'rique's] autopsy as well as the number of additional incidents involving force makes any tie between these acts and [Ty'rique's] injuries speculative." **Id. at 24.** In contrast, Plaintiffs assert that the DCP incident "caused Ty'rique's death". **ECF 193, ¶ 196.** These allegations require the jury to go far

12

beyond the excessive force analysis, and further analyze Ty'rique's medical history and expert medical reports regarding Ty'rique's cause of death. No such extensive assessment is required for the BC Incident, where the claimed injuries are limited to eye irritation and a potential wrist injury.

Given the differences between the BC and DCP Incidents by way of security concerns, acts of resistance exhibited by Ty'rique on each occasion, force applied by uncommon defendants, and entirely distinct claimed injuries ranging from "a speculative injury" to death, the analysis of whether the use of force was reasonable in each incident will be a significantly different analysis, and there is no logical relationship between these analyses. *See Grigsby*, 250 F. Supp. 2d at 456 (severing claims made by two plaintiffs where claims were "factually dissimilar" and shared only one group of common defendants); *Price v. New Castle Police Dep't*, 2021 WL 322228 (W.D. Pa. Feb. 1, 2021) (finding "no allegations which sufficiently connect[ed]" plaintiff's claims based on three "separate interactions with separate law enforcement officers on separate dates" and there were "no allegations of conspiracy, retaliation, or any suggestion of a concerted effort").

In light of the the above and based on the post summary judgment procedural posture, the BC and DCP Defendants are misjoined, and Plaintiffs' claims against them must be severed.

**B.**   **Alternatively, absent misjoinder, the four severance factors are met.**

**1.**   **The issues underlying the BC and DCP Incidents are significantly different.**

For the purposes of this factor, Defendants rely on the arguments set forth in Section A above.

**2.**   **The BC and DCP Incidents require testimony of different witnesses and different evidentiary proof.**

This case stands far from those where "overlapping evidence and the intertwined nature of the two claims" weighs against severance. *See Bermudez v. Progressive Ins. Co.*, 2021 WL 3033757, at *5 (E.D. Pa. July 19, 2021). Instead, Plaintiffs' claims arise from two separate incidents which occurred at different locations more than a week apart and, importantly, not one Defendant was involved in both incidents. This necessarily means that the evidence relevant to each incident will be distinct. *See Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994) ("[R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." (citation omitted)).

Simply, the issues underlying each incident are not "so closely interwoven that [Plaintiffs] would have to present the same evidence twice in separate trials." *See In re Bayside Prison Litig.*, 157 F. App'x 545, 547 (3d Cir. 2005). Instead,

evidence relevant to the BC Incident may largely consist of video footage, photographs of Ty'Rique after the incident, testimony of the BC Defendants, and testimony of non-parties Christopher Haines and Kassandra Betancourt. **See ECF 175, ¶¶ 34-62, 69-80.** In contrast, evidence relevant to the DCP Incident may consist of separate video footage, pre-incident and post-incident medical records, expert testimony related to the cause of death, testimony of the DCP Defendants, and testimony of non-parties Officer Donovan, Officer Swanson, Sergeant Hess, and relevant medical staff. **See ECF 159-4.** Perhaps the sole instance of overlapping evidence will be the testimony of Plaintiffs' expert Roy Gravette. **See ECF 197-1.** However, the opinions posited in Gravette's report are clearly separated by incident, with the sole overlap being his final opinion that "Ty'rique was unnecessarily subjected to force by correctional staff at DCP". **Id. at p. 12.** Defendants anticipate offering medical and correction expert opinions in a similar method.

Overall, a vast majority, if not all, of the evidence relevant to one incident is wholly irrelevant to the other. This factor weighs in favor of severance.

### 3. Plaintiffs will suffer no prejudice if Defendants' request for severance is granted.

Plaintiffs will not be prejudiced by severance of the two separate incidents. Courts in the Third Circuit have denied these motions in the discovery stage to avoid undue delay in the resolution of the case and duplicative trial preparation efforts.

*See, e.g., Klein v. Madison*, 2018 WL 3535301, at *2 (E.D. Pa. July 20, 2018) ("Judge Smith has denied Defendants' bifurcation proposal and has directed that fact and expert discovery on all claims proceed together."); *Zampetis v. City of Atl. City*, 2018 WL 5729905, at *2 (D.N.J. Nov. 2, 2018) ("having to restart the entire discovery process anew for [plaintiff's] municipal liability claims would not be convenient, avoid prejudice, or expedite and economize the case" (footnote omitted)). No such circumstances exist here. Instead, fact discovery in this matter is closed and the parties have gathered evidence specific to each incident.

