IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARMEN RILEY, et al.,** | : | |
| **Plaintiffs** | : | **CIVIL ACTION** |
| | : | **DOCKET No.: 4:20 - cv - 00325** |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **BRIAN CLARK, WARDEN, et al** | : | |
| **Defendants** | : | |

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO SEVER CLAIMS**

Plaintiffs Carmen Riley, Administratrix of the Estate of Ty'rique Riley, Carmen Riley, and Thomas Matthews-Kemrer, submit this Brief in support of their Response in Opposition to Defendants' Joint Motion to Sever Claims. Defendants' Motion should be denied for the reasons herein stated.

## I. Statement of Questions Presented

1. Should Defendants' motion for severance be denied where the four-factor test demonstrates that the issues are not significantly different, the evidence substantially overlaps, Plaintiffs would suffer severe prejudice from duplicative trials, and Defendants' claimed prejudice can be addressed through standard jury instructions?

*Suggested Answer: Yes*

2. Should this Court deny severance where Defendants pursued a coordinated litigation strategy for nearly six years—conducting joint depositions, filing unified motions, and treating both incidents as part of the same case—and now seek severance only after receiving adverse summary judgment rulings?

*Suggested Answer: Yes*

3. Should Plaintiffs' claims be tried together when they involve the same victim during a continuous eight-day period of pretrial detention, require overlapping evidence regarding the victim's mental state and medical condition, and are evaluated under identical standards?

*Suggested Answer: Yes*

*4.* Should severance be denied at this advanced procedural stage where, after six years of litigation, completed discovery, and this Court's 103-page analysis of all claims, severance would waste substantial judicial resources and force Plaintiffs to bear the burden of duplicative proceedings?

*Suggested Answer: Yes*

## II. Standard of Review

Federal Rule of Civil Procedure 20 governs permissive joinder of

claims and parties, while Rule 21 allows courts to sever claims to avoid prejudice or inefficiency. Federal Rule of Civil Procedure 21 permits severance of claims, but courts possess "virtually unfettered discretion in determining whether or not severance is appropriate." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003). The party seeking severance bears the burden of proving that severance is warranted. *Mayo v. City of York*, 2007 WL 1227726, at *2 (M.D. Pa. Apr. 25, 2007) ("The moving party must show that severance will serve the ends of justice and further the prompt and efficient disposition of litigation."); *see also Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 434-35 (E.D. Pa. 2010); *Griffith v. Allstate Ins. Co.*, 90 F. Supp. 3d 344, 346 (M.D. Pa. 2014) ("The moving party bears the burden of showing that bifurcation is appropriate given the specific facts and issues present in a particular case.").

In determining whether to sever claims, courts consider: "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted." *Kimmel*, 747 F. Supp. 2d at 434-35; accord *Griffith*, 90 F. Supp. 3d at 346; *see also*

*Henderson v. Mahally*, 639 F. Supp. 3d 481, 486-87 (M.D. Pa. 2022) (applying similar three-factor test focusing on whether issues are significantly different, judicial economy, and prejudice to parties).

Under any formulation, these factors must be evaluated "in light of the stage of the proceedings." *Henderson*, 639 F. Supp. 3d at 487. Where a case has been "extensively litigated and winnowed" with "trial scheduled," the court found that severance would "certainly not promote judicial economy" and would impose undue prejudice on the non-moving party. *Id.*

## III. Argument

Defendants' motion represents a transparent attempt to delay trial after nearly six years of unified litigation and adverse summary judgment rulings. Their request fails both as a matter of law under Rule 20's joinder requirements and under the discretionary factors governing severance.

### A. The Incidents Satisfy Rule 20's Joinder Requirements

#### 1. The "Logical Relationship" Standard Is Met

*Russell v. Chesapeake Appalachia* established that "'[t]ransaction' is a word of flexible meaning, and may comprehend a series of many

occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." 305 F.R.D. 78 (2015) at 81. Courts must determine whether claims involve "(1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." *Id.*

Defendants argue the incidents "do not share any common defendants, did not occur at the same location, occurred more than a week apart from each other" and involve "entirely distinct injuries." (Defs.' Br. at 10). This myopic focus on surface differences ignores the logical relationship *Russell* requires. The incidents involve the same victim during continuous pretrial detention in the Dauphin County correctional system, evaluated under identical Fourth Amendment excessive force standards, with overlapping evidence regarding Riley's mental state, medical condition, and institutional response to his deteriorating condition.

Defendants cite *DirecTV v. Chorba*, where defendants "each purchased a device designed for the unauthorized interception" with "no concert of action or conspiracy alleged." 2003 WL 24178469, *3 (M.D. Pa. Oct. 16, 2003). They also cite *Norwood Co. v. RLI Insurance*, involving "two construction projects [with] different contracts, different defects, different

sureties." 2002 WL 523946, *4 (E.D. Pa. Apr. 4, 2002). These cases involve truly independent actors and unrelated transactions. Here, both incidents occurred within the same correctional system during Riley's continuous detention, requiring overlapping evidence about his arrest, medical evaluation, and the facility's response to his condition.

