IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, ADMINISTRATOR OF THE ESTATE FOR TY'RIQUE RILEY and CARMEN RILEY AND THOMAS MATTHEWS KEMRER, Individually, as Parents and natural guardians of decedent Ty'rique Riley and as his sole survivors, | : : : : : : : | No.: 4:20-CV-00325-MWB-WIA CIVIL ACTION – LAW |
| Plaintiffs | : : | JUDGE MATTHEW W. BRANN M.J. WILLIAM I. ARBUCKLE |
| v. | : : | Electronically Filed |
| BRIAN CLARK, Warden, et al., | : : | |
| Defendants | : : | JURY TRIAL DEMANDED |

**PLAINTIFFS' OPPOSITION TO PRIMECARE MEDICAL INC.'S
MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO SEVER**

I. INTRODUCTION
.......................................................................................................................1

II. STATEMENT OF FACTS
.......................................................................................................................1

III. ARGUMENT
.......................................................................................................................2

A. THIS COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION
OVER PLAINTIFFS' CLAIMS AGAINST PRIMECARE ...............................2

1. PrimeCare Fundamentally Mischaracterizes the Current Status of Federal
Claims ..............................................................................................................2

2. The Court Has Discretion to Retain Supplemental Jurisdiction When
Considerations of Judicial Economy, Convenience, and Fairness Support
Retention ..........................................................................................................3

3.  Extraordinary Judicial Resources Have Been Invested in This Six-Year
    Litigation ...................................................................................................4
4.  The Claims Against PrimeCare Arise From the Same Nucleus of
    Operative Facts as the Ongoing Federal Claims ......................................6
5.  PrimeCare's Cited Authority Is Inapplicable to Late-Stage Litigation ..........7
6.  Dismissal Would Cause Substantial Prejudice and Waste
    Judicial Resources …...................................................................................8

B. IN THE ALTERNATIVE, THE COURT SHOULD DENY PRIMECARE'S
MOTION TO SEVER .........................................................................................9

1.  Legal Standard for Severance Under FRCP 21 ............................................9
2.  The Severance Factors Weigh Against PrimeCare's Motion ......................10

    i. The Issues Share Substantial Factual Overlap Despite
       Different Legal Theories ........................................................................10
    ii. Substantial Overlap in Witnesses and Documentary
       Evidence Despite PrimeCare's Claims...................................................11
    iii. Severance Would Cause Substantial Prejudice to Plaintiffs .................12
    iv. PrimeCare's Claimed Prejudice Is Speculative and
       Manageable Through Standard Case Management .................................13

3.  Judicial Economy Strongly Favors Joint Trial ............................................14
4.  PrimeCare's Motion Contradicts Established Principles
    of Comprehensive Adjudication .................................................................15

IV. CONCLUSION ..............................................................................................16

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Anserphone, Inc. v. Bell Atlantic Corp.*,
955 F. Supp. 418 (E.D. Pa. 1996) ............................................................. 8

*Borough of West Mifflin v. Lancaster*,
45 F.3d 780 (3d Cir. 1995) ........................................................................ 4

*Burnsworth v. PC Laboratory*,
364 F. App'x 772 (3d Cir. 2010) ............................................................ 5,6

*Corrigan v. Methodist Hosp.*,
160 F.R.D. 55 (1995) ...............................................................................15

*Dirauf v. Berger*,
506 F. Supp. 3d 254 (M.D. Pa. 2020) ....................................................... 8

*Edmonds v. Southeastern Transp. Auth.*,
2023 WL 3513307 (E.D. Pa. May 16, 2023) ......................................... 10

*Est. of Thomas v. Fayette Cnty.*,
194 F. Supp. 3d 353 (W.D. Pa. 2016) ....................................................... 6

*Fei Hang Chen v. Jing Fong Restaurant, Inc., et al*,
582 F. Supp. 2d 602 (S.D.N.Y. 2008) ............................................... 12,13

*Gallo v. Washington County*,
No. 08-cv-504, 2009 WL 27450 (W.D. Pa. Feb. 4, 2009) ....................... 8

*Grigsby v. Kane*,
250 F. Supp. 2d 453 (M.D. Pa. 2003) ....................................................... 9

