# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN RILEY, *et. al.*, | : | CIVIL ACTION NO. 4:20-cv-00325 |
| Plaintiffs | : | |
| | : | Honorable Matthew W. Brann |
| v. | : | |
| | : | |
| ANDREW KLAHR, *et al.* | : | |
| Defendants | : | |
| | : | JURY TRIAL DEMANDED |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF JOINT MOTION TO SEVER CLAIMS

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____

Donald L. Carmelite, Esquire
PA I.D. No. 84730
Coryn D. Hubbert, Esquire
PA I.D. No. 334121
200 Corporate Center Drive, Suite 300
Camp Hill, PA 17011
Telephone: (717) 651-3504; (717) 651-3703
Facsimile: (717) 651-3707
Email: dlcarmelite@mdwcg.com;
cdhubbert@mdwcg.com
Attorneys for Defendants, Matthew Danner
and Robert Ingersoll

Dated: September 10, 2025

**LAVERY LAW**

BY:   */s/ Andrew W. Norfleet*
        Frank J. Lavery, Jr., Esquire
        PA I.D. No. 42370
        Andrew W. Norfleet, Esquire
        PA I.D. No. 83894
        225 Market Street, Suite 304
        Harrisburg, PA 17108

Dated: <u>September 10, 2025</u>    Telephone: (717) 233-6633
        Facsimile: (717) 651-3707
        Email: flavery@laverylaw.com;
        anorfleet@laverylaw.com
        Attorneys for Defendants Cameron Weaver,
        Greg Mendenhall, Scott Grieb, Delta Bauer,
        Scott Lewis, Andrew Klahr, Keith Biter,
        Steve Singleton, and Keith Hoffman

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES ............................................................... ii

I.  INTRODUCTION ....................................................................1

II.  ARGUMENT...........................................................................2

A. The BC and DCP Incidents are misjoined............................................2

B. Absent misjoinder, the four factors weigh in favor of severance ....... 14

C. The procedural posture in this case is appropriate for severance ....... 19

D. *Kimmel* does not stand for the proposition Plaintiffs claim .............. 21

III.  CONCLUSION........................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...............................7

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...................................6

*Bieros v. Nicola*, 860 F. Supp. 226 (E.D. Pa. 1994) ...................................4

*Carr v. Borden*, 2024 WL 4291081 (M.D. Pa. Sept. 25, 2024) ...............................5

*Costantino v. City of Atl. City*, 152 F. Supp. 3d 311 (D.N.J. 2015) .......................20

*Dec v. Pennsylvania State Police*, 2012 WL 6099078 (W.D. Pa. Dec. 7, 2012) ......4

*Delker v. Blaker*, 2012 WL 726415 (W.D. Pa. Mar. 1, 2012).................................16

*DirecTV, Inc. v. Chorba*, 2003 WL 24178469 (M.D. Pa. Oct. 16, 2003) ...........9, 14

*Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456 (E.D. Pa. 2013) ........... 17, 18

*Grigsby v. Kane*, 250 F. Supp. 2d 453 (M.D. Pa. 2003)..........................................20

*Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009) .........................................12

*Henderson v. Mahally*, 639 F. Supp. 3d 481 (M.D. Pa. 2022) ................... 10, 11, 18

*Jacobs v. Cumberland Cnty.*, 8 F.4th 187 (3d Cir. 2021).................................. 3, 6, 7

*Johnson v. City of Philadelphia*, 2018 WL 11053491 (E.D. Pa. July 20, 2018).....16

*Kedra v. City of Philadelphia*, 454 F. Supp. 652 (E.D. Pa. 1978).............. 13, 20, 21

*Kimmel v. Cavalry Portfolio Servs.*, LLC, 747 F. Supp. 2d 427 (E.D. Pa. 2010). 21, 22

*Klein v. Madison*, 2018 WL 3535301 (E.D. Pa. July 20, 2018)..............................20

*McKenna v. City of Philadelphia*, 582 F.3d 447 (3d Cir. 2009) ............................15

*Norwood Co. v. RLI Ins. Co.*, 2002 WL 523946 (E.D. Pa. Apr. 4, 2002)................9

*Peroza-Benitez v. Smith*, 994 F.3d 157 (3d Cir. 2021) .............................................6

*Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78 (M.D. Pa. 2015) ...........3

*Schutz v. Honick*, 2012 WL 1658511 (W.D. Pa. May 11, 2012)............................16

*Spain v. Gallegos*, 26 F.3d 439 (3d Cir. 1994) ............................................................6

*Stanton by Brooks v. Astra Pharm. Prod., Inc.*, 718 F.2d 553 (3d Cir. 1983) ..........7

*United States v. Johnstone*, 107 F.3d 200 (3d Cir. 1997)............................................4

