## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN RILEY, *et al.*, | No. 4:20-CV-00325 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| PRIMECARE MEDICAL, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### FEBRUARY 20, 2026

This matter arises out of the tragic death of Ty'rique Riley ("Riley") while in custody of officials in Dauphin County. Riley was initially arrested and placed in the custody of several defendants associated with the Dauphin County Booking Center ("Booking Defendants") where he was allegedly subjected to excessive force before being transferred to the custody of other defendants who are associated with the Dauphin County Prison ("Prison Defendants") where he was again allegedly subjected to excessive force.[1] During this time, PrimeCare Medical, Inc. ("PrimeCare"), allegedly provided negligent treatment for Riley, which exacerbated his mental health issues in the days before his death while in the custody of Prison Defendants.

---

[1] Booking Defendants and Prison Defendants are collectively referred to as "Correctional Defendants."

All of the defendants now move to sever the claims against them from the claims against the other defendants, effectively requesting three separate trials in this matter. However, because all of the claims arise from the same nucleus of facts, and because the facts relevant to each individual defendant are necessary to provide adequate context for the claims against the other defendants, the motions will be denied.

## I.    BACKGROUND

In February 2020, Carmen Riley, as administrator of Riley's estate, filed a complaint in this matter, which was subsequently twice amended.[2] The second amended complaint, filed in April 2021, raised claims for conspiracy to commit excessive force, conspiracy to deny medical care, two counts of excessive force, two counts of failure to intervene, failure to train and supervise, failure to provide medical care, medical negligence, intentional infliction of emotional distress, assault, battery, wrongful death, and a survival action.[3]

Several motions for summary judgment were filed, and a Report and Recommendation issued.[4] This Court thereafter adopt in part and rejected in part the Report and Recommendation and granted in part and denied in part the motions for summary judgment.[5] Specifically, this Court found that the evidence was sufficient

---

[2]    Docs. 1, 16, 64.
[3]    Doc. 64.
[4]    Docs. 157, 160, 164, 173, 247.
[5]    Docs. 272, 273.

for Plaintiffs' claim for: excessive force as against Robert Ingersoll, Cameron Weaver, Greg Mendenhall, and Scott Lewis; failure to intervene as to Weaver, Mendenhall, Delta Bauer, Scott Grieb, Andrew Klahr, Keith Biter, Steve Singleton, Keith Hoffman, and Matthew Danner; assault with respect to Ingersoll, Weaver, Mendenhall, and Lewis; battery as against Ingersoll, Weaver, Mendenhall, and Lewis; wrongful death with regard to Klahr, Lewis, Biter, Singleton, Hoffman, and Danner; and survivor act as to Ingersoll, Weaver, Mendenhall, Bauer, Grieb, Klahr, Lewis, Biter, Singleton, Hoffman, and Danner.[6]

This Court granted judgment in favor of PrimeCare, concluding that Plaintiffs had failed to sustain a claim for medical negligence, wrongful death and survival, or punitive damages.[7] As to the claim for medical negligence, the Court determined that, although there were many alleged deficiencies in PrimeCare's treatment of Riley, these deficiencies has "nothing to do with death by excessive force."[8] Because any deficiency in mental health treatment was not the proximate cause of Riley's death, PrimeCare could not be held liable in any manner for Riley's death.[9]

Plaintiffs thereafter filed a motion for reconsideration as to the dismissal of claims against PrimeCare, arguing that their medical negligence claim should

---

[6]    Doc. 273.
[7]    Doc. 272 at 85-95.
[8]    *Id.* at 90.
[9]    *Id.* at 91-95.

survive.[10] This Court granted reconsideration, concluding that Plaintiffs had proffered an expert report that discussed multiple instances where PrimeCare staff failed to adequately assess Riley and opined that each failure "caused Riley's decline in mental functioning to continue."[11] However, as to any claim relating to Riley's death, this Court stood "on its prior reasoning regarding the lack of expert evidence tying PrimeCare's medical negligence to Riley's death" since Plaintiffs

> failed to provide any expert evidence at all tying Riley's death to PrimeCare's medical negligence. Any injury caused by the tortuously excessive force deployed by prison guards was not proximately caused by preceding medical negligence, even if that medical negligence was a but-for cause of the mental deterioration which in turn caused the physical confrontation.[12]