Furthermore, Defendants' request is timely. *See Grigsby*, 250 F. Supp. 2d at 456 ("[T]he cases will not be severed through discovery. They will, however, be severed for the purposes of dispositive motion practice and trial."); *Zampetis*, 2018 WL 5729905, at *2 ("Bifurcation of discovery at the initial stage of a plaintiff's excessive force and municipal liability case does not present the same issue or have the same benefits, however, as bifurcation at the post-summary judgment trial stage."). By seeking severance prior to trial, as opposed to the beginning of discovery, the collateral effects of a severance order on Plaintiffs and the court are minimized. Instead, Defendants' request would streamline the triable issues of fact, reduce prejudice to Defendants, and increase clarity for the juries of the issues to be decided and what evidence may be considered in deciding those issues.

Indeed, Plaintiffs, the Court, and the jurors would benefit from severance and the resulting clarity in the issues to be decided. Therefore, no prejudice would result to Plaintiffs, and this factor weighs in favor of severance.

### 4. Defendants will suffer significant prejudice should the request for severance be denied.

Procedural fairness demands that the parties present issues in such a way that evidence of multiple use of force incidents does not "appeal[] to the jury's sympathies, arouse[] its sense of horror, provoke[] its instinct to punish, or otherwise...cause [the] jury to base its decision on something other than the established propositions in the case." *See Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980) (citing 1 J. Weinstein & M. Berger, Weinstein's Evidence P 403(03), at 415, 417 (1978)).

Plaintiffs' theory of liability for the DCP Incident involves convincing a jury that Ty'rique's death resulted from the culmination of his overall treatment at the Dauphin County Booking Center and Dauphin County Prison by all those who encountered Ty'rique. Their Amended Complaint and summary judgement filings reinforce this theory. However, the simultaneous inclusion of evidence relating to both incidents unduly broadens the range of evidence the jury will consider in determining whether each use of force or failure to intervene was objectively reasonable.

17

Indisputably, juries sometimes use evidence for an improper purpose, particularly when the issue under review involves matters of policing. *See* Amy Farrell, Liana Pennington, Shea Cronin, *Juror Perceptions of the Legitimacy of Legal Authorities and Decision Making in Criminal Cases*, 38 LAW & SOC. INQUIRY 773, 776 (2013) ("Several prior studies suggest that attitudes toward the police or courts influence the jury decision-making process."); *see also* Terrence M. Cunningham, *How Police and Communities Can Move Forward Together*, HUM. RTS., 2021, at 9 (discussing contemporary "estrangement between police officers and their communities."). Such improper use must be avoided here, as evidence of each incident prejudices the Defendants involved in the other.

Evidence of the DCP Incident severely prejudices the BC Defendants, particularly given that Plaintiffs allege the DCP incident "caused Ty'rique's death". **ECF 193, ¶ 196.** Evidence related to this assertion goes far beyond the arrest and booking of Ty'rique, and would only "appeal[] to the jury's sympathies, arouse[] its sense of horror, provoke[] its instinct to punish, or otherwise...cause [the] jury to base its decision" on evidence which is entirely inconsequential to the BC Incident. *Carter*, 617 F.2d at 972. Such evidence may further lead the jury to improperly conclude that the actions of the BC Defendants somehow caused or contributed to Ty'rique's death, particularly where most, if not all of the evidence related to Ty'rique's alleged injuries is applicable only to the DCP Incident. Plaintiffs cannot

18

even produce a medical expert to causally relate any injury to the BC Incident, let alone a death. Nonetheless, a family member of Plaintiffs has already publicly proclaimed that the BC Incident is "no different than George Floyd".[3] If Plaintiffs are permitted to admit evidence related to the DCP Incident before the same jury as the BC Incident, nothing would stop a jury from coming to this same improper conclusion. Simply, it would be difficult, if not impossible, to ask a jury to exclusively consider the BC Incident when determining the liability of BC Defendants after the jury hears extensive evidence related to Ty'rique's time in prison, related medical records, and ultimate death. The sheer volume of evidence related to the DCP Incident will overwhelm and obscure the jury's ability to differentiate between the respective incidents.

Similarly, inclusion of the the BC Incident in the trial of the DCP Defendants severely prejudices the DCP Defendants, because the jury may improperly conclude that a pattern of force used against Ty'rique lead to or resulted in the DCP Incident. Contrary to cases in which this Court has found such concerns of prejudice to be

---

[3] Death County, PA, *Episode Six: Exposing the Wound*, WONDERY, at 17:40-19:40 (May 26, 2025), https://wondery.com/shows/death-county-pa/episode/17768-exposing-the-wound/ (Lamont Jones, a family member of Ty'rique and Plaintiffs, reviewed the Report and Recommendation of this Court, and stated with regard to the BC Incident: "It's no different than George Floyd. He was handcuffed. The man couldn't go anywhere. There was no reason to apply that type of pressure. [ . . . ] I mean, what are we doing? Are we in the business of killing?").

speculative, Plaintiffs' assertions in this case to date demonstrate that their arguments in support of liability partially rely on such a theory of a pattern and practice of excessive force. *Cf. Mayo v. City of York, PA*, 2007 WL 1227726 (M.D. Pa. Apr. 25, 2007) (finding claims of potential prejudice to be entirely speculative for Fourth Amendment claims and a related *Monell* claim against the City); *Henderson v. Mahally*, 639 F. Supp. 3d 481 (M.D. Pa. 2022) (finding the plaintiff's claims of First Amendment retaliation and medical malpractice were "not difficult to understand or isolate").