### 2. Multiple Incidents During Incarceration Are Routinely Tried Together

Defendants' assertion that temporal separation mandates severance contradicts established practice in prisoner litigation nationwide. Courts routinely try multiple incidents in a single proceeding when they involve the same plaintiff during the same period of incarceration. Requiring separate trials for each incident would flood federal dockets and impose substantial burdens on incarcerated plaintiffs who already face significant barriers to court access. *Henderson v. Mahally*, 639 F.Supp.3d 481 (2022); *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009); *Kedra v. City of Philadelphia*, 454 F. Supp. 652 (E.D. Pa. 1978); *Fennell v. Wetzel*, No. 1:17-cv-01713, 2019 WL 5552320, at 3 (M.D. Pa. Oct. 28, 2019) ("the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties").

## B. The Four-Factor Test Decisively Weighs Against Severance

### 1. Factor One: The Issues Are Not Significantly Different

Under the first factor, courts examine "whether the issues sought to be tried separately are significantly different from one another." *Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 434-35 (E.D. Pa. 2010). Defendants emphasize that the incidents involve different defendants and locations within the facility. (Defs.' Br. at 11-12). However, both incidents require application of the same *Jacobs v. Cumberland County* excessive force factors that Defendants themselves highlight. While Defendants argue these factors will yield "significantly different" analyses (Defs.' Br. at 11), every excessive force case requires individualized application of *Jacobs* factors. The core legal questions remain the same: whether officers used objectively unreasonable force under the Fourth Amendment and whether observing officers failed to intervene. The constitutional standards, burden of proof, and analytical framework are identical.

### 2. Factor Two: The Evidence Overlaps

The second factor examines whether "the separable issues require the testimony of different witnesses and different documentary proof."

Kimmel, 747 F. Supp. 2d at 434-35. Defendants argue that evidence is distinct because no defendant was present at both incidents. (Defs.' Br. at 14). This narrow view ignores the substantial evidentiary overlap. For example, evidence of Dauphin County's use of force policies, and training procedures apply to both incidents. Additionally, expert testimony regarding appropriate force and correctional practices will apply common standards to both incidents.

Defendants claim, "a vast majority, if not all, of the evidence relevant to one incident is wholly irrelevant to the other." (Defs.' Br. at 15). This is incorrect. Evidence of Riley's arrest, mental state, and behavioral patterns will need to be presented in both incidents. Evidence of how personnel are trained to treat a detainee will also need to be presented in both incidents. While there will be specific things about each incident that differs, courts routinely try multiple incidents in a single proceeding. *See Henderson v. Mahally*, 639 F.Supp.3d 481 (2022); *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009); *Kedra v. City of Philadelphia*, 454 F. Supp. 652 (E.D. Pa. 1978); *Fennell v. Wetzel*, No. 1:17-cv-01713, 2019 WL 5552320, at 3 (M.D. Pa. Oct. 28, 2019) ("the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties").

**3. Factor Three: Plaintiffs Would Be Severely Prejudiced by Severance**

The third factor considers "whether the party opposing the severance will be prejudiced if it is granted." *Kimmel*, 747 F. Supp. 2d at 434-35. Defendants argue Plaintiffs will suffer no prejudice because "fact discovery in this matter is closed and the parties have gathered evidence specific to each incident." (Defs.' Br. at 16). This ignores the substantial burden of conducting two trials. After six years of litigation, Plaintiffs would incur dramatically increased costs for duplicative expert testimony and witness preparation. They would be forced to present duplicate evidence about Riley's arrest and detention in multiple proceedings. Riley's family would endure the trauma of relitigating their son's death multiple times.

*Graudins* rejected severance even though different defendants were involved in different claims, finding that forcing the plaintiff to bear the costs of two trials and delaying resolution of claims outweighed any prejudice to defendants. 921 F. Supp. 2d 456, 468 (2013). *Graudins* involved a female employee bringing sexual harassment claims against multiple defendants - her employer (Retro Fitness), supervisors (Dan Carr, Kraft), and two coworkers (Jim Kanagie and Paul Carr). *Id.* at 456. Paul Carr had sexually

assaulted her, while Kanagie had allegedly harassed her separately. *Id.* In discussing whether to sever Paul Carr's claims from the others, the Court states:

> "While the moving Defendants may be relieved of some burdens and risks entailed in jointly defending the case with Paul Carr, Ms. Graudins would have to bear the costs of two trials and may see the resolution of her claims delayed." *Id.* at 468.