*Hedges v. Musco*,
204 F.3d 109 (3d Cir. 2000) .................................................................. 4,6

*Henderson v. Mahally*,
639 F. Supp. 3d 481 (M.D. Pa. 2022) .......................................... 4,9,13,14

*Hetzel v. Lamas*,
630 F. Supp. 2d 563 (E.D. Pa. 2009) ..................................................... 15

*Kline v. U.S.*,
587 F. Supp. 1386 (M.D. Pa. 1984) .......................................................... 4

*Mendoza v. U.S.*,
481 F. Supp. 2d 643 (W.D. Tex. 2006) ................................................... 14

*Official Comm. of Unsecured Creditors v. Shapiro*,
190 F.R.D. 352 (E.D. Pa. 2000) .............................................................. 10

*Russell v. Chesapeake Appalachia LLC*,
305 F.R.D. 78 (M.D. Pa. 2015) ...................................................... 10,13,15

*SigmaPharm, Inc. v. Mutual Pharmaceutical Co., Inc.*,
772 F. Supp. 2d 660 (E.D. Pa. 2011) ....................................................... 5

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966) ................................................................................. 7

## STATUTES

28 U.S.C. § 1367(c)(3) .........................................................................3,4

42 U.S.C. § 1983 ...................................................................................... 3

## RULES

Fed. R. Civ. P. 21 ..................................................................................... 9

## TREATISES

6 Annotated Patent Digest § 39:89.10 ................................................. 9,16

13D Fed. Prac. & Proc. Juris. § 3567.3 (3d ed.) ..................................... 9

Plaintiffs Carmen Riley, Administrator of the Estate of Ty'rique Riley, and Carmen Riley and Thomas Matthews-Kemrer, individually, as parents and natural guardians of decedent Ty'rique Riley and as his sole survivors, respectfully submits this Opposition to Defendant PrimeCare Medical, Inc.'s ("PrimeCare") Motion to Dismiss or in the alternative Motion to Sever.

## I.    INTRODUCTION

Defendant PrimeCare Medical, Inc. ("PrimeCare") seeks to abandon this litigation after nearly six years of extensive proceedings, claiming that this Court should either dismiss its remaining state law claims without prejudice or sever them from the co-defendants' claims. Both requests should be denied.

PrimeCare's motion appears to be a strategic attempt to escape this federal forum after substantial judicial investment and facing a viable Survival Act claim that survived the Court's July 18, 2025 ruling on reconsideration. These claims arise from the same nucleus of operative facts as the multiple viable federal claims that remain against County Defendants. Principles of judicial economy, fairness, and convenience strongly support retaining supplemental jurisdiction and trying all related claims together in a single proceeding.

## II.    STATEMENT OF FACTS

This case has proceeded for nearly six years since it was initiated in state court in August 2019. The case was removed to federal court in February 2020,

with Plaintiffs filing their Second Amended Complaint in April 2021. Discovery

has been completed, expert reports filed, and extensive motion practice concluded.

In March 2025, this Court issued a comprehensive 103-page Memorandum

Opinion addressing all pending summary judgment motions. (ECF No. 272). The

Court initially granted PrimeCare's motion for summary judgment in full, rejecting

the Magistrate Judge's recommendation to deny the motion. However, on July 18,

2025, this Court granted Plaintiffs' Motion for Reconsideration in part, specifically

permitting Plaintiffs to pursue a Survival Act claim for injuries suffered by

Ty'rique which were unrelated to the use of force by prison guards. (ECF No. 287).

Critically, substantial federal claims remain viable against multiple County

Defendants following the Court's March 2025 ruling. The Court's final order states:

> "In sum, there remain excessive force claims against Ingersoll, Weaver,
> Mendenhall, and Lewis and related failure to intervene claims against Weaver,
> Mendenhall, Bauer, and Grieb for the first excessive force incident and Klahr, Lewis,
> Biter, Singleton, Hoffman, and Danner for the second incident. Assault, battery,
> wrongful death, and survivor act claims also survive based on this same conduct."

(ECF No. 272, p. 103).