*Xerox Corp. v. SCM Corp.*, 576 F.2d 1057 (3d Cir. 1978) ........................................3

*Zampetis v. City of Atl. City*, 2018 WL 5729905 (D.N.J. Nov. 2, 2018).................20

Defendants, Matthew Danner and Robert Ingersoll, by and through their counsel, Marshall Dennehey, P.C., Donald L. Carmelite, Esquire, and Coryn D. Hubbert, Esquire, and Cameron Weaver, Greg Mendenhall, Scott Grieb, Delta Bauer, Scott Lewis, Andrew Klahr, Keith Biter, Steve Singleton, and Keith Hoffman, by and through their counsel, Lavery Law, Frank J. Lavery, Esquire, and Andrew W. Norfleet, Esquire, have moved to sever Plaintiffs' claims, and respectfully submit the within Reply Brief in further support of their motion.

## I.      **<u>INTRODUCTION</u>**

Plaintiffs' Opposition Brief offers scant argument in opposition to severance, repeated exaggerations of alleged similarities between the June 18, 2019 incident at Dauphin County Booking Center ("BC Incident") and the June 26, 2019 incident at Dauphin County Prison ("DCP Incident"), incorrect statements of the law, and fatally vague assertions of prejudice and overlapping evidence. Simply, following the Court's dismissal of Plaintiffs' conspiracy and *Monell* claims, the BC and DCP Incidents lack any commonalities, and must be tried separately to ensure a fair trial for all parties. Contrary to Plaintiffs' bald assertion, Defendants do not seek severance to delay trial following "adverse summary judgment rulings." **ECF 293, p. 4.** Instead, Defendants successfully obtained dismissal of Plaintiffs' conspiracy claims, and now properly seek two separate trials for two entirely distinct incidents. As trial has yet to be scheduled, such trials may occur consecutively.

1

II.     **ARGUMENT**

A.     **The BC and DCP Incidents are misjoined.**

i.     The logical relationship and transaction test is not met.

The BC and DCP Incidents, as argued in Defendants' Joint Motion, fail the logical relationship and transaction test, and accordingly, are misjoined. In their Opposition Brief, Plaintiffs ironically assert that Defendants have a "myopic focus on surface differences", and proceed to assert that vague, surface level similarities give rise to a logical relationship between the two distinct incidents. **ECF 293, p. 5.** Specifically, Plaintiffs assert that the logical relationship test is met because the incidents both involved Ty'rique, occurred "during continuous pretrial detention in the Dauphin County correctional system", are evaluated under "identical Fourth Amendment excessive force standards"[1], and have overlapping evidence involving Ty'rique's "mental state, medical condition, [ . . . ] institutional response to his deteriorating condition", and arrest. **Id. at pp. 5-6.** Only one of these observations is actually true: both incidents involved Ty'rique. This alone is insufficient to give rise to a logical relationship between the two incidents.

In determining whether a logical relationship exists between claims, necessary for joinder to be proper under Fed. R. Civ. P. 20, the Third Circuit requires "a

_____

[1] Plaintiffs' claims of excessive force are to be analyzed under the Fourteenth Amendment. **See ECF 272, pp. 15-17.**

detailed analysis to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). Defendants engaged in precisely the kind of detailed analysis required, looking to the parties involved in each incident, the locations, the occurrence dates, the alleged injuries, and the legal analyses involved. **ECF 291, pp. 9-13.** Needless to say, the fact that Ty'rique was involved in two separate incidents alone does not satisfy the requirements of Fed. R. Civ. P. 20. *See Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 80-81 (M.D. Pa. 2015). Plaintiffs' remaining three asserted similarities are either misstatements or mischaracterizations, and do nothing to support a logical relationship between the BC and DCP incidents.

First, Plaintiffs' assertion that the BC and DCP Incidents both occurred "during continuous pretrial detention in the Dauphin County correctional system" entirely ignores the actual facts of this case. Specifically, the BC Incident occurred immediately after Officer Haines transported Ty'rique from the scene of the incident leading to his arrest.[2] **See ECF 247, pp. 12-23.** At the time of the BC Incident, it

_____

[2] It should be noted that it is unclear whether Ty'rique even was a pretrial detainee at the time of the BC Incident. While the distinction is largely irrelevant in the context of an excessive force claim because "the Fourteenth Amendment standard is now almost identical to the Fourth Amendment standard", *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195 n.6 (3d Cir. 2021), the Third Circuit has not adopted a bright-

was not even certain that Ty'rique was going to be committed to Dauphin County Prison. Ty'rique had not attended his Preliminary Arraignment, bail was not set by the Magistrate, and a commitment order had yet to be issued. **Id. at pp. 31-32.** Ty'rique further had not been examined by the medical provider to determine whether he would be admitted to the prison. **Id. at pp. 26-31.**