With that ruling, claims of excessive force under 42 U.S.C. § 1983 and related issues proceeded as against Correctional Defendants, while state law claims of medical negligence and survival action proceeded as to PrimeCare. Now pending before the Court is PrimeCare's motion to dismiss or, in the alternative, to sever, together with a motion to sever filed by the Correctional Defendants.[13]

As to PrimeCare's motion to dismiss, it argues that this Court should decline to exercise supplemental jurisdiction and dismiss the claims against it without prejudice because the Court has dismissed all claims over which it had original

---

[10]   Doc. 274.
[11]   Doc. 286 at 6; *see id.* at 5-6.
[12]   *Id.* at 9.
[13]   Docs. 288, 290.

jurisdiction, and there is no connection between the remaining claims against PrimeCare and those against Correctional Defendants.[14] Alternatively, PrimeCare contends that claims against it should be severed, as the issues to be tried are significantly different and will require different evidence, Plaintiffs will not be prejudiced by severance, and PrimeCare would be prejudiced by the failure to sever.[15]

Correctional Defendants move to sever claims between Booking Defendants and Prison Defendants on the grounds that the claims against them share no common factual or legal issues and arise from different controversies.[16] Moreover, Correctional Defendants assert that the issues underlying the claims against them are different and require different proof, Plaintiffs will suffer no prejudice from severance, and the Correctional Defendants will be prejudiced by the failure to sever the counts.[17]

Plaintiffs respond that PrimeCare's motion to dismiss should be denied because there remain some claims over which the Court possesses original jurisdiction and, in any event, considerations of judicial economy, convenience, and fairness militate in favor of retaining jurisdiction.[18] And in contrast to PrimeCare's

---

[14]  Doc. 292 at 5-8.
[15]  *Id.* at 9-14.
[16]  Doc. 291 at 13-17.
[17]  *Id.* at 18-26.
[18]  Doc. 294 at 7-13.

contention, Plaintiffs assert that the claims should not be severed because they have substantial factual overlap and overlap in evidence, severance would cause substantial prejudice to Plaintiffs, denial of severance would not prejudice PrimeCare, and severance would waste significant judicial resources.[19] Plaintiffs offer similar arguments in opposition to Correctional Defendants' motion to sever.[20]

The defendants have filed reply briefs to the pending motions,[21] rendering those motions ripe for disposition. For the following reasons, the motions will be denied.

## II.     DISCUSSION

### A.     Motion to Dismiss

The Court turns first to PrimeCare's argument that this Court should decline to exercise supplemental jurisdiction over the remaining state law claims against PrimeCare. Federal law provides that, when district courts possess original jurisdiction over a claim, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[22] However, "district courts may decline to exercise supplemental

---

[19]  *Id.* at 13-20.
[20]  *See* Doc. 293.
[21]  Docs. 295, 296.
[22]  28 U.S.C. § 1367(a).

jurisdiction over a claim" in four prescribed circumstances, only one of which is at issue here.[23]

PrimeCare asserts only that dismissal is appropriate because the Court "has dismissed all claims over which it has original jurisdiction."[24] The United States Court of Appeals for the Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."[25]

It is true, as PrimeCare asserts, that this Court dismissed all claims against PrimeCare over which it had original jurisdiction, leaving only state law claims pending against PrimeCare.[26] It is equally true, as Plaintiffs point out, that claims remain against Correctional Defendants that are based upon federal law—specifically, 42 U.S.C. § 1983.[27] This raises a question that does not appear to have yet been resolved by the Third Circuit: whether 28 U.S.C. § 1367(c)(3) is triggered

---

[23] *Id.* § (c).

[24] *Id.* § (c)(3). *See* Doc. 292 at 6-8. Although PrimeCare references 28 U.S.C. § 1367(c)(4), which provides that courts may decline to exercise supplemental jurisdiction if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction," PrimeCare does not develop this argument in any way. In any event, there are no compelling circumstances apparent to the Court that would justify declining jurisdiction under Subsection 1367(c)(4).

[25] *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (internal quotation marks omitted).

[26] Doc. 292 at 7.

[27] Doc. 294 at 7.

when all federal claims are dismissed against the relevant defendant, or only when all federal claims are dismissed as against all defendants within a case.