Specifically, during summary judgment briefing, Plaintiffs attempted to introduce a UCLA report titled "Deaths in Dauphin County Prison". **ECF 218-221.** Plaintiffs stated that the study concluded that "Dauphin County Prison appears to have subjected Black prisoners to injuries and potentially lethal violence at higher levels than white prisoners; and the Dauphin County Coroner appears to have habitually misclassified in-custody deaths attributable to traumatic violence as "natural," especially in cases involving deceased Black men." **Id.** In support of admitting this report, Plaintiffs compared the BC and DCP Incidents with the death of two unrelated inmates, and explicitly argued that the report "be made part of the record that may be utilized at trial". **ECF 218-221, 244.**

In line with this theory of a pattern and practice of excessive force, Plaintiffs also asserted that Dauphin County Prison "has attracted national attention in recent

20

years due to such a large percentage of the number of deaths of persons in its custody" and "local news reports have published articles over the past five years exposing numerous examples of similar negligence and abuse". **ECF 245.** Plaintiffs are correct that from the outset, Ty'rique's death attracted significant attention from news sources and the public alike. His death has spurred protests at Dauphin County Prison, subjective media reporting from PennLive, and recently, a podcast titled "Death County, PA". *See supra* at note 4. Regardless of this attention by the public, the jury cannot be improperly lead to believe that a pattern and practice led to the DCP Incident, as such an argument is unduly prejudicial and has no relevance to the analysis of Plaintiffs' claims.

While Plaintiffs may claim that their attempted inclusion of the UCLA report and the references to the "national attention" and local news reports were solely related to the *Monell* claim, their previous filings belly such an assertion. Plaintiffs did not even reference the *Monell* claim in their various attempts to justify the admission of this report. **See ECF 218-221, 224-232, 243-245.** Nor can Plaintiffs argue that such assertions were only directed to PrimeCare, particularly given the the stated conclusions of the study. This liability argument is entirely inappropriate, irrelevant, and unduly prejudicial. While Defendants can seek to eliminate this prejudicial assertion through various Motions in Limine, the admission of evidence

relating to the BC Incident provides Plaintiffs with an integrated method to argue this theory. Such an argument unduly prejudices to the DCP Defendants.

Ultimately, the incidents are distinct, the proffered evidence is distinct, and the innate potential for prejudice to Defendants necessitates severance of these proceedings.

## VII.   <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that their Joint Motion be granted, and this court sever Plaintiffs' claims against Defendants Ingersoll, Weaver, Mendenhall, Bauer, and Grieb from Plaintiffs' claims against Defendants Lewis, Klahr, Biter, Singleton, Hoffman, and Danner.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____

Donald L. Carmelite, Esquire
PA I.D. No. 84730
Coryn D. Hubbert, Esquire
PA I.D. No. 334121
200 Corporate Center Drive, Suite 300
Camp Hill, PA 17011
Dated: <u>August 13, 2025</u>          Telephone: (717) 651-3504; (717) 651-3703
Facsimile: (717) 651-3707
Email: dlcarmelite@mdwcg.com;
cdhubbert@mdwcg.com
Attorneys for Defendants, Matthew Danner
and Robert Ingersoll

22

**LAVERY LAW**

BY:    /s/ *Frank J. Lavery, Jr.*

                     Frank J. Lavery, Jr., Esquire
                     PA I.D. No. 42370
                     Andrew Norfleet, Esquire
                     PA I.D. No. 83894
                     225 Market Street, Suite 304
                     Harrisburg, PA 17108

Dated: <u>August 13, 2025</u>       Telephone: (717) 233-6633
                     Facsimile: (717) 651-3707
                     Email: flavery@laverylaw.com;
                     anorfleet@laverylaw.com

                     Attorneys for Defendants Cameron Weaver,
                     Greg Mendenhall, Scott Grieb, Delta Bauer,
                     Scott Lewis, Andrew Klahr, Keith Biter,
                     Steve Singleton, and Keith Hoffman

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I hereby certify that this Brief in Support of Joint Motion to Sever Claims complies with the word limitation of 5,000 words. Excluding the cover page, tables, and certifications, but including its footnotes, this brief contains 4,975 words as calculated by Microsoft Word.

_____
Donald L. Carmelite, Esquire

Dated: August 13, 2025

1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date, I served a true and correct copy of the foregoing document on all counsel of record via the Court's Electronic Filing System.

Michele E. Neff, Admin. Asst. to
Donald L. Carmelite, Esquire
Coryn D. Hubbert, Esquire

Dated:  <u>August 13, 2025</u>

2