These concerns apply with even greater force after six years of litigation.

**4. Factor Four: Defendants Cannot Demonstrate Prejudice from Joint Trial**

The fourth factor examines "whether the party requesting the severance will be prejudiced if it is not granted." *Kimmel*, 747 F. Supp. 2d at 434-35. Defendants bear the burden of showing specific, substantial prejudice that cannot be cured by less drastic measures.

Defendants argue that evidence from each incident will prejudice defendants involved in the other, claiming the DCP incident evidence will "appeal to the jury's sympathies" and "arouse its sense of horror" regarding the BC Defendants. (Defs.' Br. at 18, citing *Carter v. Hewitt*, 617 F.2d 961 (3d Cir. 1980)). However, *Carter* addresses Rule 403 evidentiary balancing, not severance. The emotional impact of evidence does not mandate separate trials when jury instructions can address any potential confusion.

Defendants also cite inflammatory media coverage, including a family member's comparison to George Floyd. (Defs.' Br. at 19 n.3). Pre-trial publicity, however inappropriate, is addressed through voir dire and jury instructions, not severance. Courts do not sever cases based on media attention.

In *Graudins*, defendants similarly argued that trying claims together would create spillover prejudice. 921 F. Supp. 2d at 468. The court rejected this, noting that "juries are presumed capable of following their instructions, and joint trials are upheld despite a possibility of prejudice" with "no reason to set a higher test in civil cases." *Id*. *Mayo v. City of York* specifically held that "jury instructions could address any potential confusion" rather than requiring severance. 2007 WL 1227726, at *2 (M.D. Pa. Apr. 25, 2007).

**C. The Advanced Procedural Stage Precludes Severance**

Beyond the four factors, the procedural posture independently requires denial. *Henderson v. Mahally* emphasized that severance after proceedings are "extensively litigated and winnowed" with "trial scheduled" would "certainly not promote judicial economy." 639 F. Supp. 3d 481, 487 (M.D. Pa. 2022).

Defendants argue their motion is "timely" because discovery is complete. (Defs.' Br. at 16). This mischaracterizes the procedural posture. After nearly six years of litigation versus Henderson's three years, completed discovery with extensive depositions and expert reports, and this Court's 103-page memorandum analyzing all claims, severance would waste the substantial judicial resources already invested.

Given that this case has been actively litigated for nearly six years, with extensive discovery, motion practice, and a 103-page memorandum resolving all claims, the procedural posture weighs heavily against severance. As the Court itself recognized, “Now that the Court has resolved the last issues regarding the parties’ motions for summary judgment, the Court will endeavor to swiftly move this case to settlement, or to trial.” (DOC. 286 at 16). Severance at this juncture would not only squander the substantial judicial resources already invested but also derail the forward momentum the Court has expressly committed to. Denial is therefore necessary to preserve judicial economy and respect the integrity of these proceedings

**D. Defendants' Coordinated Litigation Strategy Bars Their Current Position**

*Kimmel* establishes that parties who have participated in joint proceedings cannot later claim prejudice from their continuation. Defendants who have participated in "joint discovery, filed joint motions, and otherwise treated the case as unified" cannot claim prejudice from continued joint proceedings. 747 F. Supp. 2d at 434.

Throughout this litigation, Defendants conducted unified depositions with BC and DCP defendants participating jointly, jointly relied on discovery such as the Coroner's report to support their defense, and submitted joint summary judgment motions treating both incidents as part of the same case. Having litigated these claims jointly for six years without objection, conducting unified discovery and filing coordinated motions, Defendants cannot now claim prejudice from continued joint proceedings to increase cost and delay to Plaintiffs.

**IV. Conclusion**

Defendants have failed to meet their burden under either Rule 20's joinder requirements or the four-factor severance test. The issues are not significantly different, the evidence overlaps substantially, Plaintiffs would suffer severe prejudice from severance, and Defendants' claimed prejudice can be addressed through standard trial management procedures. After six years of unified litigation culminating in this Court's detailed analysis,

severance would waste judicial resources and prejudice Plaintiffs while rewarding Defendants' transparent attempt to delay trial.

**WHEREFORE**, Plaintiffs respectfully request that Defendants' Joint Motion to Sever Claims be **DENIED**.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC.**

/s/ Zainab K. Shields
Zainab K. Shields, PA ID No. 321181
Kevin V. Mincey, PA ID No. 90201
Riley H. Ross III, PA ID No. 204676
Jennifer A. Nearn, PA ID No. 307517
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, Pa 19103
Telephone: (215) 587-0006
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Zainab K. Shields, Esquire, hereby certify that on this 27th day of August 2025, a copy of the foregoing Brief in Opposition was filed via ECF and is available for viewing by all parties.

/s/ Zainab K. Shields
Zainab K. Shields, Esquire