## III.    ARGUMENT

### A.    THIS COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST PRIMECARE

#### 1.    PrimeCare Fundamentally Mischaracterizes the Current Status of Federal Claims

PrimeCare's primary argument rests on the demonstrably false premise that all federal claims over which this Court has original jurisdiction have been dismissed. This assertion directly contradicts this Court's own March 2025 ruling and incorrectly claims that "there is no federal claim being asserted against PrimeCare" and that all federal jurisdiction has been eliminated. The Court explicitly found that multiple viable federal claims under 42 U.S.C. § 1983 remain against numerous County Defendants, including excessive force claims against Ingersoll, Weaver, Mendenhall, and Lewis, and failure to intervene claims against multiple other defendants.  These ongoing federal claims provide a solid foundation for supplemental jurisdiction over the related state law claims against PrimeCare arising from the same operative facts.

PrimeCare's reliance on 28 U.S.C. § 1367(c)(3) therefore fails as a matter of law. That subsection permits dismissal of supplemental state claims only when "the district court has dismissed all claims over which it has original jurisdiction." Here, this Court's own ruling demonstrates that numerous federal claims remain viable and will proceed to trial, meaning § 1367(c)(3) simply does not apply.

**2.  The Court Has Discretion to Retain Supplemental Jurisdiction When Considerations of Judicial Economy, Convenience, and Fairness Support Retention**

Even if § 1367(c)(3) applied, the Third Circuit has consistently held that "the district court must decline to decide the pendent state claims unless considerations

of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). The statutory factors under § 1367(c) are discretionary considerations, not mandatory grounds for dismissal.

Federal courts in the Third Circuit have retained supplemental jurisdiction over state law medical malpractice claims against prison medical providers when the claims arise from the same incident as federal claims and considerations of judicial economy, convenience, and fairness justify retention. *See Henderson v. Mahally*, 639 F. Supp. 3d 481 (M.D. Pa. 2022) (retaining supplemental jurisdiction over inmate's state law medical malpractice claim despite dismissing federal claims where dismissal would not promote judicial economy and would prejudice the inmate); *Kline v. U.S.*, 587 F. Supp. 1386 (M.D. Pa. 1984) (exercising pendent party jurisdiction over medical malpractice claims against physician because claims shared common factual nucleus with federal claims).

### 3. **Extraordinary Judicial Resources Have Been Invested in This Six-Year Litigation**

This case represents an extraordinary investment of federal judicial resources for over nearly six years. The case was initiated in state court in August 2019 and removed to federal court in February 2020. Multiple amended pleadings were filed through April 2021. Extensive discovery was completed including

4

depositions, document production, and expert reports. Four separate summary judgment motions were filed by defendant groups requiring extensive briefing and analysis. The Magistrate Judge prepared a comprehensive 151-page Report and Recommendation. This Court conducted detailed de novo review and issued a comprehensive 103-page Memorandum Opinion addressing all pending motions. Additional motion practice for reconsideration required further substantial judicial resources.

After six years of proceedings, completed discovery, and the Court's comprehensive analysis of this complex case, the factors supporting retention of jurisdiction are overwhelming. The Court has developed substantial expertise in the factual and legal issues of this case that would be wasted if the matter were dismissed to state court. Courts specifically distinguish between "early dismissal versus late-stage litigation," noting that "courts generally decline supplemental jurisdiction when federal claims are dismissed early in the litigation" but that retention is appropriate where substantial judicial resources have been invested. *Compare Burnsworth v. PC Laboratory*, 364 F.App'x 722 (3d Cir. 2010) (dismissing state claims in early stages where "no answer had been filed, and trial had not been scheduled") *with SigmaPharm, Inc. v. Mutual Pharmaceutical Co., Inc.*, 772 F.Supp.2d 660 (E.D. Pa. 2011) (retaining jurisdiction where "extraordinary circumstances or significant litigation may justify retention").

While "time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction," *Estate of Thomas v. Fayette County.*, 194 F. Supp. 3d 353, 385 (W.D. Pa. 2016), this principle applies to early-stage dismissals, not to cases where substantial judicial resources have been invested in completed discovery and comprehensive motion practice. Courts have noted that "dismissal of state claims late in the action may not be fair, particularly when substantial resources have already been invested." *See Burnsworth*, 364 F. Appendix 772 (contrasting early dismissal with late-stage retention). The combination of substantial judicial investment, completed discovery, and the relationship to ongoing federal claims creates the "affirmative justification" required under *Hedges*.