In contrast, at the time of the DCP Incident, Ty'rique had been arraigned and was an inmate at Dauphin County Prison for nearly eight days, was placed on a Level 1 Suicide Watch, received regular treatment from prison medical staff, and was being provided an emergency transport to the hospital. **Id. at pp. 31-41.** Simply, Plaintiffs' characterization of these two incidents as occurring during a "continuous

---

line rule identifying when pretrial detention begins. *See United States v. Johnstone*, 107 F.3d 200, 207 (3d Cir. 1997) ("Where the seizure ends and pre-trial detention begins is a difficult question."); *Bieros v. Nicola*, 860 F. Supp. 226, 231 (E.D. Pa. 1994) ("Although a pretrial detainee has been defined as a person charged but not yet convicted of a crime, *Bell v. Wolfish*, 441 U.S. 520, 523 (1979), it is not clearly defined when an arrest ends and pretrial detention begins, nor are there any cases in this Circuit clearly explaining the dichotomy. Other courts have also struggled with this concept."); *Dec v. Pennsylvania State Police*, 2012 WL 6099078, at *7 (W.D. Pa. Dec. 7, 2012) (allowing plaintiff to proceed on Fourth and Fourteenth Amendment claims of excessive force at motion to dismiss stage, finding that alleged excessive force incident wherein plaintiff was taken to the police station after his arrest, chained to a bench, and pepper sprayed "may well have occurred at that elusive 'point at which arrest ends and pretrial detention begins'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

pretrial detention" holds no water.[3] The incidents occurred at separate locations more than a week apart from each other, involved entirely different Defendants, and were entirely different in context with regard to the BC and DCP Defendants' job duties in each situation, knowledge of Ty'rique's mental and physical state, and Ty'rique's distinct acts of resistance. The fact that both incidents occurred within the "Dauphin County correctional system" does not alter the clear distinctions between the two incidents, prohibiting the presence of a logical relationship between the claims. *See Carr v. Borden*, 2024 WL 4291081, at *2 (M.D. Pa. Sept. 25, 2024). Ultimately, Plaintiffs' surface level identification that these incidents both occurred during Ty'rique's "pretrial detention" does nothing more than establish that the claims for each incident fall under the Fourteenth Amendment rather than the Eighth.

Second, Plaintiffs' assertion that the two incidents are to be evaluated under "identical" excessive force standards entirely disregards the legal analysis underlying a claim of excessive force. As previously stated, a determination as to whether a use of force is objectively reasonable "requires 'careful attention to the facts and circumstances of each particular case'", and for such circumstances to be analyzed "from the perspective of a reasonable officer on the scene". *Jacobs*, 8 F.4th

---

[3] Plaintiffs' characterization of these two incidents as occurring in a "continuous" fashion only bolsters Defendants' arguments that they will suffer significant prejudice should the claims not be severed. **See ECF 291, pp. 17-22.**

at 194-195. When determining whether an officer used "objectively unreasonable force, a court (judge or jury) cannot apply this standard mechanically." *Id.* at 194 (internal quotations omitted). Accordingly, when engaging in this highly fact-specific inquiry, no analysis will ever be "identical" as Plaintiffs claim, and the fact that the same basic constitutional standard is used does not give rise to a logical relationship between the claims.[4]

Last, Plaintiffs broadly assert that each incident will require overlapping evidence, including evidence of Ty'rique's arrest, mental state, medical condition, and the institutional response to his medical condition. **ECF 293, pp. 5-6.** Yet, Plaintiffs fail to elucidate to this court how this evidence is relevant to both incidents. "[R]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994) (internal citation omitted). Specifically, evidence is relevant "if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (quoting Fed. R. Evid. 401).

---

[4] Indeed, when applying qualified immunity, courts have tacitly admitted that no excessive force analysis is identical, in holding that there does not need to be a case directly on point for a violation to be clearly established, and that a public official does not get the benefit of one liability-free violation simply because the circumstance of his case is not identical to that of a prior case. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Peroza-Benitez v. Smith*, 994 F.3d 157, 166 (3d Cir. 2021).

Facts "of consequence" are those which satisfy a material element of an asserted claim, or otherwise "might affect the outcome of the suit under the governing law". *Stanton by Brooks v. Astra Pharm. Prod., Inc.*, 718 F.2d 553, 579-580 (3d Cir. 1983); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Evidence of Ty'rique's arrest, contrary to Plaintiffs' assertion, is not relevant to both incidents. While such evidence may be relevant to the BC Incident, as it occurred immediately prior the BC Incident, it is entirely unclear how evidence of Ty'rique's arrest would have any relevance to the DCP Incident, and Plaintiffs do nothing to elaborate on this proposition. Ty'rique's arrest occurred on June 18, 2019, eight days prior to the DCP Incident. By the time of the DCP Incident, Ty'rique had been incarcerated as a pretrial detainee for more than a week. The arrest does nothing to prove or disprove any fact of consequence to the determination of whether officers used excessive force during the DCP Incident.