The plain language of the statute demonstrates that Subsection (c)(3) applies only when all federal claims as to all defendants have been dismissed, as the statute speaks to "all claims," not "all claims against a defendant."[28] Numerous courts have reached such a conclusion.

By way of example, in *Hansen v. Board of Trustees of Hamilton Southeastern School Corporation*, the United States Court of Appeals for the Seventh Circuit confronted a situation where the "district court's original jurisdiction derived from claims against both Alano and HSSC under 42 U.S.C. § 1983 and Title IX. After granting summary judgment on the Title IX claim, the district court retained original jurisdiction over the claims against Alano, including the claim under 42 U.S.C. § 1983."[29] Although the district court had dismissed all federal claims against HSSC, "the district court had *not* dismissed all federal claims over which it had original jurisdiction" since there was a pending federal claim against Alano.[30] Consequently, "the district court's discretion to relinquish jurisdiction under § 1367(c)(3) was never triggered, because the court did not dismiss 'all claims over which it has original jurisdiction.'"[31]

---

[28]    28 U.S.C. § 1367(c)(3).
[29]    551 F.3d 599, 607-08 (7th Cir. 2008).
[30]    *Id.* at 607.
[31]    *Id.* at 608.

The United States District Court for the District of Kansas also directly considered whether § 1367(c)(3) applies "only after the court has dismissed all claims over which it had original jurisdiction against *all* defendants or, instead, if the court may apply § 1367(c)(3) . . . once it has dismissed all claims over which the court had original jurisdiction against that particular defendant."[32] That court first noted that "Moore's Federal Practice takes the approach that § 1367(c)(3) 'refers to all claims in the case, not just those claims asserted against a particular defendant.'"[33] It then determined that:

> This interpretation of § 1367(c)(3)—requiring dismissal of all original jurisdiction claims against all defendants before declining supplemental jurisdiction—makes sense when viewed against the history of § 1367. In 1990, Congress enacted § 1367 to expand district courts' supplemental jurisdiction to include jurisdiction over additional claims involving *other parties*, in addition to supplemental jurisdiction over *other claims* between the same parties where the court had original jurisdiction over at least one of their claims.[34]

That, combined with the fact that § 1367 was enacted with the explicit goal of extending supplemental jurisdiction to cover "claims involving different parties,"[35] convinced the court that § 1367(c)(3) applies only when a court dismisses "all claims over which it has original jurisdiction against *all* parties (*i.e.*, all original jurisdiction

---

[32] *Gorenc v. Proverbs*, 462 F. Supp. 3d 1137, 1157 (D. Kan. 2020).

[33] *Id.* (quoting 15A James Wm. Moore, et al., *Moore's Federal Practice* § 106.66[1] (3d ed. & Supp. 2020)).

[34] *Id.* at 1158.

[35] *Id.* (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005)).

claims in the case—and not just the federal claims against the particular defendants the supplemental claims are asserted against).”[36]

As PrimeCare acknowledges, federal claims remain pending against the other remaining defendants in this matter.[37] Because federal claims still exist, § 1367(c)(3) is not triggered, and it remains appropriate for this Court to exercise supplemental jurisdiction over the remaining state law claims against PrimeCare. The motion to dismiss will therefore be denied.

### B.    Motions to Sever

The Federal Rules of Civil Procedure permit district courts to “sever any claim against a party.”[38] “Severance is appropriate when the claims are ‘discrete and separate,’ each capable of resolution without dependence or effect on the other.”[39] The decision to sever claims is vested within the discretion of the district court.[40]

Although the Third Circuit has not set forth considerations for determining when severance is appropriate, within the circuit it is widely accepted that courts should consider three factors: “(1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof;

---

[36] *Id.*
[37] Doc 296 at 2.
[38] Fed. R. Civ. P. 21.
[39] *Henderson v. Mahally*, 639 F. Supp. 3d 481, 486 (M.D. Pa. 2022) (quoting *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006)).
[40] *Thompson v. Ferguson*, 849 F. App’x 33, 35 (3d Cir. 2021).

(2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence."[41]

### 1. PrimeCare's Motion

Turning first to PrimeCare's motion to sever, the Court finds that the relevant factors weigh against granting the motion. First, although the legal issues presented are different as between PrimeCare and Correctional Defendants, the evidence that must be presented would overlap to a significant extent.