### 4. The Claims Against PrimeCare Arise From the Same Nucleus of Operative Facts as the Ongoing Federal Claims

The state law Survival Act claim against PrimeCare arises from the exact same incident and timeperiod as the federal excessive force claims against the County Defendants that remain viable. All claims center on Ty'rique Riley's detention, treatment, and deterioration at Dauphin County Prison from June 18 through July 1, 2019.

While this Court found in July 2025 that "any injury caused by the tortuously excessive force deployed by prison guards was not proximately caused by preceding medical negligence," this legal determination regarding proximate

causation does not eliminate the common nucleus of operative facts.  The Court's ruling recognizes that PrimeCare's alleged medical negligence and the excessive force incidents both contributed to Ty'rique's overall condition and suffering during the same detention period, even if the legal causation standards differ for death versus other injuries.  The Court's allowance of the Survival Act claim specifically recognizes that Plaintiffs may pursue damages for injuries suffered by Ty'rique that were unrelated to the use of force, which necessarily involves examining the same factual record regarding his detention, condition, and treatment that is central to the federal excessive force claims.

The constitutional framework established in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966), permits supplemental jurisdiction over state-law claims related to federal claims when they share a common nucleus of operative fact, even if they involve different legal theories or damages. The fact that this Court found the medical negligence was not the proximate cause of death does not eliminate the common factual foundation regarding Ty'rique's condition, treatment, and deterioration during the same detention period that gave rise to the excessive force incidents that remain viable for trial.  As held in *Gibbs*, the relationship between all claims comprises one constitutional case.  *Id.*

### 5. PrimeCare's Cited Authority Is Inapplicable to Late-Stage Litigation

PrimeCare's reliance on *Gallo v. Washington County*, No. 08-cv-504, 2009 WL 27450 (W.D. Pa. Feb. 4, 2009), and similar authority is fundamentally misplaced because these cases involved dismissal of state claims at early stages of litigation before substantial judicial resources were invested. The *Gallo* court specifically noted that it was declining jurisdiction at an early stage where "there being no 'exceptional' reason why the Court should retain this case involving only a state claim." *Id.* at *10. Here, after six years of proceedings, completed discovery, and extensive motion practice, the circumstances are precisely the type of "exceptional" circumstances that justify retention of jurisdiction.

Moreover, unlike *Gallo*, this case does not involve "only a state claim." Multiple federal claims remain viable against County Defendants arising from the same operative facts as PrimeCare's state law claim. *Compare Dirauf v. Berger*, 506 F. Supp. 3d 254 (M.D. Pa. 2020) (declining jurisdiction in early stages where "no answer had been filed, and trial had not been scheduled") *with Anserphone, Inc. v. Bell Atlantic Corp.*, 955 F. Supp. 418 (E.D. Pa. 1996) (retaining jurisdiction where "significant litigation had already occurred").

### 6.  Dismissal Would Cause Substantial Prejudice and Waste Judicial Resources

Forcing Plaintiffs to pursue their state law claims in a separate state court forum would result in duplicative litigation costs and attorney fees, risk of inconsistent verdicts on the same operative facts concerning Ty'rique's condition

and treatment during the relevant time period, potential statute of limitations issues

if claims are dismissed without prejudice after six years of federal proceedings,

waste of extraordinary federal judicial investment already made in understanding

this complex case, and burden on the state court system to relitigate identical

factual issues that have been thoroughly developed in federal court.  Courts have

recognized that "exceptions permitting retention include situations where the

statute of limitations bars refiling in state court." *See* 13D Fed. Practice &

Procedural Juris. § 3567.3 (3d ed.).

### B.   IN THE ALTERNATIVE, THE COURT SHOULD DENY PRIMECARE'S MOTION TO SEVER

#### 1.   Legal Standard for Severance Under FRCP 21

Federal Rule of Civil Procedure 21 permits severance of claims, but courts

possess "virtually unfettered discretion in determining whether or not severance is

appropriate." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003).