Further, Plaintiffs mischaracterize Ty'rique's mental state, medical condition, and the institutional response to his medical condition as being consistent between the two incidents. However, such evidence related to each incident is discrete and cannot be considered simultaneously. Importantly, claims of excessive force are analyzed "from the perspective of a reasonable officer on the scene". *Jacobs*, 8 F.4th at 195. As such, all that is relevant in analyzing each use of force incident, related to Ty'rique's mental state and medical condition, is what a reasonable officer in the

position of the BC Defendants or DCP Defendants knew at the time of each incident. Particularly given the lack of overlapping Defendants, the knowledge of the BC Defendants cannot be conflated with the knowledge of the DCP Defendants, and vice versa. Instead, the BC Defendants' knowledge of Ty'rique's mental state and medical condition was limited to their own observations of Ty'rique's behavior. **ECF 247, pp. 17-23.** In contrast, the DCP Defendants' knowledge of Ty'rique's mental state and medical condition was based on their duty to prepare Ty'rique for medical transport, any prior interactions the officers may have had with Ty'rique during his detention, and their observations of Ty'rique's behavior at the time of the incident, which was entirely different from his behavior at the time of the BC Incident. **ECF 272, pp. 44-50.**

Simply, relevant evidence related to Ty'rique's mental state and medical condition, consisting of the perspectives of a reasonable officer on the scene of the BC Incident and the DCP Incident, do not comprise a single category of evidence as Plaintiffs posit. Accordingly, in line with the analysis of a claim for Fourteenth Amendment excessive force, evidence of Ty'rique's mental state, medical condition, and the institutional response to said state and condition during one incident is not relevant to the other, and vice versa, and contrary to Plaintiffs' assertions, there is minimal, if any, overlapping evidence between the two incidents.

Case 4:20-cv-00325-MWB    Document 295    Filed 09/10/25    Page 14 of 31

In further opposition to misjoinder, Plaintiffs also criticize Defendants'
citations to *DirecTV, Inc. v. Chorba*, 2003 WL 24178469 (M.D. Pa. Oct. 16, 2003)
and *Norwood Co. v. RLI Ins. Co.*, 2002 WL 523946 (E.D. Pa. Apr. 4, 2002). Yet,
notably, Plaintiffs' criticism confusingly provides quotes that do not exist in either
case. **ECF 293, pp. 5-6.** Nonetheless, these cases are far more similar to the instant
case than anything cited to by Plaintiffs. In *DirecTV*, despite the plaintiff's claims
and allegations against each defendant being identical, the court found that the
claims were misjoined, as there were no allegations that the defendants acted in
concert or that the defendants' actions were related. *DirecTV*, 2003 WL 24178469,
at *2-3. As with the plaintiff's claims in *DirectTV*, the fact that Plaintiffs' claims
here arise from the same cause of action is insufficient to find a logical relationship,
particularly following the dismissal of Plaintiffs' conspiracy claims. In *Norwood*,
the court severed claims regarding two separate construction contracts between the
same entities, and found it particularly significant that the alleged defects for each
project were dissimilar, as this demonstrated the alleged failure to perform in each
project manifested different problems. *Norwood Co.*, 2002 WL 523946, at * 3. As
with the defects in *Norwood*, the injuries Plaintiffs' allege related to each incident
are vastly different.

Ultimately, what is perhaps most enlightening about Plaintiffs' argument in
opposition to misjoinder is what Plaintiffs fail to acknowledge entirely. Plaintiffs

offer no opposition to the clear distinctions between the BC and DCP Incidents, specifically, the lack of any cause of action or claim tying the two incidents together, the distinct locations in which each incident occurred, the lack of any overlapping defendants involved in each incident, and perhaps most importantly, the vast divergence between the alleged injuries, ranging from mild eye irritation for the BC Incident, to death for the DCP Incident. These significant differences, which Plaintiffs fail to acknowledge, demonstrate that Plaintiffs' claims related to the BC Incident and DCP Incident are misjoined.

ii.    <u>Distinct incidents are not "routinely tried together" absent a unifying claim.</u>

Plaintiffs further broadly assert that multiple incidents during incarceration are routinely tried together. **ECF 293, p. 6.** Yet, Plaintiffs fail to cite to a single case wherein two distinct use of force incidents, which involve no overlapping defendants, occurred at different locations, occurred more than a week apart, allegedly caused entirely distinct injuries, and lack any claim tying the two incidents together, were tried together. The cases Plaintiffs rely upon are inapposite to the situation presented by this instant litigation, and in fact, support Defendants' position.