Plaintiffs' primary claim against PrimeCare is that of medical negligence which, as this Court has previously observed, requires Plaintiffs to "establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages were a direct result of the harm."[42] In contrast, Plaintiffs' claims against Correctional Defendants primarily rest on allegations of excessive force, which requires proof that an objectively reasonable individual would understand that the force employed was unreasonable, using six non-exhaustive factors, including:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.[43]

---

[41] *Henderson*, 639 F. Supp. 3d at 486-87.
[42] Doc. 272 at 88.
[43] *Id.* at 16.

There is no doubt that these legal considerations offer little, if any, overlap. This is especially so because this Court has already concluded as a matter of law that any medical negligence is wholly unconnected with any injuries caused by alleged excessive force.[44] While those claims are legally distinct, however, they will not require entirely distinct proof and testimony.

Here, all claims arise out of a series of interrelated occurrences; most incidents, although facially separate from the others, are necessary for a fulsome understanding of the events that form the central part of each claim against each defendant. Understanding the uses of force deployed on Riley and how that impacted Riley's mental health is critical for the jury to understand whether PrimeCare was negligent in treating Riley. Conversely, Riley's deteriorating mental health—and what the Correctional Defendants knew of that deterioration—may be relevant to whether the force used was reasonable under the circumstances. The same video and documentary evidence must also be presented for all claims.

Beyond how these facts would be legally relevant to each claim, they would be necessary to complete the picture for the jury in consideration of any of the claims. The jury would necessarily need to know the facts underlying Riley's initial detention and transfers between facilities or the circumstances of Riley's treatment would be entirely unintelligible to the jurors. In short, the jury would need all of the

---

[44]  Doc. 286 at 9.

facts of Riley's detention to understand why mental health treatment was necessary, why it was deteriorating, and why PrimeCare allegedly should have known that this was occurring. The first factor therefore weighs against severing the claims.

As to the second factor, the Court concludes that severance would not promote judicial economy. In a slightly different context the United States Court of Appeals for the Seventh Circuit has explained that "[e]valuating considerations of judicial efficiency and duplication of judicial effort is not just a matter of toting up months or motions or the page counts of judicial orders."[45] "Rather, concerns about judicial economy have their greatest force when significant federal judicial resources have already been expended to decide the state claims, or when there is no doubt about how those claims should be decided" rather than when resources are expended over, for example, discovery disputes.[46]

In this case, significant resources were expended in resolving the merits of the underlying state law claims. This included the production of a 151-page Report and Recommendation related to the motions for summary judgment, a 103-page Memorandum Opinion assessing the Report and Recommendation, as well as a relatively short 15-page Memorandum Opinion addressing Plaintiffs' motion for reconsideration as to the claims against PrimeCare.[47] Having been involved

---

[45]  *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 481 (7th Cir. 2012).
[46]  *Id.*
[47]  Docs. 247, 272, 286.

extensively in the merits of this case, the Court is intimately familiar with both the underlying law and facts that are important here. More importantly, presenting these matters in one trial would streamline the proceedings against all defendants; Plaintiffs would not be forced to present repetitive and overlapping evidence in three separate trials. Considerations of judicial economy therefore militate against severance.[48]

Finally, with respect to the third factor, there would be little prejudice to PrimeCare in denying its motion, but certain prejudice to Plaintiffs in granting the motion. PrimeCare argues that it would be prejudiced by the introduction of evidence related to the use of excessive force and Riley's death, and no instruction would cure the prejudice or eliminate confusion to the jury.[49] But as explained earlier, much of that evidence would need to be presented in any event in order to give the jury a holistic view of the situation in which Riley was placed and why the need for mental health treatment was allegedly so acute. Of course, a limiting instruction—if requested—would be given to the jury regarding such evidence. Similarly, to the extent that the evidence presented in a joint trial would go beyond what evidence is strictly necessary to understand the claims against PrimeCare, the

---

[48] *Cf. Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (finding that, where "there is a common nucleus of operative facts," issues of "judicial economy, convenience, fairness to the parties, and comity are better served by" retaining supplemental jurisdiction) (brackets and internal quotation marks omitted)).