However, "severance is appropriate when the claims are 'discrete and separate,'

each capable of resolution without prejudice or effect on the other." *Henderson*,

639 F. Supp. 3d at 486.

Federal courts have "demonstrated a strong preference for denying

severance when claims arise from the same incident or operative facts, particularly

when judicial economy, common witnesses, and overlapping evidence are at

stake." *See* 6 Annotated Patent Digest § 39:89.10 (courts emphasizing

"comprehensive adjudication in a single forum" to "safeguard fairness, reduce prejudice, and conserve judicial resources"); *see e.g. Russell v. Chesapeake Appalachia LLC*, 305 F.R.D. 78, 82 (M.D. Pa. 2015) (holding that it is the court's preference to keep claims together where plaintiff has pled facts to suggest that there are "many of the same factual issues" or "at least offshoots of the same basic controversy between the parties.").

## 2.  The Severance Factors Weigh Against PrimeCare's Motion

Courts consider four key factors in Rule 21 analysis: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require testimony of different witnesses and different documentary proof; (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted." *Edmonds v. Southeastern Transp. Auth.*, 2023 WL 3513307, at *4 (E.D. Pa. May 16, 2023) (citing *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000)).

### i.    The Issues Share Substantial Factual Overlap Despite Different Legal Theories

While PrimeCare argues the legal theories differ, both the federal excessive force claims and state Survival Act claims center on the same core factual questions regarding what happened to Ty'rique Riley during his detention.  Both sets of claims require examination of Ty'rique's mental and physical condition

10

during this period, the timeline of his deterioration, the actions taken or not taken by various defendants, and the causation of various injuries he suffered. The fact that this Court limited PrimeCare's liability to non-death damages does not eliminate the substantial factual overlap regarding Ty'rique's condition and the circumstances of his detention.

### ii. Substantial Overlap in Witnesses and Documentary Evidence Despite PrimeCare's Claims

Contrary to PrimeCare's assertions that witnesses and evidence will be entirely different, the evidence substantially overlaps between the federal and state claims. The factual overlap in this case extends far beyond mere temporal proximity to include shared medical records, overlapping expert testimony on Ty'rique condition, and interconnected evidence regarding his deterioration during the same detention period.

The medical records documenting PrimeCare's treatment of Ty'rique throughout his detention will be relevant to establishing his baseline condition and deterioration, which is central to both the medical negligence claims and the federal excessive force claims. Prison incident reports documenting the force incidents that remain viable for trial will show the timing and circumstances of Ty'rique's condition during the same period when PrimeCare was providing medical treatment. Video surveillance from the relevant time periods will be probative for both sets of claims as it shows Ty'rique's condition and behavior.

Expert testimony regarding Ty'rique's mental health condition and the causation of his various injuries necessarily addresses both the medical care he received and the force incidents he experienced. Testimony from correctional officers who observed Ty'rique's condition and interacted with medical staff during the relevant period will provide relevant evidence for all claims.

Many of the same fact witnesses will testify about Ty'rique's condition, behavior, and treatment during the time he was in custody, regardless of which legal theory is being pursued. The Court's own analysis of the excessive force claims relied heavily on evidence of Ty'rique's mental health condition and behavior, which directly overlaps with the medical evidence relevant to PrimeCare's care.

### iii.    Severance Would Cause Substantial Prejudice to Plaintiffs

Plaintiffs would face substantial prejudice from severance in several ways. First, they would incur dramatically increased litigation costs from maintaining two separate lawsuits with separate discovery, motion practice, and trial preparation after already investing substantial resources in six years of federal proceedings. *See Fei Hang Chen v. Jing Fong Restaurant, Inc., et al*, 582 F.Supp.2d 602, 603-604 (S.D. NY 2008) (court retained jurisdiction over state law claims due to its lengthy experience with the parties and the claims, as well as the burden that relitigating identical issues in state court would impose on judicial