*Henderson* concerned defendants' requests to sever First Amendment retaliation claims and medical malpractice claims asserted by a *pro se* prisoner. *Henderson v. Mahally*, 639 F. Supp. 3d 481 (M.D. Pa. 2022). In determining whether

10

to sever the claims, the court found the first factor, whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof, weighed in favor of severance, regardless of the minimal factual overlap presented by the claims. *Id.* at 487. However, factors that are not present in this instant litigation ultimately weighed against severance. Specifically, the court noted that trial was already scheduled for the following month, and that severing the cases (and sending one of them to proceed in state court, as one of the medical malpractice defendants requested) would not promote judicial economy, especially considering the plaintiff's status as an incarcerated *pro se* plaintiff, requiring significant logistical coordination with prison officials to be present for trial. *Id.* Further, unlike this instant case, the court found that the defendants would not be prejudiced in the absence of severance, as it was unlikely that the jurors would conflate the plaintiff's medical issues with the alleged retaliation. *Id.* Specifically, this court stated that the plaintiff's "claims are not difficult to understand or isolate" as plaintiff alleged that "(1) he was provided deficient medical care, and (2) when he formally complained about this deficient care, two prison officials retaliated against him." *Id.* Accordingly, the court was confident that jurors would be able to distinguish the claims.

Contrary to *Henderson*, there is no trial date set in this case, Plaintiffs are not *pro se* prisoners, and thus, do not require the same level of logistical coordination,

and, as argued in Defendants' Brief, Defendants will undoubtably suffer prejudice if the BC and DCP Incidents are tried together. Indeed, it will be much more difficult for a jury to distinguish claims of excessive force relating to two separate incidents than it would have been for a jury to distinguish between a First Amendment retaliation claim and a medical malpractice claim, as was the case in *Henderson*.

Plaintiffs next cite to *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009). **ECF 293, p. 6.** *Hagan* concerned a group of prisoners who jointly filed a single complaint on behalf of themselves and a purported class, alleging that officials at their facility failed to contain and treat a serious and contagious skin condition. *Id.* at 149. Contrary to this instant litigation, *Hagan* concerned identical claims asserted by plaintiffs against the same defendants. Indeed, the plaintiffs' even sought a class certification due to their claims being nearly identical, only differing in level of injury. This case has no relevance to Defendants' instant request.

Last[5], *Kedra* concerned claims by a family of plaintiffs that employees of the City of Philadelphia acted separately and in concert to deprive the plaintiffs of various constitutional rights through a series of allegedly unlawful arrests,

---

[5] Plaintiffs also cite to "*Fennel v. Wetzel*, No. 1:17-cv-01713, 2019 WL 5552320, at 3 (M.D. Pa. Oct 28, 2019)", however, Defendants are unable to locate any such case, nor are they able to find any case captioned *Fennel v. Wetzel* that contains the quote Plaintiffs include in their Brief. **ECF 293, p. 6.** Further, the docket number listed, 1:17-cv-01713, references an entirely different case before the Middle District, captioned "Felix Dominguez-Rivera v. USA".

interrogations, excessive force, and other actions over the course of a fourteen to fifteen month period. *Kedra v. City of Philadelphia*, 454 F. Supp. 652, 657-660 (E.D. Pa. 1978). At the motion to dismiss stage, the court stated, although the events giving rise to plaintiffs' claims occurred over a lengthy time period, they were all reasonably related, as the complaint set forth a series of alleged unlawful detentions, searches, beatings, and similar occurrences, and further charged defendants with engaging in a systematic pattern of harassment, threats, and coercion, with each of the incidents being encompassed in the alleged pattern. *Id.* at 662. Contrary to this instant case, multiple defendants were involved in multiple incidents. *Id.* Moreover, the court permitted claims of supervisory liability to proceed, which further tied the claims together. *Id.* at 675-676. Notably however, regardless of the connections between the various incidents, the court stated that there was a question of whether a single trial of all claims against all defendants would prejudice some of the defendants. *Id.* at 662. Specifically, the court noted that because some of the defendants were only involved in one of the several incidents alleged, lumping them together with other defendants who were involved in more than one incident may be unfair. *Id.* Accordingly, the court indicated that it would potentially consider severing plaintiffs' claims under Fed. R. Civ. P. 20(b) after the completion of discovery, at which time the potential prejudice would be easier to assess. *Id.*

13

Ultimately, no case cited to by Plaintiffs presents circumstances even similar to those of the instant case, and this is perhaps because no such case exists. Defendants have extensively searched for case law within the Third Circuit that presents facts similar to the case at hand, and found none. The facts of this case simply are not the "routine" facts that would be tried together, and instead, present entirely distinct incidents with no commonalities, thus warranting severance.