[49] Doc. 292 at 12-13.

Court sees no reason why any potential prejudice could not be cured by proper limiting instructions. Nor does the Court think the jury incapable of deciding multiple claims against varying defendants without growing confused—a task that juries routinely perform without issue.

In contrast, Plaintiffs would, however, be prejudiced by severing the claims. Again, much of the evidence and testimony that would need to be presented at trial against PrimeCare would likewise need to be presented against Correctional Defendants. This means that Plaintiffs would need to present the same evidence and witnesses twice—or three times if the other motion to sever were granted. This is a large amount of duplicative cost and effort that may be avoiding by maintaining a unified action.

These considerations collectively weigh against severing claims against PrimeCare from this action. PrimeCare's motion to sever will therefore be denied.

### 2.    Correctional Defendants' Motion

Correctional Defendants seek severance on two grounds. First, they assert that they have been misjoined.[50] Second, they argue that, under the relevant factors, severance is appropriate.[51]

As to the issue of misjoinder, misjoinder "occurs when there is no common question of law or fact or when . . . the events that give rise to the plaintiff's claims

---

[50]    Doc. 291 at 13-17.
[51]    *Id.* at 18-26.

against defendants do not stem from the same transaction."[52] When parties are misjoined, courts may drop defendants from the matter, or sever the claims and have the matters proceed separately.[53]

"Courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence or a series of transactions or occurrences."[54] "Transaction' is a word of flexible meaning, and may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."[55] To determine whether claims are part of a single transaction or occurrence, courts "must engage in 'a detailed analysis . . . to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.'"[56]

Joinder is therefore proper when there is "evidentiary overlap in the facts giving rise to the cause of action against each defendant."[57] "In other words," the claims "must *share* an aggregate of operative facts."[58] As the Supreme Court of the United States has stated, "the impulse is toward entertaining the broadest possible

---

[52]  *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006).

[53]  *Id.* at 845.

[54]  *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 81 (M.D. Pa. 2015) (internal quotation marks omitted).

[55]  *Id.* (internal quotation marks omitted).

[56]  *Id.* (quoting *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir. 1978)).

[57]  *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012).

[58]  *Id.*

scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."[59]

The facts here satisfy the transaction or occurrence requirement and are certainly offshoots of the same basic controversy, sharing an aggregate of operative facts. Taking a macro view, these claims involve the same core facts related to Riley's detention, and the use of force claims are analyzed under the same legal standards.

In the micro, these claims become far more inextricably intertwined. While Plaintiffs' claims against Booking Defendants and Prison Defendants may, in isolation, be somewhat disconnected, the Court cannot ignore the claims against PrimeCare and the interconnected nature of the claims against all three groups of defendants.

As previously discussed in addressing PrimeCare's motion to sever, the claims against PrimeCare in particular are related to claims against the Correctional Defendants. It would be impossible to sever claims between any set of defendants and keep the facts sensible and intelligible to the jury—to attempt to sever any set of claims from the others would simply be too confusing and would obscure the entirety of the picture for the jury. As to the elements for a use-of-force-claim,[60] the

---

[59] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

[60] When analyzing use of force claims for a pretrial detainee like Riley, the factfinder must consider: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the

jury could not reasonably understand the need for the use of force and the severity of the security problem the correctional officers may have faced without understanding Riley's mental state. Similarly, it would be difficult for the jury to understand extent of the injuries cause by a specific use of force without knowing about prior uses of force, so as to distinguish between the incidents.

Because these claims are all offshoots of the same basic controversy, this Court finds that they are properly joined. As such, the Court will turn to the three factors in determining whether severance is nevertheless appropriate. A full consideration of those factors demonstrates that severance is not appropriate.

First, the legal issues for Correctional Defendants are identical—although factually distinct—and would require similar evidentiary proof. While specific evidence as to each use of force will be distinct, as just discussed with regard to misjoinder, the events form part of an interconnected series of occurrences, all of which must be presented to the jury in order for the jurors to properly understand any one event within that series. And as previously discussed, the entirety of the uses of force against Riley and any injuries those uses may have caused must be presented to the jury so that it may distinguish between which injuries may have been caused by which defendants.