economy); *Henderson*, 639 F. Supp.3d at 486 (Middle District of Pennsylvania retained supplemental jurisdiction over an inmate's state law medical malpractice claims against a prison medical provider, explicitly finding that dismissal would not promote judicial economy and would prejudice the inmate where significant litigation had already occurred); *Bachman v. Liu*, 2022 WL 22887722, *3 (M.D. Pa. July 20, 2022) (court denied severance because the case had significantly progressed, with discovery completed, motions for summary judgment filed, and trial preparation underway; severance at this stage would have required duplicative discovery and delayed resolution, causing prejudice to plaintiffs). Second, there would be a significant risk of inconsistent factual findings about the same events, particularly regarding Ty'rique's medical and mental health condition during the relevant time period and the causation of his various injuries. *See Fei Hang Chen*, 582 F.Supp.2d at 604; *Russell*, 305 F.R.D. at 82 (Middle District of Pennsylvania denied severance where overlapping factual issues existed, holding that courts prefer to keep claims together where plaintiff has pled facts to suggest that there are many of the sane factual issues, because severance would create unfair prejudice through duplicative litigation costs and the burden of re-proving substantially identical facts in separate proceedings); *Scantling v. Vaughn*, 2004 WL 306126 (E.D. Pa. Feb. 12, 2004) (court refused to sever and/or transfer claims against different groups of prison officials, reasoning that it would force plaintiff to

litigate overlapping facts in separate cases, potentially in different forums, the

interests of justice and convenience would not be best served).  Third, Plaintiffs

would bear the burden of re-proving substantially the same underlying facts in two

different forums, requiring duplicative expert testimony and witness preparation.

*See Mendoza v. U.S.*, 481 F.Supp.2d 643, 649 (W.D. Tex. 2006) (emphasizing that

retaining jurisdiction is appropriate when significant judicial resources have been

committed, i.e. court familiarity with the merits of the case and extensive motion

practice including challenges to the adequacy of expert reports, remanding the case

to state court would result in duplication of efforts and undermine judicial

efficiency); *Henderson*, 639 F. Supp.3d at 486 (court emphasized that forcing

plaintiff to relitigate substantially similar factual issues in state court would impose

unfair burdens and waste judicial resources).  Fourth, Plaintiffs would face

potential strategic disadvantage if one case proceeds to verdict before the other, as

the outcome in the first case could influence settlement dynamics or trial strategy

in the second case.

> ### iv.    PrimeCare's Claimed Prejudice Is Speculative and Manageable Through Standard Case Management

PrimeCare's concern about "inflaming the passions of the jurors" is

speculative and insufficient to justify the drastic remedy of severance. Courts

emphasize that "slight or speculative prejudice is insufficient, and that courts prefer

joint trials where the operative facts and evidence substantially overlap, promoting

judicial efficiency and avoiding the expense and complexity of multiple

trials." *See  Hetzel v. Lamas*, 630 F.Supp.2d 563, 574 (E.D. Pa. 2009) (holding that

when a trial court is deciding whether to grant a motion for severance, "[a]

defendant must show a real prejudice, not just mere speculation."); *Russell*, 305

F.R.D. at 82 (court ultimately found that jurors could distinguish between claims

and that speculative concerns about juror confusion or buas did not justify

severance).

Any potential prejudice can be addressed through proper jury instructions,

bifurcation of damages if necessary, limiting instructions regarding the different

legal standards applicable to different defendants, and other case management tools

that are routinely employed in complex litigation. These measures are the preferred

approach rather than the drastic remedy of severance that would waste substantial

judicial resources and prejudice Plaintiffs.  *See e.g. Corrigan v. Methodist Hosp.*,

160 F.R.D. 55, 57 (1995) (court rejected severance based on concerns about

prejudice, emphasizing that juries are presumed capable of following instructions

to mitigate potential bias).

### 3.  Judicial Economy Strongly Favors Joint Trial

Courts have emphasized that "judicial economy and the ability to address

evidentiary concerns through jury instructions weighed against

severance." *Corrigan*, 160 F.R.D. at 57. Here, a joint trial would avoid duplicative

presentation of evidence about the same timeperiod and events that this Court has already invested substantial resources in understanding. It would prevent inconsistent jury findings about Ty'rique's condition and the causation of his various injuries during the relevant detention period. A unified trial would efficiently resolve all remaining claims arising from this tragic incident in one proceeding and conserve both federal and state judicial resources.

After this Court has invested extraordinary time and effort in understanding the complex factual matrix of this case through extensive motion practice and de novo review, severing PrimeCare would require either this Court or a state court to re-examine many of the same factual issues that have been thoroughly litigated and resolved in the federal proceedings.

### 4. PrimeCare's Motion Contradicts Established Principles of Comprehensive Adjudication

Federal courts have "demonstrated a strong preference for denying severance when claims arise from the same incident or operative facts." Courts recognize that "comprehensive adjudication in a single forum" serves to "safeguard fairness, reduce prejudice, and conserve judicial resources." *See* 6 Annotated Patent Digest § 39:89.10. Allowing PrimeCare to escape unified proceedings after six years of litigation would undermine these fundamental principles of efficient case management and would effectively reward forum shopping after adverse rulings.

## IV.    CONCLUSION

PrimeCare's motion fundamentally mischaracterizes the current posture of this litigation and seeks to escape federal jurisdiction after years of litigation and substantial judicial investment. The Court should exercise its discretion to retain supplemental jurisdiction over PrimeCare's related state law claims, which arise from the same operative facts as the multiple viable federal claims against co-defendants that will proceed to trial.

Alternatively, if the Court exercises its discretion to retain jurisdiction, it should deny PrimeCare's motion to sever, as all factors strongly favor a unified trial of the remaining claims arising from Ty'rique Riley's detention and death. The substantial judicial resources already invested, the overlapping evidence and witnesses, and the potential prejudice to Plaintiffs from duplicative proceedings all weigh decisively against severance.

For the foregoing reasons, PrimeCare's Motion to Dismiss or in the Alternative Motion to Sever should be denied in its entirety.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC**

/s/ Kevin V. Mincey
Kevin V. Mincey, Esquire
PA ID No. 90201
Jennifer A. Nearn, Esquire

17

PA ID No. 307517
One Liberty Place

Dated: September 3, 2025                         1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 587-0006
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| CARMEN RILEY, ADMINISTRATOR OF | : | |
| THE ESTATE FOR TY'RIQUE RILEY | : | |
| and CARMEN RILEY AND THOMAS | : | |
| MATTHEWS KEMRER, Individually, as | : | No.: 4:20-CV-00325-MWB-WIA |
| Parents and natural guardians of decedent | : | |
| Ty'rique Riley and as his sole survivors, | : | CIVIL ACTION – LAW |
| | : | |
| Plaintiffs | : | JUDGE MATTHEW W. BRANN |
| | : | M.J. WILLIAM I. ARBUCKLE |
| v. | : | |
| | : | Electronically Filed |
| BRIAN CLARK, Warden, et al., | : | |
| | : | |
| Defendants | : | JURY TRIAL DEMANDED |
| | : | |

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that this brief contains 3,745 words within the meaning of Local Rule

7.8(b)(2). In making this certificate, I have relied on the word count of the word processing

system used to prepare the brief.


/s/ Kevin V. Mincey_____
Kevin V. Mincey, Esquire
**MINCEY FITZPATRICK ROSS, LLC**
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, ADMINISTRATOR OF THE ESTATE FOR TY'RIQUE RILEY and CARMEN RILEY AND THOMAS MATTHEWS KEMRER, Individually, as Parents and natural guardians of decedent Ty'rique Riley and as his sole survivors, | : : : : : : : | No.: 4:20-CV-00325-MWB-WIA CIVIL ACTION – LAW |
| Plaintiffs | : : | JUDGE MATTHEW W. BRANN M.J. WILLIAM I. ARBUCKLE |
| v. | : : | Electronically Filed |
| BRIAN CLARK, Warden, et al., | : : | |
| Defendants | : : | JURY TRIAL DEMANDED |

**<u>CERTIFICATE OF SERVICE</u>**

I, Kevin Mincey, Esquire hereby certify that a copy of Plaintiffs' Opposition to Primecare Medical Inc. Motion to Dismiss or in the alternative Motion to Sever has been served upon all parties of record via electronic filing.

Dated: September 3, 2025            BY: _____

Kevin V. Mincey, Esquire