**B. Absent misjoinder, the four factors weigh in favor of severance.**

        **i.** <u>The issues underlying the two incidents are significantly different.</u>

Plaintiffs assert that the issues underlying the two incidents are not significantly different because "[t]he core legal questions remain the same". **ECF 293, p. 7.** However, this is simply not enough. Again, as discussed above and in Defendants' Brief, these incidents have no overlapping defendants, occurred at different locations, occurred more than a week apart, lack any claim tying the two incidents together, and have significantly different asserted injuries. The fact that both incidents are analyzed under the same Fourteenth Amendment standard for use of force does not make the BC and DCP Incidents any more similar to each other than they are to all other pretrial detainee use of force cases. *See DirecTV*, 2003 WL 24178469, at *2-3 (severing claims, all asserted under the same statutes, where there were no claims that the defendants conspired or acted jointly). For the reasons set

forth in Section A above, and in Defendants' Brief in Support of their Joint Motion to Sever, this factor weighs in favor of severance.

> ii.   The BC and DCP Incidents lack relevant overlapping evidence.

A majority of Plaintiffs' arguments regarding overlapping evidence are discussed in Section (A)(i) above. With regard to the four factor test for severance, Plaintiffs assert, for the first time in their brief, that both incidents will require "evidence of Dauphin County's use of force policies", "training procedures", and "expert testimony regarding appropriate force and correctional practices will apply common standards to both incidents." **ECF 293, pp. 7-8.** However, Plaintiffs' fail to describe how such evidence is relevant to either incident, let alone both, particularly following the dismissal of Plaintiffs' *Monell* claim.

District Courts in this Circuit frequently exclude evidence of internal department policies, as such policy "directives ha[ve] the potential to lead the jury to equate local policy violations with constitutional violations, and … this risk of confusing the issues substantially outweigh[s] the directives' probative value." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (upholding District Court's decision to exclude evidence of Philadelphia Police Department directives on the appropriate use of force, and noting that the plaintiff may offer evidence of police practice standards in other ways, such as by cross-examining police witnesses about proper police conduct). *See also Delker v. Blaker*, 2012 WL

726415, at *6 (W.D. Pa. Mar. 1, 2012) ("the policies of the Department of Corrections and the Eighth Amendment are not the same, and as such, conclusions drawn by whatever body adjudicated Defendants' culpability with regard to their involvement in the [ . . . ] incident do little more than obscure the issues"); *Schutz v. Honick*, 2012 WL 1658511, at *5 (W.D. Pa. May 11, 2012) ("testimony regarding the City of Pittsburgh 'use of force' policies has the potential to mislead the jury to equate local policy violations with constitutional violations"); *Johnson v. City of Philadelphia*, 2018 WL 11053491, at *2 (E.D. Pa. July 20, 2018) (excluding testimony that defendants' "conduct violated the [Philadelphia Police Department's] directives or policies" because "[a]ny marginal relevance related to this testimony is substantially outweighed by the dangers of confusing the issues, misleading the jury, undue delay, and wasting time, because such testimony will result in mini-trials on collateral issues").

Further, as discussed in Defendants' Brief, the opinions posited in the report of Plaintiffs' expert, Roy Gravette, are clearly separated by incident, with the sole overlap being his final opinion that Ty'rique was unnecessarily subjected to force. **See ECF 197-1.** Accordingly, for these reasons, those set forth in Section (A)(i) above, and those set forth in Defendants' Brief, this factor weights in favor of severance.

iii.    Plaintiffs' claimed prejudice is minimal, if any.

Plaintiffs assert that they will be substantially burdened if the claims are severed because they would be required to incur the costs of two trials. **ECF 293, p. 9.** Plaintiffs also put forth arguments regarding duplicative evidence, which Defendants have extensively addressed throughout this Brief already.[6] In support of their arguments related to costs, Plaintiffs cite to *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456 (E.D. Pa. 2013). However, as with all other cases Plaintiffs rely upon, *Graudins* is entirely dissimilar to this instant case. While the court in *Graudins* did find that the costs of two trials weighed against severance, the court further noted that the plaintiff's claims against the two remaining defendants were tied together. Specifically, following the court's grant of partial summary judgment, the plaintiff maintained Title VII hostile work environment and retaliation claims and an intentional infliction of emotional distress claim against her employer, who also employed Paul Carr, and a claim for assault and battery against Carr. *Id.* at 460, 469. In declining to sever plaintiff's claims against the two defendants, the court noted

---

[6] While Plaintiffs' assert that they would incur dramatically increased costs for duplicative expert testimony and witness preparation, as already discussed, there are few to no overlapping fact witnesses for the BC and DCP Incidents. As for Plaintiffs' experts, only one expert, Roy Gravette, is likely to testify at both trials. **ECF 197-1.** Plaintiffs' forensic pathologist expert, Dr. Zhongxue Hua, only speaks to Ty'rique's cause of death, which has no relevance to the BC Incident. **ECF 196-11.** In contrast, Plaintiffs' forensic psychologist expert, Dr. Marcus Patterson, offers no opinions related to the DCP Incident. **ECF 196-15.** Accordingly, as already discussed, Plaintiffs would only need to present the testimony of Gravette at both trials.

that "Carr's assault could have contributed to a hostile work environment and [plaintiff's] reporting of the assault allegedly led to her termination". *Id.* at 468-469. Accordingly, the court found that the defendants failed to demonstrate that the matters were unrelated or involved different evidence. *Id.* at 469. Indeed, entirely unlike this instant case, the plaintiff's claims against one defendant in *Graudins* were at least partially tied to the plaintiff's claims against the other. Such is not the case here, where Plaintiffs' claims against the BC and DCP Defendants are "capable of resolution without dependence or effect on the other." *Henderson*, 639 F. Supp. 3d at 486.

Simply, in all proceedings where multiple defendants seek severance, or even bifurcation, a plaintiff will have to bear the costs of two trials. Aside from this automatic burden, Plaintiffs cannot offer any other form of prejudice they would suffer should severance be granted. Plaintiffs' claims against the BC and DCP Defendants will not be hindered in any way by severance of the claims, nor have they asserted that they would be. As such, this factor weighs in favor of severance.

    iv. <u>Defendants have demonstrated that they will suffer significant prejudice should their request for severance be denied.</u>

In opposition to Defendants' arguments regarding prejudice, Plaintiffs cherry picked two to three sentences of Defendants' nearly six page argument and broadly asserted that Defendants have failed to demonstrate prejudice. In their Brief,

Defendants demonstrated that they would be significantly prejudiced if both incidents were tried before the same jury. Defendants at no point argued that such prejudice originated from the "emotional impact of evidence", but rather, argued that the BC Defendants would be prejudiced when the jury inevitably is lead to believe, by Plaintiffs, that the BC Defendants somehow contributed to Ty'rique's death, or that the BC Incident was part of a "continuous" pattern of excessive force. **ECF 293, p. 10.** Plaintiffs own arguments in their Opposition Brief support this, as they have, yet again, attempted to assert that the two incidents occurred as part of Ty'rique's "continuous pretrial detention". **Id. at p. 5.** Defendants also never argued that pre-trial publicity warranted severance, and instead, merely pointed out that a lay person, related to Plaintiffs, publicly proclaimed that the BC Incident was "no different than George Floyd", and argued that, should both incidents be tried together, nothing would stop a jury from coming to this same improper conclusion.

For the reasons extensively addressed in Defendants' Brief, and minimally responded to by Plaintiffs, Defendants would suffer significant prejudice if both incidents were tried before the same jury, and severance is necessary to prevent such prejudice from occurring.

### C. The procedural posture in this case is appropriate for severance.

Plaintiffs incorrectly assert that severance is inappropriate at this stage because discovery is complete and this Court issued a ruling on all Defendants'

19

Motions for Summary Judgment. Such is not the case. Courts routinely hold that severance is inappropriate at an earlier juncture and will often refrain from severing cases until after the summary judgment stage. *See Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (finding that plaintiffs alleged two sets of claims that are factually dissimilar, with only one group of common defendants, and ordering that the cases will not be severed until discovery is complete); *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 326 (D.N.J. 2015) (refusing to bifurcate individual liability claims from *Monell* claim in the middle of the discovery stage, as "it makes no sense to first try the case against the defendant police officers and then only if a liability verdict is returned does plaintiff get additional *Monell* discovery"); *Klein v. Madison*, 2018 WL 3535301, at *1 (E.D. Pa. July 20, 2018) ("Judge Smith issued a Scheduling Order that denied [defendants'] proposed bifurcation [of discovery] and directed single deadlines for fact and expert discovery."); *Zampetis v. City of Atl. City*, 2018 WL 5729905, at *2 (D.N.J. Nov. 2, 2018) (""Bifurcation of discovery at the initial stage of a plaintiff's excessive force and municipal liability case does not present the same issue or have the same benefits, however, as bifurcation at the post-summary judgment trial stage."); *Kedra*, 454 F. Supp. at 662 (noting that it would potentially consider severing plaintiffs' claims after the completion of discovery, at which time the potential prejudice would be easier to assess). Seeking severance after dispositive motions and before trial is scheduled greatly reduces any burden

caused by severance, as the parties have already engaged in a single round of discovery and dispositive motions on all claims.

Further, the presence of Plaintiffs' weak conspiracy claim against Defendants prohibited severance up until this point. As stated by this Honorable Court, even after full discovery on all claims, Plaintiffs' only evidence tending to show a meeting of the minds was alleged circumstantial evidence regarding the simultaneous acts of guards in restraining Ty'rique, which was entirely insufficient. **ECF 272, p. 70.** Nonetheless, Plaintiffs pursued a conspiracy claim based actions of prison officials which occur "[i]n nearly every excessive force case". **Id.** Now that these claims, which lacked an iota of factual support and only served to tie the two incidents together, are properly dismissed, the prejudice against the BC and DCP Defendants is much easier to assess, and any burdens of severance are minimized. *Kedra*, 454 F. Supp. at 662.

### D. *Kimmel* does not stand for the proposition Plaintiffs claim.

Plaintiffs misquote *Kimmel v. Cavalry Portfolio Servs.*, LLC, 747 F. Supp. 2d 427 (E.D. Pa. 2010) and assert that it stands for the proposition that "Defendants who have participated in 'joint discovery, filed joint motions, other otherwise treated the claim as unified' cannot claim prejudice from continued joint proceedings." **ECF 293, p. 13.** *Kimmel* contains no such language. Indeed, *Kimmel* did not even contain multiple defendants. In determining whether the plaintiff's claim and the defendant's

counterclaim should be severed or bifurcated, the court explicitly stated: "First, since there are only two parties to this litigation, it would be more convenient for both to litigate all of their claims against each other in a single action." *Id.* at 435. Further, giving Plaintiffs the benefit of the doubt, Defendants searched for a case containing the quote Plaintiffs attribute to *Kimmel* within the Third Circuit, and did not find a single case containing that language.

Aside from the fact that Plaintiffs' have improperly cited to *Kimmel* to support this argument, the argument itself is nonsensical. Defendants cannot be prohibited from seeking severance because they defended themselves in this litigation within the parameters of the claims Plaintiffs asserted against them. Plaintiffs seem to conveniently forget that, until such claims were dismissed by this Court's Order partially granting Defendants' Motions for Summary Judgment, Plaintiffs asserted and maintained two conspiracy claims against the BC and DCP Defendants. Further, the actions Plaintiffs attribute to Defendants amount to nothing more than apparent criticism of undersigned counsels' representation of both the BC and DCP Defendants. Indeed, in all litigation, Defendants jointly participate in depositions, Defendants may rely on the same source of evidence to support their defenses, and, where Defendants share counsel, Defendants may seek summary judgment through a single motion rather than multiple for the sake of efficiency. None of these actions

prohibit severance properly found under Fed. R. Civ. P. 20, and given Plaintiffs'
clear mischaracterization of *Kimmel*, this position is entirely unsupported.

## III.    <u>CONCLUSION</u>

Based upon the foregoing, and for the reasons set forth in the Brief in Support
of the Joint Motion to Sever (**ECF 290**), Defendants respectfully request that their
Joint Motion be granted, and this court sever Plaintiffs' claims against Defendants
Ingersoll, Weaver, Mendenhall, Bauer, and Grieb from Plaintiffs' claims against
Defendants Lewis, Klahr, Biter, Singleton, Hoffman, and Danner.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY: _____

Donald L. Carmelite, Esquire
PA I.D. No. 84730
Coryn D. Hubbert, Esquire
PA I.D. No. 334121
200 Corporate Center Drive, Suite 300
Camp Hill, PA 17011
Dated: <u>September 10, 2025</u>    Telephone: (717) 651-3504; (717) 651-3703
Facsimile: (717) 651-3707
Email: dlcarmelite@mdwcg.com;
cdhubbert@mdwcg.com
Attorneys for Defendants, Matthew Danner
and Robert Ingersoll

23

**LAVERY LAW**

BY:  /s/ *Andrew W. Norfleet*

Frank J. Lavery, Jr., Esquire
PA I.D. No. 42370
Andrew W. Norfleet, Esquire
PA I.D. No. 83894
225 Market Street, Suite 304
Harrisburg, PA 17108
Telephone: (717) 233-6633
Facsimile: (717) 651-3707
Email: flavery@laverylaw.com;
anorfleet@laverylaw.com
Attorneys for Defendants Cameron Weaver,
Greg Mendenhall, Scott Grieb, Delta Bauer,
Scott Lewis, Andrew Klahr, Keith Biter,
Steve Singleton, and Keith Hoffman

Dated: September 10, 2025

## **<u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>**

I hereby certify that this Reply Brief complies with the word limitation of 5,000 words. Excluding the cover page, tables, and certifications, but including its footnotes, this brief contains 4,999 words as calculated by Microsoft Word.

_____

Donald L. Carmelite, Esquire

Dated: September 10, 2025

## **CERTIFICATE OF SERVICE**

I certify that on this date, I served a true and correct copy of the foregoing

document on all counsel of record via the Court's Electronic Filing System.


_____
Michele E. Neff, Admin. Asst. to
Donald L. Carmelite, Esquire
Coryn D. Hubbert, Esquire


Dated: September 10, 2025

2