---

amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194-95 (3d Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Moreover, as noted with PrimeCare's motion, the jury must understand Riley's mental health and the Correctional Defendants' knowledge of his mental health to assess whether the uses of force were reasonable. Stated differently, a reasonable jury may well believe that a use of force is objectively unreasonable when used against an individual known to be suffering severe mental decline who the jury believes was not acting with any intention to do harm to others, but may well find such use of force reasonable if they concluded that the officers had limited knowledge of the mental decline. This information also plays directly into the threat that an officer may have perceived from Riley.

If the Prison Defendants had knowledge of past use of force against Riley, why it was applied, and whether it was effective, the jury could also reasonably view those facts as informing the Prison Defendants in whether a particular use of force was appropriate or would have been effective. Simply put, the jury must understand whether the defendants knew of Riley's mental health issues and treatment, as well as past uses of force, to determine whether a reasonable officer could have concluded that a different course of action and less forceful methods were more appropriate under the circumstances. This factor therefore weighs against severance.

Second, severance would harm, rather than promote, judicial economy. Again, significant time and effort has been expended in understanding the facts and resolving the legal issues relevant to these claims, and the parties and Court are

familiar with the facts and law important in this case. Much of the same evidence is relevant to claims against the three groups of defendants here and would need be to repeated in each trial should this matter be split into three separate actions. That would be a significant waste of judicial resources, and this wastefulness weighs in favor of denying the motion to sever.

Third, there is no significant danger of prejudice to the defendants from a single trial. Correctional Defendants argue that they will be prejudiced by the cumulative presentation of uses of force, which they assert would provoke the jury's "sense of horror" and "instinct to punish," particularly to Booking Defendants, as Prison Defendants are alleged to have caused Riley's death.[61] But the consequences that resulted from the two uses of force—i.e. the injuries suffered by Riley—are clearly and easily distinguishable. While the events are necessary for a complete understanding of what happened to Riley, the Court discerns no difficulty for the jury in distinguishing between these events.

Moreover, any potential prejudice may be easily mitigated by clear and proper limiting instructions providing, for example, that: (1) the jury may not consider any other use of force employed by other defendants except in narrow circumstances, such as how that use of force and resultant injuries may have impacted each defendant's consideration of whether force used in each specific incident was

---

[61]   Doc. 293 at 21; *see id.* at 21-23.

appropriate; and (2) the Booking Defendants' use of force did not, as a matter of law, cause Riley's death. While Correctional Defendants maintain that "[i]ndisputably, juries sometimes use evidence for an improper purpose, particularly when the issue under review involves matters of policing,"[62] courts must "presume that the jury followed the limiting instruction and considered evidence only for the limited purposes offered."[63]

Relatedly, Correctional Defendants contend that inclusion of evidence against the Booking Defendants may cause the jury to conclude that a pattern of force led to the incident involving Prison Defendants.[64] Again, this may primarily be addressed through limiting instructions. And to the extent that Correctional Defendants assert evidence may be presented that would improperly point the jury to such a conclusion, any objectionable evidence may be excluded through an appropriate motion *in limine*. Finally, Correctional Defendants argue that the sheer volume of evidence will overwhelm the jury.[65] This is not a genuine concern—this Court has conducted jury trials with far more extensive and complex evidence applied to multiple defendants with complicated legal claims—such as trademark disputes—

---

[62] *Id.* at 22.

[63] *United States v. Curry*, 158 F.4th 153, 162 (3d Cir. 2025) (ellipses and internal quotation marks omitted).

[64] Doc. 293 at 23-26.

[65] Doc. 293 at 23.

and juries have handled those cases without issue. Clear instructions are all that are required.

Conversely, Plaintiffs would be prejudiced by severance of these claims. As discussed previously, much of the evidence and testimony that would need to be presented at trial against any one group of defendants would likewise need to be presented against the other defendants. This means that Plaintiffs would need to present the same evidence and witnesses three times. The redundant costs and efforts associated with three separate trials involving much of the same evidence is a significant harm to Plaintiffs.

In sum, the relevant considerations weigh against granting this motion to severe. The motion will therefore be denied.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that severance of these claims is inappropriate. Moreover, Plaintiffs' claims against PrimeCare will not be dismissed. Accordingly, the pending motions will be denied.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge